UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| QUINCY MEDICAL CENTER, INC., QMC ED PHYSICIANS, INC., QUINCY PHYSICIAN CORPORATION, | ) ) ) ) | Case No. 11-16394 |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' ASSENTED-TO MOTION FOR INTERIM AND FINAL
ORDERS AUTHORIZING USE OF CASH COLLATERAL
[EMERGENCY OR EX PARTE INTERIM RELIEF ON JULY 1 REQUESTED]**

Quincy Medical Center, Inc. ("QMC"), QMC ED Physicians, Inc. ("QED") and Quincy Physician Corporation ("QPC" and, with QMC and QED, the "Debtors" or the "Company") hereby move, pursuant to Section 363 of the Bankruptcy Code, Fed. R. Bankr. P. 4001, and MLBR 4001-2, and with the conditional assent of the Indenture Trustee (as defined below) as set forth in Paragraph 16, for interim and final orders, substantially in the form attached as <u>Exhibit A</u> (the "Cash Collateral Order"), authorizing the Company to use Cash Collateral (as defined below) subject to the asserted security interests of (i) U.S. Bank National Association, as Trustee (the "Indenture Trustee") for the holders (the "Prepetition Secured Bondowners" and, together with the Indenture Trustee, the "Prepetition Secured Parties") of $60,250,000 of Massachusetts Health and Educational Facilities Authority ("MHEFA") Revenue Bonds, Quincy Medical Center Issue, Series A (2008) (the "Bonds"), and (ii) Boston Medical Center Corporation ("BMCC"). ***Because the Company requires authorization to use cash collateral to purchase medical supplies and services and to meet other critical expenses over the holiday weekend commencing Friday, July 1, 2011, the Company respectfully requests an emergency hearing on this Motion on Friday, July 1, 2011 or, alternatively, that the Court grant immediate, ex parte relief permitting the***

***Company to use up to $200,000 of cash collateral pending a hearing on this Motion conducted after the holiday weekend and not later than Wednesday, July 6, 2011. This is the ONLY First-Day Motion for which the Company requires emergency consideration before the holiday weekend. An order to be entered at the hearing requested for July 1, 2011 is attached hereto as <u>Exhibit B</u>***. **THIS MOTION SEEKS RELIEF OF THE TYPE DESCRIBED IN MLBR 4001-2(c)(2), (3), (4), (12), (13) AND (14)**. By this Motion, the Company seeks authority to use Cash Collateral substantially in accordance with the budget annexed hereto as <u>Exhibit C</u> (the "Budget"). This Motion is based, in part, on the Declaration of Mark O'Neill in Support of First Day Motions filed concurrently herewith (the "O'Neill Declaration"). In support of this Motion, the Company states:

### Background

1.    On July 1, 2011 (the "Petition Date"), each of QMC, QED and QPC filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts. Pursuant to their respective motions for joint administration and by operation of MLBR 1015-1(c), their Chapter 11 cases (the "Chapter 11 Cases") are being jointly administered for procedural purposes only.

2.    Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Company continues to manage its businesses and financial affairs as debtors-in-possession. No creditors' committee has yet been appointed in these cases.

3.    The Company is a non-profit corporation formed to provide quality medical care, including emergency care, to the Quincy, Massachusetts community and surrounding communities. QMC's signature asset is its 196-bed acute care hospital (the "Hospital") located in Quincy, Massachusetts. QMC operates the Hospital, and related medical and health care facilities. QED and QPC are captive entities as to QMC. Their sole purpose is to own certain third-party payor

2

contracts and provider numbers under which QMC services are billed to third-party payers, and neither QED nor QPC owns any assets other than these provider numbers and contracts, nor do they have any other business relationships. All of the revenues generated under the provider numbers and contracts are remitted to QMC. QMC, QED and QPC operate as a single business enterprise—Quincy Medical Center—and to that end have administered their business and financial affairs on a consolidated basis; the Company accounts for all operations and financial matters on a consolidated basis and maintains no separate accounting of QED or QPC revenues or expenses.

4. The Company has filed for Chapter 11 for the purpose of consummating a sale of its assets on a going concern basis to Steward Health Care System ("Steward"). The Company selected Steward as the best-qualified acquiror of the Company's business after conducting, with the assistance of its financial and legal advisors, an extensive solicitation process directed toward identifying the potential acquirer best able to promote the interests of the Company and its stakeholders, taking into account such factors as financial considerations, and commitments to improve the Hospital's physical plant and to promote the Company's non-profit mission to provide quality medical care to the Quincy community. A more detailed explication of the Company's mission as a non-profit hospital, the circumstances leading to its decision to solicit an acquiring partner, and its selection of Steward as its preferred partner are set forth in the motion seeking approval of the sale filed concurrently herewith.

**Summary of Prepetition Indebtedness**

MHEFA Bond Obligations

5. On or about May 28, 2008, QMC obtained financing through the issuance for its benefit of $60,250,000 of Massachusetts Health and Educational Facilities Authority ("MHEFA") Revenue Bonds, Quincy Medical Center Issue, Series A (2008) (the "Bonds"). The Bonds included four separate types reflecting differing amounts, maturities and interest rates/yields as follows:

3

| Amount | Interest Rate | Maturity | Yield | CUSIP |
|---|---|---|---|---|
| $ 3,020,000 | 5.125 % | Jan. 15, 2012 | 5.30 % | 57586C2B0 |
| 6,565,000 | 5.850 % | Jan. 15, 2018* | 6.00 % | 57586CZ73 |
| 17,745,000 | 6.250 % | Jan. 15, 2028* | 6.50 % | 57586CZ81 |
| 32,920,000 | 6.500 % | Jan. 15, 2038* | 6.72 % | 57586CZ99 |

\*  Yield to the January 15, 2018 optional redemption date at a redemption price of 100%.

As of the Petition Date, the amount owed by QMC on account of the Bonds is, according to the Indenture Trustee, approximately $58.13 million including accrued interest of approximately $1.8 million, against which obligations QMC holds approximately $6.3 million in certain bond reserve funds, including reserves for debt service, including reserves for debt service of approximately $6.3 million and project fund of approximately $4.2 million.

6.    As security for the Company's obligations under the Bonds, the Indenture Trustee asserts a first priority mortgage against and security interest in substantially all of the Company's assets, including the Hospital and all revenues generated through its operation.

BMCC Obligations

7.    BMCC asserts a claim in the amount of approximately $2.1 million as of the Petition Date, arising out of the Company's clinical affiliations with BMCC, and represented by two secured, subordinated promissory notes dated June 30, 2008 and June 30, 2009, respectively.  BMCC asserts a first priority security interest in the Company's property to secure its claim.  Pursuant to a subordination agreement by and among QMC, the Indenture Trustee and BMCC dated as of June 30, 2008, BMCC's claim and security interest are subordinated to the claims and security interest asserted by the Indenture Trustee.

Unsecured Debt

8.    As of the Petition Date, the Company's accrued unsecured liabilities totaled approximately $18.2 million, including accounts payable and accrued expenses of approximately

4

$11.5 million, amounts due to third-party payors of approximately $2.2 million, and accrued obligations to employees for accrued payroll and accrued vacation of approximately $4.5 million. A significant portion of these liabilities, including principally the employee and third-party payor obligations, will be assumed by Steward in connection with its acquisition of the Company's assets and business enterprise (or, it is anticipated, by any successful competing bidder).

### Basis and Request for Relief

9. As described above, the Indenture Trustee and BMC (together, the "Cash Collateral Claimants") each claims an interest in the Company's cash generated through the Company's business operations, including by the Company's use of inventory and the collection of accounts receivable created through operation of the Hospital and provision of health care services. The Company requires the use of the cash generated from business operations, including cash on hand as of the Petition Date and thereafter generated through the collection of Cash Collateral in order to fund its business operations, to maintain the value of its assets, and to avoid irreparable harm to the Company and its bankruptcy estates pending completion of the sale process.

10. Pursuant to this Motion, the Company seeks this Court's approval for the use of the Cash Collateral on the terms proposed below, in order to avoid irreparable harm to the Company and its estates. Section 363(c)(2) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "may not use, sell or lease cash collateral under paragraph (1) of this subsection unless . . . (A) each entity that has an interest in such cash collateral consents; or (B) the Court, after noticing a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." 11 U.S.C. §363(c)(2)(A) and (B). A hearing on a debtor's motion for use of cash collateral "may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor." 11 U.S.C. § 363(c)(3); Fed. R. Bankr. P. 4001(c)(2).

5

11. The Company needs this Court's immediate authority to use the Cash Collateral in order to continue the operation of the Hospital and related health care business. The Company needs cash to purchase medical supplies and services, to pay its employees, and to meet other expenses necessary to maintain operations, preserve its assets, maintain effective patient care, and maximize value during the sale process. The Company will be irreparably harmed unless it is authorized immediately to use Cash Collateral for these purposes. Particularly in view of the Company's need to avoid disruption of patient care, the requested use of Cash Collateral is essential to maintain the value of the Company's business enterprise and the health, safety and welfare of existing patients and of the surrounding community that relies on the Company for emergency medical care.

12. By this Motion, the Company seeks authority to use Cash Collateral in order to fund (i) ongoing operations substantially in accordance with the Budget (including as it may be updated from time to time), (ii) liabilities incurred before the Petition Date for gross payroll (including employer payroll taxes and related payroll obligations) and employee compensation and benefits to the extent authorized by the Bankruptcy Court, (iii) other liabilities incurred before the Petition Date to the extent authorized by the Bankruptcy Court, and (iv) Chapter 11 professionals' fees and expenses to the extent authorized by the Bankruptcy Court. Prior to the commencement of these Chapter 11 cases, the Debtors and the Indenture Trustee engaged in extensive negotiations over the Cash Collateral Order. The Cash Collateral Order sets forth, in detail, the Debtors' agreements with respect to Cash Collateral use during the Chapter 11 case. The principal provisions of the Cash Collateral Order are summarized below. The Company submits that the permitted use of Cash Collateral for these purposes pending completion of the Company's sale process should generate sufficient revenues with which to pay all administrative expenses of the Chapter 11 cases.

**Proposed Adequate Protection**

13. As adequate protection for any diminution in the value as of the Petition Date in the Prepetition Secured Parties' interest in Cash Collateral that results from the Company's use thereof, the Company proposes that the Prepetition Secured Parties be granted the following:

(a) <u>Adequate Protection Claims</u>.  To the Prepetition Secured Parties, allowed superpriority administrative claims as provided for in section 507(b) of the Bankruptcy Code, with priority in payment over any and all administrative expenses of the kinds specified or ordered under any provisions of the Bankruptcy Code, which claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors and any proceeds or other amounts received in respect thereof and property received thereby.  Such claims shall be subject and subordinate only to the Carve Out (as defined in the proposed orders attached hereto).

(b) <u>Adequate Protection Liens</u>.  To the Indenture Trustee (for itself and for the benefit of the Prepetition Secured Parties) a valid, perfected replacement security interest in and lien (automatically effective and perfected upon entry of the interim order) upon all prepetition and postpetition assets and property of the Debtors of any kind or nature whatsoever, including the Prepetition Collateral and the Cash Collateral, now owned or hereafter acquired, and all proceeds of such property, subject and subordinate only to (y) valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (z) the Carve Out.  The Adequate Protection

7

(c) <u>Fees and Expenses</u>. Subject to section 506(b) of the Bankruptcy Code, the Debtors shall pay in cash: (i) the Indenture Trustee fees and expenses that are payable to or incurred by the Indenture Trustee under and pursuant to the Indenture and the other Prepetition Collateral Documents arising prior to the Petition Date; and (ii) on a current basis, the Indenture Trustee fees and expenses that are payable to or incurred by the Indenture Trustee under and pursuant to the Indenture and the other Prepetition Collateral Documents arising on or subsequent to the Petition Date.

(d) <u>Financial Reports and Information</u>. In addition to the reporting requirements currently set forth in Sections 1006 and 1007 of the Indenture and any reporting requirements contained in any purchase agreement the Debtors enters into providing for the sale of all or substantially all of the Debtors' assets, the Debtors agree to furnish to the Indenture Trustee in form reasonably satisfactory to the Indenture Trustee: (i) an updated 13-Week Cash Flow Forecast and (ii) a variance report showing the percentage and dollar variance of actual cash disbursements and cash receipts (y) for each two-week period from the amounts set forth for each such period in the most recent updated 13-Week Cash Flow Forecast and (z) on a

8

 (e) <u>Compliance with Prepetition Collateral Documents</u>. As further adequate protection of the Prepetition Secured Parties' security interests in the Cash Collateral, the Debtors shall comply with all of the terms and provisions of the Indenture and the other Prepetition Collateral Documents.

14. Notwithstanding the foregoing, the Debtors shall not be required to comply with (i) the financial covenants contained in the Indenture and the Prepetition Collateral Documents, (ii) actions required by the Indenture and the Prepetition Collateral Documents which would be prohibited by the Bankruptcy Code, (iii) specifically identified provisions of the Indenture and the Prepetition Collateral Documents, the performance of which cannot be attained by the Debtors.

## Carve Out Provisions

15. The Debtors propose that liens and claims granted to the Prepetition Secured Parties shall be subject to the payment, without duplication, of the following fees and claims (the amounts set forth below, together with the limitations set forth therein, collectively, the "Carve-Out"):

 (a) The claims of the respective retained professionals (i) of the Debtors for unpaid fees and expenses incurred at any time on and after the Petition Date and prior to a Termination Event and (ii) any official committee of unsecured creditors (the "Creditors' Committee") appointed in the Cases (together with the Debtors' retained professionals, the "Retained Professionals") for unpaid fees and expenses incurred at any time on and after the date the Creditors' Committee is formed and prior to a Termination Event (as defined below) up to the amount set forth in the Budget; *provided that* (I) in the case of all Retained Professionals, such fees shall only be

9

(b)  The claims of the Retained Professionals for unpaid fees and expenses incurred on and after a Termination Event; *provided that*, in each case, such fees and expenses are ultimately allowed on a final basis by this Court under sections 330 or 331 of the Bankruptcy Code or orders of this Court on application for retention are not excluded from the Carve Out pursuant to paragraph 16 of the Cash Collateral Order and do not exceed $300,000 in the aggregate for the Retained Professionals (such fees and expenses described in this clause (ii) the "Post-Termination Expenses" and the permitted amount thereof, the "Post-Termination Amount" and, together with the Pre-Termination Amount, the "Carve-Out Amount"); and

(c)  The unpaid fees payable to the United States Trustee and Clerk of the Bankruptcy Court pursuant to Section 1930 of title 28 of the United States Code and the statutory interest payable to the United States Trustee pursuant to Section 3717 of

10

**Termination Events**

16. The Debtors' authority to use of Cash Collateral as provided by this Order will expire upon the earliest to occur of (each such occurrence hereinafter referred to as a "Termination Event"):

(a) The effective date or consummation date of any Chapter 11 plan of liquidation, if any, confirmed in the Chapter 11 Cases;

(b) The filing of a motion by the any Debtor seeking (x) reversal, vacatur, stay, amendment, supplement or any modification of the Cash Collateral Order, (y) conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or (z) dismissal of the Chapter 11 Cases;

(c) Entry of an order by the Court (or any other court of competent jurisdiction) (x) reversing, vacating staying, amending, supplementing, or otherwise modifying the Cash Collateral Order, (y) converting the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or (z) dismissing the Chapter 11 Cases;

(d) Entry of an order by the Court appointing a chapter 11 trustee or examiner with expanded powers in the Chapter 11 Cases;

(e) The entry by the Court of an order or orders granting relief from the automatic stay imposed under section 362 of the Bankruptcy Code to any entity or entities other than the Indenture Trustee with respect to the Collateral having a value, in the aggregate, for all such orders, in excess of $200,000;

(f) The (x) filing by any party of a motion seeking to obtain priority for liens securing obligations other than as set forth in the Cash Collateral Order, unless such motion is timely contested by the Debtors, or (y) entry of an order by the Bankruptcy Court

11

(g)      The filing of a motion by any Debtor, without the prior written consent of the Indenture Trustee, seeking (x) the use of Cash Collateral inconsistent with the terms of the Cash Collateral Order or (y) authorizing any Debtor to incur debtor in possession financing under section 364 of the Bankruptcy Code secured by liens against the Indenture Trustee's collateral without the prior written consent of the Indenture Trustee (or entry by the Court of an order permitting such use of Cash Collateral or such incurrence of debtor in possession financing);

(h)      The failure of the Debtors to make any payment required under the Cash Collateral Order within five (5) business days following written notice (which may be sent by electronic mail to the Debtors' counsel) that such payment has not been made;

(i)      The failure by the Debtors to deliver to the Indenture Trustee any of the documents or other information required to be delivered pursuant to the Cash Collateral Order, provided such failure is not cured within five (5) business days following written notice (which may be sent by electronic mail to the Debtors' counsel) of same;

(j)      **November 1**, 2011, *provided*, that the Final Order shall have been entered by the Bankruptcy Court by **August 1**, 2011;

(k)      Unless otherwise extended with the prior written consent of the Indenture Trustee, the failure of the Debtors to:

    (1)      by **July 1**, 2011, file a motion, in form and substance satisfactory to the Indenture Trustee, to sell all or substantially all of the Debtors' assets;

    (2)      by **July 6**, 2011, obtain entry of an order, in form and substance satisfactory to the Indenture Trustee, approving bidding procedures related to the sale of all or substantially all of the Debtors' assets;

   (3) by **July 25,** 2011, file with the Bankruptcy Court a plan of liquidation containing provisions dealing with the treatment of all classes of claims that are reasonably satisfactory to the Indenture Trustee and accompanying disclosure statement;

   (3) by **August 12**, 2011, hold an auction to determine the highest or best bid for the sale of all or substantially all of the Debtors' assets;

   (4) by **August 25**, 2011, obtain entry of orders, in form and substance reasonably satisfactory to the Indenture Trustee, approving the disclosure statement referred to in paragraph (k)(2) above relating to the plan of liquidation referred to in such clause;

   (5) by **September 20**, 2011, obtain entry of (i) a confirmation order, in form and substance satisfactory to the Indenture Trustee, with respect to the plan of liquidation referred to in clause (k)(2) above; and (ii) an order in form and substance satisfactory to the Indenture Trustee, approving the sale transaction referred to in clause (k)(1) above.

(l) The seventh (7th) day following the date on which the Debtors seek approval from the Bankruptcy Court of an order approving the sale of all or substantially all of the Debtors' assets, which order does not provide that, as a condition precedent to closing such sale transaction, entry of a confirmation order (in form and substance satisfactory to the Indenture Trustee) with respect to the liquidating plan referred to in paragraph (k)(2) above is a condition precedent to closing;

(m) A material failure to comply with the Bond Documents (except for those provisions which, pursuant to the Cash Collateral Order, the Debtors need not perform);

(n) The failure of the Debtors to comply with or perform any of the express terms and/or provisions of the Cash Collateral Order, provided such failure is not cured within fifteen (15) days of written notice (which may be sent by electronic mail to the Debtors' counsel) of same; and

(o) The submission of a report to the Bankruptcy Court, pursuant to section 333(b) of the Bankruptcy Code, by a duly appointed patient care ombudsman, if any, containing the patient care ombudsman's determination that the quality of patient

On and after the occurrence of a Termination Event pursuant to paragraph (k)(2) above, the exclusive time periods set forth in section 1121(d) of the Bankruptcy Code shall terminate; <u>provided that</u>, such termination shall be effective solely with respect to the Indenture Trustee, and the Indenture Trustee shall thereafter be permitted to submit a chapter 11 plan or plans of reorganization and solicit acceptances thereof in the Chapter 11 Cases.

### **Indenture Trustee's Conditional Assent to Use of Cash Collateral**

17.     The Indenture Trustee has assented to the Company's proposed use of the Cash Collateral on the condition that the Prepetition Secured Parties shall be provided with the forms of adequate protection summarized above and specified in the proposed orders. The Indenture Trustee's assent is further conditioned upon the understanding that the Company shall promptly and diligently pursue the sale of the Hospital and related operating assets and the confirmation of a plan of liquidation pursuant to which the Debtors shall distribute the proceeds from such a sale to their creditor constituencies. Such assent shall be deemed retracted by the Indenture Trustee in the event that the Company has not filed a plan of liquidation acceptable to the Indenture Trustee by July 25, 2011, in which event the Company shall immediately cease using the Cash Collateral.

### **Request for Interim Relief on Emergency or ExParte Basis**

18.     Fed. R. Bankr. P. 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after the service of such motion. Fed. R. Bankr. P. 4001(b). Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. <u>Id.</u>

19.     The Company requests that this Court find that good cause exists for the immediate

14

20. The Company by this Motion seeks interim authority to use cash collateral in accordance with the Budget through the date of the final hearing on this Motion. The relief sought hereby on an interim basis is limited to an amount necessary to avoid immediate and irreparable harm to the Company and its estates. ***Because the Company requires authorization to use cash collateral to purchase medical supplies and services and to meet other critical expenses over the holiday weekend commencing Friday, July 1, 2011, the Company respectfully requests an emergency hearing on this Motion on Friday, July 1, 2011 or, alternatively, that the Court grant immediate, ex parte relief permitting the Company to use up to $200,000 of cash collateral pending a hearing on this Motion conducted after the holiday weekend and not later than Wednesday, July 6, 2011***. The Company further requests that, at any interim hearing on this Motion, the Court grant the Company authorization to use **up to $7.0 million of Cash Collateral substantially in accordance with the Budget to maintain ordinary course business operations through July 22, 2011**, by which time the Company anticipates a final hearing on this Motion will have been held. Such interim relief sought by this Motion is limited to that necessary to avoid immediate and irreparable harm to the Company and its estates.

<u>Notice</u>

21. In accordance with MLBR 4001-2(b), copies of this motion have been served by first class mail, hand delivery, overnight delivery service, fax, or email upon the United States Trustee,

22.     The Company respectfully requests that it be authorized to serve a copy of this Motion, a copy of any order granting the interim relief sought by this Motion, and notice of the final hearing on this Motion, by first class mail, hand delivery, overnight delivery service, fax, or email upon each of the Service Parties (provided that the Company need not duplicate service described in Paragraph 20) and upon any additional entity that has requested notice and service of pleadings in this case at the time of such service. The Company requests that the Court consider such notice of the hearing to consider final relief sought by the Motion to be sufficient notice under Fed. R. Bankr. P. 4001 and MLBR 4001-2.

## Conclusion

WHEREFORE, the Company respectfully requests that this Court: (a) enter an order, in substantially the form submitted herewith, granting the interim relief sought by this Motion; (b) schedule a final hearing on this Motion; and (c) grant such other and further relief as this Court may deem just and proper.

Dated: July 1, 2011

          QUINCY MEDICAL CENTER, INC.
          QMC ED PHYSICIANS, INC.
          QUINCY PHYSICIAN CORPORATION
          By their attorneys,

          */s/ John T. Morrier*
          John T. Morrier (BBO #628624)
          Michael J. Goldberg (BBO #551869)
          A. Davis Whitesell (BBO #551462)
          Andrew T. Imbriglio (BBO #676049)
          Casner & Edwards, LLP
          303 Congress Street
          Boston, MA 02210
          Tel: 617-426-5900
          Fax: 617-426-8810
          Email: morrier@casneredwards.com

# EXHIBIT C

# Budget

# (to be provided)