# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

_____
                                            )
In re:                                      )
                                            )        Chapter 11
QUINCY MEDICAL CENTER, INC.,                 )
QMC ED PHYSICIANS, INC.,                     )        Case No. 11-16394
QUINCY PHYSICIAN CORPORATION,                )
                                            )        (Jointly Administered)
                        Debtors.            )
_____)

**ORDER (A) APPROVING THE SALE OF DEBTORS' HOSPITAL AND RELATED
BUSINESS ASSETS, FREE AND CLEAR OF LIENS, CLAIMS
AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY
CONTRACTS INCIDENT THERETO, AND (C) GRANTING RELATED RELIEF;
SUBJECT TO REGULATORY APPROVALS**

**Sale Motion**

Quincy Medical Center, Inc. ("QMC"), QMC ED Physicians, Inc. ("QED") and Quincy

Physician Corporation ("QPC" and, with QMC and QED, the "Debtors" or the "Company") have

filed the Company's Motion For Authority to Sell Substantially All Assets (Including Through

Assumption and Assignment of Executory Contracts) Pursuant to Sections 363 and 365 of the

Bankruptcy Code and Court-Approved Sale Procedures dated July 1, 2011 [Docket No. __] (the

"Sale Motion").

The Sale Motion requested that this Court authorize the Company to sell to Steward Medical

Holdings Subsidiary Five, Inc. ("Bidder"), or such other entity that submitted the highest or

otherwise best offer to acquire the Assets as determined pursuant to the Sale Procedures (as defined

below), and pursuant to the Asset Purchase Agreement between the Company and Bidder dated as

of June 30, 2011 attached as Exhibit A to the Sale Motion (such Asset Purchase Agreement,

including as it might be  modified by agreement between the Company and the successful bidder for

the Company's assets as determined pursuant to the Sale Procedures, the "APA"), all of the

Company's right, title and interest in and to the assets utilized by the Company to operate its

business, including without limitation the Company's (i) interests in real property, including the

Company's fee interest in real property improved by its 196-bed acute care hospital (the "Hospital"),

(ii) personal property (including equipment, furniture and inventory used to operate the Hospital),

(iii) third-party payor provider numbers and contracts under which the Company collects most of its

revenue from government and third-party payors, and other unexpired leases and executory

contracts as designated by purchaser pursuant to the APA (the "Assigned Agreements"), and (iv)

certain accounts receivable, work in process, intellectual property (including the Quincy Medical

Center name), and other miscellaneous, specified assets (collectively, the "Assets"), all as more

particularly specified in the APA (the "Proposed Sale").

**<u>Sale Procedures</u>**

On July 1, 2011, the Company filed the Debtors' Motion for an Order (A) Approving

Procedures Governing Proposed Sale of Quincy Medical Center and Related Business Assets, Free

and Clear Of Liens, Claims, and Encumbrances (Including Through Assumption and Assignment

Of Certain Unexpired Leases of Real Property and Executory Contracts); (B) Approving Form and

Manner of Notice of Sale; and (C) Granting Related Relief [Docket No. __] (the "Sale Procedures

Motion"), whereby the Company sought approval of the procedures developed by the Company and

its legal and financial advisors for soliciting competing purchase offers for and conducting the sale

of the Assets.

On July ___, 2011, this Court entered an order [Docket No. ___] (the "Sale Procedures

Order") granting the Sale Procedures Motion and approving the sale procedures attached as <u>Exhibit</u>

<u>A</u> to the Sale Procedures Order (the "Sale Procedures").  The Sale Procedures Order also approved

the form of notice of the Proposed Sale substantially in the form of <u>Exhibit A</u> to the Sale

2

Procedures Motion (the "Sale Notice"). The Company and its representatives have filed with this

Court certificates of service (the "Certificates of Service") reflecting that the Sale Motion, the Sale

Procedures Order, and/or the Sale Notice have been served upon the Company's known creditors,

the non-Company parties to the Assigned Agreements, and the other entities entitled to service in

accordance with the Sale Procedures Order.

### Objections to Sale Motion

Objections to the Sale Motion were filed by the following parties (collectively, the

"Objections"):

- [List any objections] [Docket No. ___, Filed _____, 2011]

- [List any objections] [Docket No. ___, Filed _____, 2011]

A hearing on the Sale Motion was held on September ____, 2011 (the "Sale Hearing").

After reviewing pleadings filed by counsel to the Company and other parties in interest, and based

on all of the evidence, including evidence offered at the Sale Hearing, representations and offers of

proof made by counsel, and argument of counsel, and on the entire record of the Sale Hearing, the

prior hearings before this Court on matters relating to the Sale Motion and/or the Sale Procedures

Motion, all Objections having been addressed as provided for herein, or otherwise having been

withdrawn or overruled, and there appearing good cause therefor;

IT IS HEREBY FOUND AND DETERMINED, pursuant to Fed. R. Bankr. P. 7052, that:

### General

A.     Capitalized terms not defined herein shall have the meanings ascribed to them in the

Sale Motion or in the Sale Procedures Motion (including through incorporation of terms defined in

the APA).

B.       This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28

U.S.C. §§ 157 and 1134.  Venue of the Company's Chapter 11 cases in this District is proper

pursuant to 28 U.S.C. §§ 1408(a) and 1409(a).  Determination of the Sale Motion is a core

proceeding under 28 U.S.C. §157(b)(2).  The statutory predicates for the relief requested in the Sale

Motion are Sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 6006 of

the Federal Rules of Bankruptcy Procedure.

**<u>Compliance with Sale Procedures</u>**

C.       The Company has complied with the notice provisions of the Sale Procedures Order

by providing notice of the Sale Motion to (i) the United States Trustee for this District, (ii) counsel

to the Bond Trustee, (iii) counsel to the Creditors' Committee, (iv) any entities known to hold a lien

or security interest in any of the Assets, (v) all parties that have filed and served a request for notice

in the Company's Chapter 11 case, (vi) the Internal Revenue Service, (vii) the United States Attorney

for the District of Massachusetts, (viii) each of the Company's federal, state and local taxing

authorities, and any federal, state or local governmental agency who has or exercises any licensing,

registration or permitting authority over the Company or any of the Assets, (ix) all non-Company

parties to the Assigned Agreements, (x) all relevant environmental regulatory agencies (xi) others

believed possibly to be affected by the Proposed Sale, and (xii) all other known creditors of the

Company.  The notice of the Sale Hearing and of the relief sought by the Sale Motion, as reflected

by the Certificates of Service, was proper, timely, adequate and sufficient and meets the

requirements of Sections 102(1), 105, 363 and 365 of the Bankruptcy Code and Fed. R. Bankr. P.

2002, 6004, and 6006, was reasonably calculated to give actual notice of the relief contemplated by

the Sale Motion, and is appropriate and sufficient under the circumstances.

D.       The Company, through the efforts of Navigant, marketed the Assets diligently, both

prepetition, and continuing postpetition pursuant to the Sale Procedures, and in good faith and in a

commercially reasonable manner, to secure the highest and best offers for the Assets, including

through the efforts of Navigant to contact and make available offering and due diligence materials to

potential purchasers.  In addition, the Company and Navigant transmitted the Sale Procedures

Order, the Sale Procedures, the Sale Notice and/or the Sale Motion to those entities that expressed

an interest in the Assets or portions thereof, including, with respect to interested entities who

submitted an appropriate confidentiality and non-disclosure agreement, through the posting of such

documents on the website maintained by Navigant to make sale-related information about the

Company, the Assets and the Sale Procedures available to prospective purchasers of the Assets.

   E.  The Company and Navigant have marketed the Assets and solicited Bids for the

Assets in the manner contemplated by the Sale Procedures Motion and the Sale Procedures Order,

and creditors, parties in interest and other entities have been afforded a full, fair and reasonable

opportunity to submit offers to purchase the Assets.

   F.  The Company, Navigant, and the Company's other representatives have complied in

all material respects with the Sale Procedures and the Sale Procedures Order.  The Company has

complied with the provisions of Sections 363 and 365 of the Bankruptcy Code as regards the sale of

the Assets and the assumption and assignment of the Assigned Agreements.

## <u>Sale Results</u>

   G.  At the conclusion of the sale process undertaken by the Company in accordance

with the Sale Procedures, the Company, in consultation with the Committee and the Bond Trustee,

accepted the Bid of [WINNING BIDDER] (the "Winning Bidder"), which Bid and acceptance are

embodied in the modified APA between the Company and the Winning Bidder dated as of

_____, 2011 (such modified APA shall hereinafter constitute and be referred to as the

"APA").  Pursuant to the APA, the Winning Bidder has agreed, in consideration of the Company's

sale of the Assets to the Winning Bidder, to pay the Cash Purchase Price to the Company in the

amount of $_____ , to assume the Assumed Liabilities, and to perform the Post-Closing

Obligations, all as specified in the APA, but subject in all events to obtaining regulatory approvals as

further provided hereinbelow.

H.      The offer of the Winning Bidder to purchase the Assets as set forth in the APA

constitutes the highest and best value to be obtained for the Assets in the judgment of the Company

and Navigant.  The consideration provided by the Winning Bidder in the APA is fair and reasonable

consideration for the Assets and provides a greater recovery for the Company and its creditors than

would be provided by any other practical available alternative.  The terms of the APA are fair and

reasonable.  Sale to the Winning Bidder is substantially likely to obtain the regulatory approvals

necessary to achieve the closing.

I.      The Company has demonstrated good, sound and sufficient business purpose and

justification, and it is a reasonable exercise of the Company's business judgment, (i) to sell the Assets

on the terms and conditions set forth in the APA, (ii) to assume and assign the Assigned

Agreements to the Winning Bidder, and (iii) to consummate all transactions contemplated by the

APA.  The sale of the Assets and the assumption and assignment of the Assigned Agreements is in

the best interest of the Company, its estates, its creditors, and other parties in interest.  The

Proposed Sale must be approved and consummated promptly in order to preserve the viability of

the Company's business as a going concern, to ensure that the sale may close promptly assuming the

necessary regulatory approvals are obtained, and to maximize the value of the Company's estates.

Substantial and sufficient business exigencies exist that permit the Assets to be sold outside of the

context of a Chapter 11 plan.

### Sale Free and Clear

J.      All secured parties with Liens or Claims (as such terms are defined in Paragraph 7

below) on any of the Assets have either consented to or have received notice and not objected to

the sale of the Assets free and clear of such Liens or Claims, or could be compelled, in a legal or

equitable proceeding, to accept monetary satisfaction of such Liens or Claims, or hold Liens or

Claims that are otherwise subject to avoidance under Section 363(f) of the Bankruptcy Code, and all

such parties are adequately protected by having their Liens and Claims attached exclusively to the

gross proceeds of the transactions with the same validity, enforceability, priority, force and effect

they now may have as against the Assets, subject to the rights, claims, defenses, and objections, if

any, of the Company and all parties in interest with respect to such Liens and Claims [except to the

extent waived pursuant to this Court's Final Order Authorizing Use of Cash Collateral and

Providing Adequate Protection entered _____, 2011 [Docket No. ___] or other

Court order].

K.       Except for obligations expressly assumed by the Winning Bidder under the APA and

any obligations imposed by applicable environmental law or regulation, consummation of the

Contemplated Transactions under the APA  will not subject the Winning Bidder to any debts,

liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever,

whether known or unknown, contingent or otherwise existing as of the date hereof or hereafter

arising, of or against the Company, any affiliate of the Company, or any other person by reason of

such transfers and assignments, including, without limitation, based on any theory of antitrust,

successor or transferee liability, whether under state or federal law or principles of equity, and

including, without limitation, de facto merger, mere continuation, and continuity of enterprise.

## Assumption and Assignment of Assigned Agreements

L.       The executory contracts and unexpired leases to date designated by the Winning

Bidder to be assumed and assigned to the Winning Bidder pursuant to the APA and Section 365 of

the Bankruptcy Code are identified on attached Exhibit A (such executory contracts and unexpired

leases hereinafter referred to as the "Assigned Agreements").  Each of the Assigned Agreements is

valid and binding, in full force and effect, and enforceable in accordance with its terms, and is

property of the Company's estates pursuant to Section 541(a) of the Bankruptcy Code.

M.      The Company and, to the extent applicable, the Winning Bidder have (i) cured, or

have provided adequate assurance of cure, of all defaults, obligations and liabilities under the

Assigned Agreements, if any, existing as of the date of this Order, and will do so with respect to any

remaining obligations due and payable under an Assigned Agreement as of the Closing under the

APA, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code, by payment in cash in

full of the cure amount as listed in association with such Assigned Agreement on Exhibit A hereto

the "Prepetition Cure Amounts"), and (ii) provided compensation or adequate assurance of

compensation to any party for actual pecuniary loss to such party resulting from a default before the

date of this Order under the Assigned Agreement, if any, within the meaning of Section 365(b)(1)(B)

of the Bankruptcy Code by payment of such cure amount at the Closing as set forth on Exhibit B

hereto (the "Pecuniary Loss Amounts").

N.      To the extent that any non-Company party to any Assigned Agreement objects,

asserts or claims some greater amount is owed to it other than the Prepetition Cure Amounts or

Pecuniary Loss Amounts with respect to its Assigned Agreement, such objection, assertion and/or

claim is expressly overruled.  Neither the Company nor the Winning Bidder shall have any liability

with respect to any asserted prepetition obligation under any Assigned Agreement except as

expressly set forth on attached Exhibit A and Exhibit B, and the non-Company parties to the

Assigned Agreements are hereby deemed to have waived any and all such prepetition claims other

than the Prepetition Cure Amounts.  The Company shall continue to perform its postpetition

obligations under the Assigned Agreements through the Closing.

O.      The Winning Bidder has provided adequate assurance of its future performance under the Assigned Agreements within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code.

P.      The Winning Bidder may in accordance with the APA designate Transitional Contracts (as defined therein) to be additional Assigned Agreements (the "Further Assigned Agreements"), and the Company will in accordance with the APA seek this Court's further order authorizing the assumption and assignment of such Further Assigned Agreements.

### Regulatory Approval

Q.      The sale of the Assets is subject to (i) review by the Office of the Attorney General of Massachusetts (the "Mass. AGO") on account of the Company's status as nonprofit corporations and the necessity of ensuring that the sale of substantially all of the Company's assets complies with Massachusetts law governing the Company and its mission as nonprofit corporations; and (ii) the approval of the Massachusetts Department of Public Health through its issuance of a Determination of Need with respect to the Winning Bidder's post-Closing operation of the Hospital.  Generally, the review and recommendations of the Mass. AGO of a transaction such as the Proposed Sale would be subject to ratification by the Supreme Judicial Court of Massachusetts (the "SJC") pursuant to a process that the Company estimates would typically take several months.  The Mass. AGO has agreed that, in light of the exigencies attendant to the Proposed Sale and the desire to permit the Proposed Sale to close promptly if and when the Mass. AGO completes its review of the Proposed Sale, this Court may upon motion of the Company undertake the ratification process normally taken by the SJC, and this Court shall conduct a hearing to consider such ratification promptly upon any such motion of the Company filed after receipt of the Mass. AGO report and recommendations.

### Good Faith Purchaser

R.     The Winning Bidder is not an insider of, or otherwise affiliated with, the Company.

The Winning Bidder is a good-faith purchaser of the Assets within the meaning of Section 363(m)

of the Bankruptcy Code.  No party has engaged in any conduct that would permit the avoidance of

the sale of the Assets to the Winning Bidder, the recovery of excess value, or the imposition of

punitive damages, pursuant to Section 363(n) of the Bankruptcy Code.

### Sale Proceeds

S.     No reason exists to revisit the compensation arrangements between the Company

and Navigant for payment of the Deferred Fee as defined in, and as computed and payable pursuant

to, the engagement letter agreement between the Company and Navigant dated March 1, 2011 (the

"Deferred Fee").  Based on the record as it relates to the secured claim of the Bond Trustee, [and in

accordance with the agreement between the Company, the Bond Trustee and the Committee,] there

exists no reason to delay payment to the Bond Trustee of $_____ of sale proceeds and such

amount should be remitted to the Bond Trustee at the Closing.  The remaining proceeds of sale

after such payments to Navigant and the Bond Trustee, and of any reasonable transactional costs

and expenses of closing (excluding compensation to the Company's counsel), and the reserve in

escrow of the amount of $500,000 to fund the indemnity escrow pursuant to Article XI of the APA,

should appropriately be retained by the Company or its escrow agent pending further order of this

Court.

### Miscellaneous

T.     It is necessary and appropriate, in order to ensure the validity of the sale of the

Assets to the Winning Bidder and to ensure compliance with this Order, for this Court to retain

jurisdiction to: (a) interpret and enforce the provisions of the APA, the Assigned Agreements, the

Sale Motion and this Order; (b) protect the Winning Bidder and any of the Assets against any Lien

or Claim; (c) resolve any disputes arising under or relating to the APA, the Assigned Agreements, the Sale Motion and this Order; (d) determine the validity, extent and priority of asserted pre-Closing Liens or Claims on, and the disposition of the gross proceeds of sale of, the Assets, and (e) consider the ratification of any approval of the Mass. AGO as contemplated above.

U.     Such additional findings and rulings as may have been stated by this Court at the Sale Hearing are hereby incorporated herein by reference.

WHEREUPON, IT IS HEREBY ORDERED THAT:

### General Provisions

1.     The findings of fact entered above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

2.     The Sale Motion is granted.

3.     All objections to the Sale Motion or the relief requested therein, including without limitation the Objections, that have not been withdrawn, waived or settled, including all reservations of rights included therein which are not otherwise provided for by this Order, are overruled on the merits.

### Approval of Sale Transactions

4.     The sale of the Assets to the Winning Bidder pursuant to the APA is authorized under Section 363(b) of the Bankruptcy Code.  The APA is approved, and the Company is authorized to consummate the transactions contemplated by the APA.  In accordance with the APA, the sale of the Assets is "as is, where is" and otherwise in accordance with the terms and conditions of the APA.  Accordingly, except to the extent expressly provided by Article XI of the

APA, the Winning Bidder is deemed to have waived, and is hereby barred from asserting against the

Company, its bankruptcy estates, and its representatives, any claim arising out of or with respect to

the Company's ownership, occupation and/or use of any Assets prior to the conveyance thereof to

the Winning Bidder.

5.      The Winning Bidder is a purchaser in good faith of the Assets and is entitled to all of

the protections afforded by Section 363(m) of the Bankruptcy Code.

6.      The consideration to be paid and performed by the Winning Bidder on account of

the Assets, as set forth in the APA, is fair and reasonable and may not be avoided under Section

363(n) of the Bankruptcy Code.  The APA and any related agreements, documents, or other

instruments may be modified, amended or supplemented by the parties thereto in accordance of the

terms thereof without further order of the Court, provided that any such modification, amendment

or supplement is not material and does not change the economic substance of the transactions

contemplated thereby.

**<u>Sale Free and Clear</u>**

7.      Pursuant to Section 363(f) of the Bankruptcy Code, the sale of the Assets pursuant

to the APA is and shall be, except to the extent otherwise provided in the APA, free and clear of all

(i) mortgages, security interests, conditional sale or other title retention agreements, pledges, liens,

judgments, demands, encumbrances, restrictions or charges of any kind or nature, except for

Permitted Exceptions (as defined in the APA) (collectively, excluding such Permitted Exceptions,

"Liens"), and (ii) all debts, liabilities, objections, commitments, responsibilities, claims (as that term is

defined in the Bankruptcy Code) including, but not limited to, all product liability claims, claims

arising under contracts, licenses, or other agreements, counterclaims, defenses and offsets of any

kind or nature, arising prior to Closing or relating in any way to any acts of the Company prior to

Closing, however arising, except for the Assumed Liabilities (as defined in the APA (collectively,

12

excluding such Assumed Liabilities, "Claims"), with any such Liens or Claims to attach to the gross proceeds of sale of such Assets with the same validity, scope and priority as they attached to such Assets.

8.    The Winning Bidder is not a successor to the Company or its respective estates by reason of any theory of law or equity and the Winning Bidder shall not assume or in any way be responsible for any liability, obligation, commitment or responsibility of the Company and/or its respective estates, or any debts, liabilities, responsibilities or commitments in any way relating to the Assets or the Company's use of the Assets prior to the Closing, except for the Assumed Liabilities or otherwise arising under any environmental law that applies to the Assets.

9.    Effective upon Closing, all persons in possession of any of the Assets shall deliver such Assets to the Winning Bidder at the Winning Bidder's request.  The transfers of the Assets pursuant to the APA (a) are or will be legal, valid, and effective transfers of property of the Company's estates to the Winning Bidder, and (b) except as expressly provided in the APA, vest or will vest the Winning Bidder with the Company's right, title and interest in the Assets free and clear of all Liens and Claims.

10.    This Order is deemed to operate as an unconditional release, discharge and termination of all Liens or Claims on the Assets as of the Closing.  If the Winning Bidder fails to close under the APA for any reason, then the Liens or Claims on or with respect to the Assets shall continue against such Assets unaffected by this Order.  All holders of recorded Liens or Claims on any of the Assets are hereby directed to cooperate with the Company and the Winning Bidder with respect to any request by the Company or the Winning Bidder for execution of releases or partial releases of Liens and Claims on particular Assets incident to the Closing under the APA, provided that the reasonable cost of preparing and filing any such releases or partial releases shall be borne by the Company and/or the Winning Bidder.

11.     This Order is binding on filing agents and officers, all government departments and units, whether federal, state, local or of a foreign state (or subdivision thereof), who may be required by operation of law, or the duties of office or of contract, to accept, file, register or otherwise record or release any documents or instruments or who may be required to report or insure any title or state of title in or to any of the Assets (all such entities being "Recording Officers"); provided, however, that nothing in this Order shall require Recording Officers to accept for filing any transfer document or instrument not accompanied by payment of any required conveyance tax or recording fee.  Each and every federal, state and local governmental agency or department is hereby required and directed (i) to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA, and (ii) to issue any certificate, including without limitation a certificate of good standing, necessary to effect or evidence removal of a Lien or Claim for corporate or other income taxes from the Assets.

12.     This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system maintained by any Recording Officer.  If any person or entity that has a filed financing statement or other document or agreement evidencing Liens or Claims or interests in any Assets shall not have delivered to the Company prior to the Closing, in proper form for filing and executed by appropriate parties, termination of statements, instruments of satisfaction, release of all Liens or Claims, or other interests that the person or entity has with respect to any particular Assets conveyed pursuant to the APA, then each of the Company and the Winning Bidder is hereby authorized to file, register or otherwise record a certified copy of this Order (or a confirmatory order entered pursuant to Paragraph 26 of this Order), which once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release and discharge of all Liens or Claims or other interests of any kind or nature whatsoever in such Assets.

13.     Neither the purchase of the Assets by the Winning Bidder nor the post-Closing

operation of the Hospital or related business shall cause the Winning Bidder to be deemed a successor in any respect to the Company, the Company's business or any liability, including any liability pertaining to fraud and abuse, false claims and the Ethics in Patient Referrals Act, of the Company within the meaning of any law, rule or regulation, including but not limited to any revenue, pension, ERISA, tax, labor, products liability or environmental law, rule or regulation, or under any doctrine of successor liability under state or federal law; provided, however, that nothing in this Order or in the APA approved hereby shall be construed to relieve the Winning Bidder of any obligation under any environmental law that applies to the Assets.

### Assumption and Assignment of Assigned Agreements

14.     The Assigned Agreements are in full force and effect and have not been terminated by operation of law, their own terms or otherwise.  Subject to and conditioned on the Closing, the Company is authorized pursuant to Section 365(a) of the Bankruptcy Code to assume and assign the Assigned Agreements to the Winning Bidder.

15.     Effective as of the Closing, the Assigned Agreements shall be transferred to, and remain in full force and effect for the benefit of, the Winning Bidder in accordance with their terms, notwithstanding any provision in the Assigned Agreements that prohibits, restricts, or conditions such assignment or transfer.  Pursuant to Section 365(k) of the Bankruptcy Code, the Company shall be relieved from any further obligation or liability for any breach of any Assigned Agreement occurring after such assumption and assignment.

16.     All monetary defaults, pecuniary loss or other cure (within the meaning of Section 365 of the Bankruptcy Code), if any, under an Assigned Agreement, arising or accruing before the Closing, or in respect of any period, circumstance, event, condition, act, or omission before or occurring or existing before the Closing (without giving effect to any acceleration clause or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code), shall be

satisfied by payment by the Winning Bidder of the Prepetition Cure Amount and the Pecuniary Loss

Amount, if any, for such Assigned Agreement.  The non-Company parties to the Assigned

Agreements are hereby deemed to have waived any and all prepetition claims other than the

Prepetition Cure Amounts and the Pecuniary Loss Amounts.  The Company shall continue to

perform its postpetition obligations under the Assigned Agreements, and also under the Further

Assigned Agreements, through the Closing.  Any dispute regarding payment or performance of the

Company's postpetition, pre-Closing obligations under an Assigned Agreement or any Further

Assigned Agreement prior to its assignment to the Winning Bidder (whether prior to, at, or after the

Closing) shall be determined by this Court upon appropriate motion of the Company or the non-

Company party to the Assigned Agreement or any Further Assigned Agreement, but shall not affect

the validity of the assumption and assignment of such Assigned Agreement or Further Assigned

Agreement pursuant to this Order.

17.     The Company and the Winning Bidder are hereby deemed to have provided

adequate assurance of future performance of the Assigned Agreements in accordance with Section

365(b)(1)(C) of the Bankruptcy Code.  The Company and the Winning Bidder are hereby deemed to

have provided adequate assurance of interim performance of the Transitional Contracts to permit

the continuation of such contracts and leases under the protection of the automatic stay prohibiting

their termination by any non-Company party pending their designation as Further Assigned

Agreements, or their rejection by the Company, as the case may be.

## Sale Proceeds

18.     Upon the Closing, the Company is authorized and directed to pay out of sale

proceeds at or incident to the Closing: (i) the Deferred Fee payable to Navigant under the

engagement letter agreement between the Company and Navigant dated March 1, 2011, (ii) the

reasonable transactional costs and expenses of consummating the sale (excluding compensation to

the Company's counsel), and (iii) the sum of $_____ to the Bond Trustee on account of the

Bond Trustee's secured claim.  All remaining proceeds from the sale of the Assets or otherwise

received by the Company pursuant to the APA (including without limitation any portion of the

Deposit received as liquidated damages) shall be held by the Company or its escrow agent in escrow

pending further order of this Court, subject to the rights of all parties in interest including without

limitation the rights asserted by holders of Liens and Claims.  In anticipation that the Closing will

occur by _____, 2011, a hearing before this Court to consider disbursement of such remaining

sale proceeds is hereby scheduled for _____, 2011 at _____ __.m.  Payments of

Prepetition Cure Amounts and Pecuniary Loss Amounts, and any payments payable as to any

Transitional Contracts or Further Assigned Agreements due and payable as of the time of Closing

under the APA shall (except as otherwise agreed between the non-Company party to such contracts

and agreements and the Winning Bidder) be made at Closing and the limitations on payments of

proceeds as provided hereinabove shall not apply to such payments.

### **Other Court Orders**

19.     This Order shall not affect this Court's Final Order Authorizing Use of Cash

Collateral and Providing Adequate Protection entered on _____, 2011 [Docket No. ____

(the "Final Cash Collateral Order"), and the respective rights and obligations of the Company, the

Committee, the Cash Collateral Claimants (as defined in such Order), and other parties in interest

under the Final Cash Collateral Order.

20.     This Order shall not affect this Court's order entered _____, 2011

[SPECIFY ANY EXTANT ORDERS TO BE INCORPORATED INTO OR NOT AFFECTED

BY SALE ORDER].

21.     Nothing contained in any Chapter 11 plan confirmed in these cases or the order of
confirmation confirming any such plan shall conflict with or derogate from the terms of this Order.

### Regulatory Approval; Ratification

22.     Upon recommendation for approval of the Proposed Sale by the Mass. AGO and
the Company's subsequent motion requesting this Court to conduct a hearing to consider
ratification of such approval and any necessary modification of the APA or this Order incident
thereto (a "Ratification Request"), which Ratification Request shall be served upon the United States
Trustee, the Mass. DPH, the Mass. AGO, the City of Quincy, the Bond Trustee, and all parties that
have requested notice and service of pleadings in the Company's Chapter 11 case, this Court shall
schedule an expedited hearing on the Ratification Request to take place not later than 10 days after
the filing of the Ratification Request (the "Ratification Hearing"), at which Ratification Hearing this
Court will undertake the ratification process normally undertaken by the SJC with respect to such
recommendation for approval by the Mass. AGO and shall make such additional findings, rulings
and orders concerning the Proposed Sale as may be appropriate.

### Miscellaneous

23.     The terms and provisions of the APA, together with the terms and conditions of this
Order, shall be binding in all respects upon all entities, including, without limitation, the Company
(including its employees, officers and directors), its estates, all creditors and equity interest holders of
the Company, the Winning Bidder, and their respective affiliates, successors and assigns, agents and
any affected third parties, including, but not limited to, all persons asserting a claim against or
interest in any of the Assets to be sold, conveyed or assigned to the Winning Bidder pursuant to the
APA.

24.     The provisions of this Order shall be binding upon any Chapter 11 trustee or
Chapter 7 trustee appointed in the Company's bankruptcy cases and shall survive and be binding in

the event of any dismissal of such bankruptcy cases.

25. The Company, with the consent of the Committee, not to be unreasonably withheld, is authorized to pay a reasonable administrative fee to First American Title Insurance Company, or such other entity that the Company may select as escrow agent, for serving as escrow agent under the APA or with respect to sale proceeds or other payments under the APA subject to this Order.

26. The Company and the Winning Bidder may request, and upon reasonable request this Court shall enter, an order confirming the authorized sale of any specified Assets to the Winning Bidder pursuant to the APA and this Order, or otherwise clarifying or confirming with particularity any matter addressed by this Order, including without limitation as may be reasonably necessary or desired for purposes of establishing or recording evidence of title to specific Assets.

27. No bulk sales law, or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the APA, the Sale Motion and this Order.

28. This is a final order and is enforceable upon entry and to the extent necessary under Rules 5003, 9014, 9021, and 9022 of the Federal Rules of Bankruptcy Procedure. This Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein and the stay imposed by Fed. R. Bankr. P. 6004(g), 6006(d) and/or 7062 is hereby modified and shall not apply to this Order or the transactions contemplated by the APA. The Company is hereby authorized and directed to consummate the sale of the Assets to the Winning Bidder and to take any other acts required or contemplated under the APA as expeditiously as practicable in the Company's business judgment.

29. This Court retains jurisdiction to:

a.    Interpret, implement and enforce the terms and provisions of this Order, the APA, and the Assigned Agreements;

b.    Protect the Winning Bidder and any of the Assets against any Liens or Claims;

c.    Resolve any disputes arising under or relating to the APA, the Assigned Agreements, the Sale Motion, or this Order; and

d.    Adjudicate all issues concerning asserted pre-Closing Liens or Claims on, and the disposition of the proceeds of the sale of, the Assets.

Dated: _____, 2011

_____
United States Bankruptcy Judge

**Exhibit A**

**Assigned Agreements and Prepetition Cure Amounts**

**<u>Exhibit B</u>**

**Assigned Agreements and Pecuniary Loss Amounts**