UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QUINCY MEDICAL CENTER, INC., | ) | Case No. 11-16394-MSH |
| QMC ED PHYSICIANS, INC., | ) | |
| QUINCY PHYSICIAN CORPORATION, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## DEBTORS' APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF O'NEILL AND ASSOCIATES AS PUBLIC RELATIONS ADVISOR TO THE DEBTORS

Quincy Medical Center, Inc. ("QMC"), QMC ED Physicians, Inc. ("QED") and Quincy Physician Corporation ("QPC" and, with QMC and QED, the "Debtors" or the "Company"), hereby move this Court for entry of an order pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Fed. R. Bankr. P. 2014(a) and 2016(b), authorizing the Company to retain and employ O'Neill and Associates ("O'Neill") as its public relations advisor, on the terms and conditions set forth in the engagement letter agreement between the Company and the Firm dated March 2, 2011 attached as Exhibit A (the "Engagement Letter"). This Application is based in part on the Declaration of Andrew Paven. (the "Paven Declaration") attached as Exhibit B. In support of this Application, QMC respectfully represents:

### Background

1.     On July 1, 2011 (the "Petition Date"), each of QMC, QED and QPC filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts. Their Chapter 11 cases are being jointly administered for procedural purposes only.

2.      Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Company

continues to manage its businesses and financial affairs as debtors-in-possession.  No creditors'

committee has yet been appointed in these cases.

3.      The Company is a non-profit corporation formed to provide quality medical care,

including emergency care, to the Quincy, Massachusetts community and surrounding communities.

QMC's signature asset is its 196-bed acute care hospital (the "Hospital") located in Quincy,

Massachusetts.  QMC operates the Hospital, and related medical and health care facilities.  QED

and QPC are captive entities as to QMC.  Their sole purpose is to own certain third-party payer

contracts and provider numbers under which QMC services are billed to third-party payers, and

neither QED nor QPC own any assets other than these provider numbers and contracts, nor do

they have any other business relationships.  All of the revenues generated under the provider

numbers and contracts are remitted to QMC.  QMC, QED and QPC operate as a single business

enterprise—Quincy Medical Center—and to that end have administered their business and financial

affairs on a consolidated basis; the Company accounts for all operations and financial matters on a

consolidated basis and maintains no separate accounting of QED or QPC revenues or expenses.

## Relief Requested

4.      The Company wishes to retain and employ O'Neill as its advisor on all public

relations matters resulting from this Chapter 11 case.  By this Application, the Company respectfully

requests that this Court enter an order authorizing the Company to employ and retain O'Neill as its

advisor under a general retainer pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code,

effective as of the Petition Date.

5.      The Company seeks to retain O'Neill as its public relations advisor because of its

extensive expertise and experience in the field.  O'Neill served as the Company's prepetition public

relations advisor during the period leading to the Company's Chapter 11 filing, and is familiar with

the Company's business and operations.  The Company desires that O'Neill continue to serve as its

public relations advisor during this Chapter 11 case.  The Company believes that O'Neill's

employment is in the best interest of the Company, its estates and creditors.

## Scope of Employment

6.      The Company wishes to retain O'Neill under a general retainer because of the

extensive public relations services that may be required and the fact that the exact nature and extent

of such services are not known at this time.  The professional services that the Company expects

O'Neill will be called upon to render include, without limitation: strategic communications and

public relations services related to all aspects of the Company's Chapter 11 case, its planned sale of

the Hospital, and related matters.

## Compensation

7.      Section 327(a) of the Bankruptcy Code authorizes the employment of a professional

person by the debtor-in-possession, and Section 328(a) of the Bankruptcy Code provides for such

employment to be on any reasonable terms and conditions of employment.  Pursuant to the

Engagement Letter, the Company has agreed to pay O'Neill a monthly retainer of $10,500 for all

professional services to be rendered by O'Neill, and to reimburse O'Neill for its actual, reasonable

out-of-pocket expenses relating to services rendered.  Subject to this Court's approval and in

accordance with Section 328(a) of the Bankruptcy Code, the Company seeks approval of the

Engagement Letter and authority to pay O'Neill the monthly $10,500 retainer provided for

thereunder.  Given the nature of the services to be provided, the agreement for flat rate payment,

the magnitude of the monthly retainer payment, and the request for approval of the compensation

arrangement under Section 328(a), the Company submits that O'Neill should be excused from any

obligation to file interim or final fee applications under Sections 330 and 331 of the Bankruptcy

Code.

8.    Prior to the Petition Date, the Firm received payments for services rendered to the Company in the aggregate amount of $21,000, representing the monthly $10,500 retainer payments for the period March through April 2011 plus $0 of expense reimbursement for such period.

9.    As of the Petition Date, and in accordance with the Engagement Letter, the Firm holds a retainer in the amount of $10,500 (the "Retainer"), paid by the Company out of operating revenues.

10.    Other than as set forth herein, there is no proposed arrangement to compensate O'Neill.

### The Firm Does Not Hold or Represent Any Adverse Interest

11.    O'Neill has completed a conflicts check that compares a list of O'Neill's current and former clients against the names of: (a) QMC, QED and QPC; (b) the Company's known creditors; and (c) other significant parties in interest in this case.

12.    To the best of the Company's knowledge, based upon the Paven Declaration and except as set forth herein and therein, O'Neill does not hold or represent any interest adverse to the Company or its Chapter 11 estate, creditors, or any other party with an actual or potential conflict in this Chapter 11 case.

13.    Except as set forth herein and in the Paven Declaration, to the best of the Company's knowledge, neither O'Neill nor its partners or associates have any connections with the Company, its creditors, any other parties-in-interest, their current respective attorneys and accountants, the United States Trustee for this district or any person employed in the Office of the United States Trustee for this district, except that: (a) O'Neill may serve as a professional person in other matters, wholly unrelated to the Company or its case, in which attorneys, accountants and other professional persons retained by the Company, creditors or other parties-in-interest have also

been engaged, and (b) certain creditors of the Company may also have been creditors of other

companies represented by O'Neill in matters wholly unrelated to the Company or its case.

### Notice

14.     No trustee, examiner, or official committee has been appointed in these Chapter 11

cases.  The Company is providing notice of this Motion to: (a) the Office of the United States

Trustee; (b) the Company's 20 largest unsecured creditors as reflected in the consolidated list filed

by the Company pursuant to Fed. R. Bankr. P. 1007(d); (c) taxing authorities; (d) all known secured

creditors; and (e) all entities that have requested notice in these cases.  The Company submits that,

given the nature of the relief requested herein, no other or further notice is necessary.

### Conclusion

WHEREFORE, the Company respectfully requests that this Court (i) enter an order, in

substantially the form attached, granting this Application effective as of the Petition Date, and (ii)

grant such other and further relief as this Court may deem just and proper.


Dated:   July ___, 2011

                                    QUINCY MEDICAL CENTER, INC.
                                    QMC ED PHYSICIANS, INC.
                                    QUINCY PHYSICIAN CORPORATION
                                    By their attorneys,


                                    /s/ John T. Morrier
                                    John T. Morrier (BBO #628624)
                                    Michael J. Goldberg (BBO #551869)
                                    A. Davis Whitesell (BBO #551462)
                                    Andrew T. Imbriglio (BBO #676049)
                                    Casner & Edwards, LLP
                                    303 Congress Street
                                    Boston, MA  02210
                                    Tel: 617-426-5900
                                    Fax: 617-426-8810
                                    Email: morrier@casneredwards.com

EXHIBIT A
Engagement Letter

# O'NEILL AND ASSOCIATES

March 2, 2011

Mark O'Neill
Senior Vice President of Finance and
Chief Financial Officer
Quincy Medical Center
114 Whitwell Street
Quincy, MA 02169

Re:    Contract for Professional Services

Dear Mr. O'Neill:

We are pleased to submit to you this letter which will serve as a contract for communications and community relations services to be provided to Quincy Medical Center by O'Neill and Associates. This document details specific services that O'Neill and Associates will provide to Quincy Medical Center as well as time frame, project team and contract terms for the delivery of services. Once you have executed the contract, please return one signed copy to O'Neill and Associates in the enclosed envelope together with a deposit check in the amount of $10,500.

**I.    Scope of Services:**
We will provide you with strategic communications related to all aspects of Quincy Medical Center's business initiative.

**II.    Timeframe:**
O'Neill and Associates will commence services immediately upon full execution of this letter and continue through completion of project.

**III.    Team:**
The O'Neill and Associates team for this project will include Chief Executive Officer Thomas P. O'Neill III, Senior Vice President Andrew Paven, Senior Vice President Cosmo Macero Jr., Vice President Wesley Eberle and other O'Neill and Associates personnel as necessary.

**IV.    Confidentiality:**
We shall not disclose proprietary matters without your permission other than to our employees, counsel and other professional advisors we believe necessary to fully meet our obligations under this agreement, or as required by applicable law or judicial or administrative order. We may, also with your permission, disclose our representation of you to other actual and potential O'Neill and Associates clients.

**V.    Fees, Disbursements and Other Charges:**
You agree under this contract to pay us $10,500 every thirty days as monthly retainer. We require a deposit check in the amount of $10,500 which will be held by us without any obligation to segregate from other funds or to deposit into an interest bearing account. Upon termination of this contract, the deposit will be refunded in full unless it applied to payment of the final month of services hereunder. We reserve the right to apply the deposit to any outstanding invoices. You will be billed for reasonable out of

pocket expenses such as messenger charges, information retrieval, and travel expenses as appropriate to services provided by us to meet our obligations under this agreement.

**VI.    Billing and Payment:**
Our fees and out-of-pocket expenses are due and payable on receipt of our invoice. We will bill on a monthly basis for fees, disbursements and related charges incurred on your behalf. You shall, within fifteen (15) days of receipt, advise us of any dispute related to said invoice, or we shall deem the invoice accepted. While we make every effort to include all disbursements in the invoices for the period in which they were incurred, some costs are not available at the time of billing and must therefore be included in a later invoice. Interest shall be charged at a rate of 12% per annum or at the highest rate permitted by law, whichever is lesser, upon all delinquent invoices.

**VII.   Non-Payment and Collection:**
Failure to pay our invoices within sixty (60) days after the date of invoice may, at our discretion, result in suspension of any or all service to you until payment is received, and may result in termination of the agreement. We shall incur no liability of any kind to you for such suspension or termination. In the event that we must retain counsel or other services to enforce the contract or recover any sum due, you shall be responsible for all said costs and expenses of collection including reasonable attorneys' fees.

**VIII.  Miscellaneous:**
This agreement (1) may not be assigned by either of us without prior written consent of the other; (2) shall bind and benefit each of us and our respective permitted successors or assigns; (3) supersedes any previous agreements, understandings, or discussions with respect to its subject matter, and (4) shall be governed and construed under the laws of the Commonwealth of Massachusetts, and (5) any claim, action, suit or proceeding arising from or relating to this agreement shall be brought and conducted solely and exclusively within the Commonwealth of Massachusetts. Failure by either of us to exercise our rights under this agreement, or to fail to require strict performance of any part of the agreement, shall not constitute a waiver of those rights or provisions, which shall remain in full force and effect. Notice required under this agreement shall be given in writing either by personal delivery, telecopy (with confirmation of receipt) or certified mail, addressed in case of notice to us at: O'Neill and Associates, Thirty-One New Chardon Street, Boston, Massachusetts, 02114, Attention: Shelly M. O'Neill; and in case of notice to you at the name and address set forth above.

**IX.    Termination:**
Either of us may terminate our services for any reason with thirty (30) days' prior written notice. You remain liable for all fees, disbursements and other related charges incurred through and up to the date of termination, as well as all amounts that we must pay to third parties pursuant to non-cancelable agreements we entered into, with your permission, in performance of this contract.

AGREED TO AND ACCEPTED BY:

Agreed to as of   March 2, 2011

Shelly M. O'Neill                                           Date
Chief Operating Officer
O'Neill and Associates

Agreed to as of   March 2, 2011

Mark O'Neill                                                Date
Senior Vice President of Finance and
Chief Financial Officer
Quincy Medical Center

2

EXHIBIT B
Paven Declaration

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| QUINCY MEDICAL CENTER, INC., | ) | |
| QUINCY ED PHYSICIANS, INC., | ) | Case No. 11-16394-MSH |
| QUINCY PHYSICIAN CORPORATION, | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## DECLARATION OF ANDREW PAVEN IN SUPPORT OF THE DEBTORS' APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF O'NEILL AND ASSOCIATES AS PUBLIC RELATIONS ADVISOR TO THE DEBTORS

I, Andrew Paven, declare and state as follows:

1.      I am Senior Vice President at O'Neill and Associates ("O'Neill"), which maintains offices at 31 New Chardon Street, Boston, Massachusetts 02114.

2.      I submit this declaration in connection with the application (the "Application") of Quincy Medical Center, Inc. ("QMC"), QMC ED Physicians, Inc. ("QED") and Quincy Physician Corporation ("QPC" and, with QMC and QED, the "Debtors" or the "Company"), to retain O'Neill as public relations advisor to the Company on all such matters resulting from the Company's chapter 11 case and to provide the disclosures required under Section 327(a) of the Bankruptcy Code, Fed. R. Bankr. P. 2014(a) and 2016(b), and MBLR 2014-1.  The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify competently thereto.

3.      In preparing this Declaration, I submitted to be matched against O'Neill's computer conflict database containing a list of its current and former clients the names of: (a) the Company;

(b) the Company's principal unsecured creditors; and (c) the other significant parties in interest in this case of whom I am aware.

4.      O'Neill maintains and systematically updates the above-described computer conflict database in the regular course of business, and it is the regular practice of O'Neill to make and maintain these records.  The conflict check system and adverse party index maintained by O'Neill is designed to include every matter on which it is now or has been engaged, by which entity it is now or has been engaged, and, in each instance, the identity of related parties and adverse parties.  It is the policy of O'Neill that no new matter may be accepted or opened within O'Neill without completing and submitting to those charged with maintaining the conflict check system and adverse party index the information necessary to check each such matter for conflicts, including the identity of the prospective client, the matter and related and adverse parties.  Accordingly, the database is regularly updated for every new matter undertaken by O'Neill.

5.      To the best of my knowledge, neither I nor any member or employee of O'Neill have any connection with the Company, its creditors, other parties-in-interest, their respective attorneys, accountants and other professional persons, the United States Trustee for this district and any person employed in the office of such United States Trustee, except that: (a) O'Neill may serve as a professional person in other matters, wholly unrelated to the Company or its case, in which attorneys, accountants and other professional persons retained by the Company, creditors or other parties in interest have also been engaged, and (b) certain creditors of the Company may also have been creditors of other companies represented by O'Neill in matters wholly unrelated to the Company or this case.

6.      O'Neill may in the past have represented, may currently represent, and may in the future represent other entities not currently known to it who may be creditors of the Company in matters wholly unrelated to the Chapter 11 case of the Company.  To the extent that O'Neill

2

discovers information concerning any such entities, it will promptly disclose such information to this Court on notice to creditors and the United States Trustee for this district.

      7.      Insofar as I have been able to ascertain, and except as set forth in paragraph 5 above, O'Neill does not represent any interest adverse to the Company in the matters upon which it is to be engaged, and O'Neill and each of its members is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.

      8.      O'Neill is not a creditor of the Company, and it is not an equity security holder or an insider of the Company.  For so long as it represents the Company, O'Neill will not represent any entity other than the Company in connection with this case.

      9.      The professional services that O'Neill expects to render to the Company include, without limitation:  strategic communications and public relations services related to all aspects of the Company's Chapter 11 case, its planned sale of the Hospital, and related matters.

      10.      Pursuant to the Engagement Letter attached as Exhibit A to the Application, O'Neill and the Company have agreed that the Company will pay O'Neill a monthly retainer of $10,500 for all services to be rendered by O'Neill, and will reimburse O'Neill for its reasonable out-of-pocket expenses relating to such services.  Given the nature of the services to be provided, the agreement for flat rate payment, the magnitude of the monthly retainer payment, and the request for approval of the Engagement Letter and proposed compensation arrangement under Section 328(a) of the Bankruptcy Code, O'Neill submits that it appropriately may be excused from any obligation to file interim or final fee applications under Sections 330 and 331 of the Bankruptcy Code.

      11.      Other than as set forth herein, there is no proposed arrangement to compensate O'Neill.  O'Neill has not shared, nor agreed to share (a) any compensation it has received or may receive with any other party or person, other than with its own professionals, or (b) any compensation another person or party has received or may receive.

3

12.    Prior to the Petition Date, the Firm received payments for services rendered to the Company in the aggregate amount of $21,000, representing the monthly $10,500 retainer payments for the period March through April 2011 plus $0 of expense reimbursement for such period.

13.    As of the Petition Date, and in accordance with the Engagement Letter, the Firm holds a retainer in the amount of $10,500 (the "Retainer"), paid by the Company out of operating revenues.

I declare under penalty of perjury that the foregoing is true and correct.  Dated this
30th day of June, 2011, at Boston, Massachusetts.

_____
Andrew Paven

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| QUINCY MEDICAL CENTER, INC., | ) | |
| QUINCY ED PHYSICIANS, INC., | ) | Case No. 11-16394-MSH |
| QUINCY PHYSICIAN CORPORATION, | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## ORDER AUTHORIZING RETENTION
## AND EMPLOYMENT OF O'NEILL AND ASSOCIATES AS PUBLIC
## RELATIONS ADVISOR TO THE DEBTORS

Upon consideration of the Debtors' Application for Order Authorizing Retention and

Employment of O'Neill and Associates (the "Firm") as Public Relations Advisor to the Debtors (the

"Application") filed by Quincy Medical Center, Inc. ("QMC"), QMC ED Physicians, Inc. ("QED")

and Quincy Physician Corporation ("QPC" and, with QMC and QED, the "Debtors" or the

"Company"); and after due deliberation and sufficient cause appearing ,

**THE COURT FINDS AND CONCLUDES THAT:**

A.        This Court has jurisdiction over this case under 28 U.S.C. § 1334(b).

B.        This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.        Due and adequate notice has been given to all parties entitled thereto, and no other

or further notice is necessary or required.

D.        This Court has reviewed the Application and the Declaration of Andrew Paven in

Support of the Application and has considered the representations regarding the relief requested

therein.

E.        The relief requested in the Application is necessary and in the best interests of the

Debtors' and their estates.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Application is granted.

2.      The Engagement Letter[1] is approved and the Company and the Firm are hereby authorized and directed to perform their respective obligations thereunder.

3.      Pursuant to Section 327(a) of the Bankruptcy Code, the Company is hereby authorized and empowered to employ the Firm as its public relations advisor in these Chapter 11 cases, to perform the services set forth in the Application and the Engagement Letter effective as of July 1, 2011.

4.      The Company is authorized to pay the Firm the monthly $10,500 retainer for services rendered, and to reimburse the Firm for its reasonable out-of-pocket expenses relating to such services, as provided by the Engagement Letter, without further order of this Court or the Firm's submission of monthly invoices or fee applications under Sections 330 or 331 of the Bankruptcy Code.

5.      The foregoing arrangements for the Firm's compensation as provided for by the Engagement Letter are approved in accordance with Section 328(a) of the Bankruptcy Code, such that compensation different from such arrangements may be allowed if arrangements prove to have been improvident in light of developments not capable of being anticipated at the time of this Order.

6.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: July _____, 2011

_____
Honorable Melvin S. Hoffman
United States Bankruptcy Judge

---

[1] Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Application.

2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| QUINCY MEDICAL CENTER, INC., | ) | |
| QMC ED PHYSICIANS, INC., | ) | Case No. 11-16394-MSH |
| QUINCY PHYSICIAN CORPORATION, | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## DECLARATION RE: ELECTRONIC FILING
### [Andrew Paven]

I, Andrew Paven, **hereby declare under penalty of perjury** that all of the information contained in my Declaration of Andrew Paven in Support of Application for Order Approving the Debtors' Retention and Employment of O'Neill and Associates as Public Relations Advisor (the "Document") filed electronically, is true and correct. I understand that this DECLARATION is to be filed with Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this DECLARATION may cause the pleadings to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that pursuant to the Massachusetts Electronic Filing Local Rule (MEFR)-7(b), all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated: July 11, 2011

Signed: _____
Andrew Paven