UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

_____

In re:                                          )
                                                )
                                                )        Chapter 11
QUINCY MEDICAL CENTER, INC.,                    )
QMC ED PHYSICIANS, INC.,                        )        Case No. 11-16394-MSH
QUINCY PHYSICIAN CORPORATION                    )
                                                )        (Jointly Administered)
                            Debtors.            )
                                                )
_____

## ORDER (A) APPROVING PROCEDURES  GOVERNING PROPOSED SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES (INCLUDING RELATED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES); (B) APPROVING FORM AND MANNER OF NOTICE OF SALE; AND (C) GRANTING RELATED RELIEF

Upon consideration of the Debtors' Motion For an Order (A) Approving Procedures Governing Proposed Sale of Substantially All Assets Free and Clear of Liens, Claims, and Encumbrances (Including Related Assumption and Assignment of Executory Contracts and Unexpired Leases); (B) Approving Form and Manner of Notice of Sale; and (C) Granting Related Relief [Docket No. 9] (the "Sale Procedures Motion"), pursuant to which Quincy Medical Center, Inc. ("QMC"), QMC ED Physicians, Inc. ("QED") and Quincy Physician Corporation ("QPC" and, with QMC and QED, the "Debtors" or the "Company") seek an order of this Court establishing procedures governing the Company's proposed sale of its (i) interests in real property, including the Company's fee interest in real property improved by its 196-bed acute care hospital (the "Hospital"), (ii) personal property (including equipment, furniture and inventory used to operate the Hospital), (iii) third-party payor contracts and provider numbers under which the Company collects most of its revenue from government and third-party payors, and other unexpired leases and executory contracts as designated by purchaser (the "Assigned Agreements"), and (iv) accounts receivable,

work in process, intellectual property (including the Quincy Medical Center name), and other miscellaneous, specified assets (collectively, the "Assets"); due and adequate notice of the Sale Procedures Motion having been provided; the Court having conducted preliminary hearings on the Sale Procedures Motion on July 1 and July 6, 2011, at which the Court and parties in interest addressed certain aspects of the proposed sale procedures, principally having to do with the timing of the proposed sale process and notice provisions; the Court having conducted a final hearing on the Sale Procedures Motion on July 15, 2011, at which all parties in interest had the opportunity to address the proposed sale procedures, and at which the Company proposed certain revisions to the proposed sale procedures including to address the matters raised by the Court and parties in interest; the Court having considered the arguments of counsel and the proposed revisions to the sale procedures; and good cause appearing for approval of the modified sale procedures;  it is hereby

**ORDERED** that:

1.      The Sale Procedures Motion is granted as provided for herein.

2.      The sale solicitation program described in the Sale Procedures Motion is approved.

3.      The submission of purchase offers for the Company and related Assets shall be governed by the Sale Procedures attached hereto as Exhibit A, which Sale Procedures are hereby approved.  The Company shall solicit competing bids for the Assets to be submitted utilizing an Asset Purchase Agreement substantially in the form of the APA,[1] and competing bidders are directed to utilize the form of Asset Purchase Agreement made available to them by the Company and its advisors to submit competing bids.

4.      The Break-Up Fee payable to Steward subject to the terms and conditions set forth in the APA is hereby approved.

---

[1] Capitalized terms used and not defined herein shall have the meanings ascribed to them in the attached Sale Procedures or (if not defined in the Sale Procedures) the Sale Procedures Motion.

5.    Notice of the Proposed Sale provided in the following manner, coupled with notice of the proposed assumption and assignment of the Assigned Agreements pursuant to Paragraph 8 of this Order, shall be good and sufficient notice of the Proposed Sale for purposes of Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure:

A.    The Company will promptly serve a copy of each of the Sale Motion, this Order (the "Sale Procedures Order"), and notice of the Proposed Sale substantially in the form attached as <u>Exhibit B</u> (the "Sale Notice"), upon (i) the United States Trustee for the District of Massachusetts, (ii) counsel to the Bond Trustee, (iii) counsel to the Creditors' Committee, (iv) counsel to the Attorney General of the Commonwealth of Massachusetts, (v) any entities known to hold a lien or security interest in any of the Assets, and (vi) all parties on the regular service list including all parties that have requested notice and service of pleadings in the Company's Chapter 11 case. Service to the entities listed in clauses (i) through (v) shall be made by overnight delivery service or by hand; service to the entities listed in clause (vi) shall be made by overnight delivery or by United States first class mail.

B.    The Company will promptly serve a copy of the Sale Notice by United States mail upon (i) the Internal Revenue Service, (ii) the United States Attorney for the District of Massachusetts, (iii) each of the Company's federal, state and local taxing authorities, and any federal, state or local governmental agency who has or exercises any licensing, registration or permitting authority over the Company or any of the Assets (other than the Massachusetts Attorney General who will receive notice under Paragraph 5.A), (iv) all relevant environmental regulatory agencies, and (v) all known creditors of the

Company. The Sale Notice will inform such parties that a copy of the Sale

Motion and the Sale Procedures Order may be obtained from the website

maintained for the Company's Chapter 11 case at http://dm.epiq11.com/qmc

(the "Website") or from the Office of the Clerk of the Bankruptcy Court, or

by making a written request to counsel to the Company.

C.      The Company will promptly post a copy of the Sale Notice, Sale Procedures

Order, and Sale Procedures on the Website, and will otherwise make the Sale

Notice, Sale Procedures Order, and Sale Procedures available to prospective

purchasers of the Assets through Navigant's administration of the sale

solicitation program authorized pursuant to Paragraph 2.

6.      The deadline for submission of competing Qualified Bids in accordance with the

Sale Procedures is 4:00 p.m. (prevailing Eastern Time) on August 8, 2011 (the "Bid Deadline"). The

Auction among Qualified Bidders (the "Auction") shall be held on August 15, 2011 at 10:00 a.m. as

provided for by the Sale Procedures.

7.      On August 17, 2011 at 11:00 a.m., a hearing (the "Winning Bidder Hearing") will be

held before the undersigned Judge of the United States Bankruptcy Court to consider approval of

the Winning Bidder in respect of which the Company (i) will seek authority pursuant to Section 365

of the Bankruptcy Code to assume and assign the Assigned Agreements designated by such Winning

Bidder, (ii) will proceed at the Sale Hearing (defined below) to seek entry of the Sale Order

authorizing the sale of the Assets to the Winning Bidder, and (iii) will seek the necessary regulatory

review and approval of the sale of the Assets to the Winning Bidder.

8.      On or before August 20, 2011, the Company will transmit by United States first class

mail to each non-Debtor party to the Assigned Agreements designated by the Winning Bidder,

notice of the proposed assumption and assignment of the Assigned Agreements in substantially the

form attached as <u>Exhibit C</u> (the "Assigned Agreements Notice"), which form of Notice is hereby approved, notifying such non-Debtor parties of the proposed assumption and assignment of such Assigned Agreements and of the deadline for objecting to the proposed assumption and assignment or to assert any sums owed for cure or pecuniary loss under such Assigned Agreements not specified by the Company in such Notice. The Cure Objection Deadline for purposes of the Assigned Agreements Notice shall be September 8, 2011 at 4:00 p.m. (subject to modification at or incident to the Winning Bidder Hearing as circumstances may then warrant). Cure Objections must be prepared, filed and served in accordance with the Procedures Governing Cure Objections constituting *Exhibit B* to the Assigned Agreements Notice, which Procedures are hereby approved. The schedule of Assigned Agreements to be appended as *Exhibit A* to the Assigned Agreements Notice shall identify the non-Debtor parties to the Assigned Agreements in alphabetical order and identify the corresponding contract or lease, as specified by Fed. R. Bankr. P. 6006(e)(2). Notice of the proposed assumption and assignment of the Assigned Agreements provided in compliance with this Order shall be deemed to satisfy the notice and procedural requirements of Section 365 of the Bankruptcy Code and Fed. R. Bankr. P. 6006 without need for the Company to file a separate motion or omnibus motions to assume and assign the Assigned Agreements.

9.      On September 21, 2011 at 10:00 a.m., a hearing (the "Sale Hearing") will be held before the undersigned Judge of the United States Bankruptcy Court to consider approval of the Sale Motion and the Proposed Sale of the Hospital and related Assets to the Winning Bidder, and approval of the proposed assumption and assignment of the Assigned Agreements incident thereto.

10.      Any objections to the Sale Motion, or to the assumption or assignment of any Assigned Agreement, must be filed by 4:00 p.m. (prevailing Eastern Time) on September 8, 2011 (the "Objection Deadline") with the Office of the Clerk, United States Bankruptcy Court, Donohue

Federal Building, 595 Main Street, Room 211, Worcester, MA 01608-2076, and also served so as to

be received by the Objection Deadline by the following parties (the "Notice Parties"):

(a)   bankruptcy counsel to the Company, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210, Attn: John T. Morrier, Esq., Fax (617) 426-8810, email morrier@casneredwards.com (*who shall promptly provide notice of any objection to the Winning Bidder*)

(b)   counsel to the Creditors' Committee, Duane Morris LLP, 470 Atlantic Avenue, Suite 500, Boston, MA 02210, Attn: Jeffrey D. Sternklar, Esq., Fax (857) 401-3105, email: JDSternklar@duanemorris.com

(c)   counsel to the Indenture Trustee for the Company's 2008 MHEFA bond issue, (x) Kaye Scholer LLP, 70 West Madison Street, 41st Floor, Chicago, IL 60602, Attn: Matthew Micheli, Fax (312) 583-2508, email: mmicheli@kayescholer.com, and (y) Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110, Attention: Richard C. Pedone, Esq., email: rpedone@nixonpeabody.com

(d)   the Office of the United States Trustee for the District of Massachusetts, 446 Main Street, 14th Floor, Worcester, MA 01608, Attn: Stephen Meunier, Esq., Fax (508) 793-0558, email: stephen.meunier@usdoj.gov

(e)   the Office of the Attorney General of the Commonwealth of Massachusetts, 1 Ashburton Place, Boston, MA 02108, Attention: Nora Mann, Esq., email: nora.mann@state.ma.us

11.     The Company is authorized and empowered to take or perform such actions and

expend such funds as may be necessary to implement the sale process authorized by this Order,

subject to the authority granted to the Company under any orders of this Court authorizing the

Company's use of cash collateral, including any Budget approved by or otherwise incorporated into

any such cash collateral order.

Dated: July **19**, 2011

_____
Honorable Melvin S. Hoffman
United States Bankruptcy Judge

## Exhibit A

## Sale Procedures

Bidding Process. The Company shall have the right, in coordination with the Committee where such coordination is reasonable and proper, to (i) determine, in consultation with the Bond Trustee and the Committee, whether any person is a Qualified Bidder, (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence reviews, (iii) receive offers from Qualified Bidders, (iv) give notice to all parties with respect to the Sale Procedures and the Auction relating to the Assets, and (v) in consultation with the Bond Trustee and the Committee evaluate and negotiate any bid.

Reservation of Rights. The Company, in consultation with the Bond Trustee and the Committee, and subject to the consent of the Committee, which shall not be unreasonably withheld or, if consent is withheld, the Company with Court approval, may (i) determine, in its business judgment, which Qualified Bid, if any, is the highest or otherwise best offer and (ii) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that, in the Company's sole discretion exercised in consultation with the Bond Trustee and the Committee, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Sale Procedures, or (c) contrary to the best interests of the Company, its estate and creditors. The Company reserves the right to withdraw the Sale Motion at any time prior to Bankruptcy Court approval of the Proposed Sale without liability to the Company.

Due Diligence. Unless a specific exception is granted by the Company, in consultation with the Bond Trustee and the Committee, each bidder must complete all required due diligence prior to the submission of its bid. The Company will provide due diligence information to potential bidders who so request by contacting Greg Hagood of Navigant, Telephone: (404) 504-2017, Fax: (404) 504-2023. The Company shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined herein) or to any person that the Company, in consultation with the Bond Trustee and the Committee, determines is not reasonably likely to be a Qualified Bidder. The Company may condition due diligence disclosures upon a bidder's execution of a confidentiality agreement in a form satisfactory to the Company.

Minimum Amount of Competing Bids. Any competing bids for the Assets must have a value not less than $1,000,000 more than the amount of the Cash Purchase Price payable under the APA based on the equivalent time of Closing under the APA (i.e., competing bids must be for a cash purchase price of at least $39 million for a Closing by October 1, 2011, at least $38 million for a Closing by November 1, 2011, and at least $36 million for a Closing after November 1, 2011). The Company will take into account any assumed liabilities and any adjustments to nominal cash purchase price components of competing bids to compare competing bids on their economic terms and their value to the Company and its creditors.

Required Bid Documents.  Unless otherwise indicated below, all bids must include the following information/documents (the "Required Bid Documents"):

- A legally-binding offer to purchase the Assets (or portion thereof) pursuant to a proposed asset purchase agreement (an "Asset Purchase Agreement") that is in the form of the APA (but from which Sections 7.1 through 7.3 shall be omitted) and that the Company will make available to prospective offerors, marked with any proposed changes from such form APA and providing for the offeror's purchase of the Assets on an "as is, where is" basis, for a cash purchase price of not less than the minimum amount set forth in the preceding paragraph concerning "Minimum Amount of Competing Bids", and not subject to any contingencies other than entry of an order of the Bankruptcy Court authorizing the Company's sale of the Assets free and clear of liens, claims and encumbrances in form and substance customary for Section 363 asset sales of similar nature, and the regulatory approvals specified in the APA and the Sale Motion, and such other contingencies as to which the Company in consultation with the Bond Trustee and the Committee may agree.

- A certified check or wire transfer representing a good faith deposit (the "Deposit"), in the amount of $3,500,000, payable to the order of First American Title Insurance Company as escrow agent for the Company.

- Written evidence of a commitment for financing sufficient to consummate, or other evidence satisfactory to the Company of the bidder's ability to consummate, its proposed purchase of the Assets.

- Full disclosure of the identity of each entity that will be participating in such bid, including any proposed designee(s).  Further, each bid must provide sufficient financial and other information regarding both the bidder and all other parties participating in the bid to satisfy the Company with respect to the requirements enumerated in Section 363(m) of the Bankruptcy Code or as otherwise provided for elsewhere herein.

- Written evidence that the bidder has obtained authorization and approval from its Board of Directors (or comparable governing body) with respect to the submission of its offer, or a representation that no such authorization and approval is required.

- Written evidence of the qualifications and capacity of the bidder to obtain the regulatory approvals necessary to proceed to a closing if designated as the bidder approved by the Bankruptcy Court as having submitted the highest or otherwise best offer to acquire the Assets (the "Winning Bidder"), including specifically the requirements of licensure and Certificate of Need from the Massachusetts Department of Public Health, and of the Office of the Attorney General of the Commonwealth of Massachusetts with respect to matters of Public Charities and otherwise.

- If the bid includes an offer to acquire the QED Shares (defined below), then the bidder (i) must provide written evidence of its ability to comply with the requirement that the QED Shares may be acquired only by an entity described in Section 501(c)(3) or Section 509(a)(1) or (2) of the Internal Revenue Code, and (ii) designate the amount of the portion of the total purchase price for the Assets to be allocated to the QED Shares.

QED Shares. Among the Assets to be sold under the APA is QED's ten percent (10%) ownership interest (the "QED Shares") in BMC NAB Business Trust, a Massachusetts business trust (the "Trust"). Boston Medical Center Corporation ("BMC"), a Massachusetts charitable corporation, owns the other 90 percent (90%) interest in the Trust. The Trust owns the Shapiro Ambulatory Care Center located on the BMC campus in Boston, Massachusetts. The instrument creating the Trust limits ownership of Trust interests to entities that are described in Section 501(c)(3) or Section 509(a)(1) or (2) of the Internal Revenue Code (i.e., non-profit entities). QED has the right under a Shareholders Agreement with BMC to sell its Trust interest to BMC in 2015 for $100,000. Prospective bidders for the Assets may elect to exclude the QED Shares from their competing bids by so indicating in their marked Asset Purchase Agreement submitted in accordance with the Sale Procedures. **In addition, bidders may submit offers to purchase ONLY the QED Shares.** Any bidder that would like to make an offer to purchase only the QED shares must comply with these Sale Procedures except that there shall be no minimum bid amount required for an offer to acquire the QED Shares, and any offer to acquire only the QED Shares must be accompanied by a deposit equal to ten percent (10%) of the bid amount. Steward shall on or before [ _____ , 2011] [the Bid Deadline] file with the Court a written statement indicating (i) that the QED Shares are an Excluded Asset under the APA, or (ii) the amount of the portion of the Cash Purchase Price to be allocated to the QED Shares, together with evidence of its ability to comply with the requirement that the QED Shares may be acquired only by an entity described in Section 501(c)(3) or Section 509(a)(1) or (2) of the Internal Revenue Code. The Debtor shall share with the BMC NAB Business Trust all evidence provided of a bidder's ability to comply with the requirement that the QED Shares may be acquired only by an entity described in Section 501(c)(3) or Section 509(a)(1) or (2) of the Internal Revenue Code.

Bid Deadline. To be considered a timely bid, the bid containing the Required Bid Documents **must be delivered so as to be received not later than 4:00 p.m. (prevailing Eastern time) on August 8, 2011 (the "Bid Deadline")** by the following recipients (the "Bid Recipients"):

| | |
|---|---|
| **Casner & Edwards, LLP** | **[Original Bid and Deposit]** |
| Attn: John T. Morrier, Esq. | |
| 303 Congress Street | |
| Boston, MA 02210 | |
| Fax: (617) 426-8810 | |
| E-mail: morrier@casneredwards.com | |
| | |
| **Navigant Capital Advisors, LLC** | [copy of Bid] |
| Attn: Greg Hagood | |
| 1180 Peachtree Street | |
| Suite 1900 | |
| Atlanta, GA 30309 | |

Fax:  (404) 504-2023
E-mail:  GHagood@ncacf.com

**Kaye Scholer LLP**                                     [copy of Bid]
Attn: Matthew Micheli, Esq.
70 West Madison Street, 41st Floor
Chicago, IL 60602
Fax:  (312) 583-2508
E-mail: mmicheli@kayescholer.com

**Duane Morris LLP**                                     [copy of Bid]
Attn:  Jeffrey D. Sternklar, Esq.
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Fax:  (857) 401-3105
E-mail:  JDSternklar@duanemorris.com

**Edwards Angell Palmer & Dodge LLP**                    [copy of Bid]
Attn:  James D. McGinley, Esq.
111 Huntington Avenue
Boston, MA  02199
Fax:  (888) 325-9119
E-mail:  jmcginley@eapdlaw.com

The Company may, in consultation with the Bond Trustee and the Committee, extend the Bid Deadline once or successively without further notice, but cumulatively not longer than seven days from the initial Bid Deadline save upon further order of the Bankruptcy Court without further notice, but is not obligated to do so.

Qualified Bids.  To constitute a "Qualified Bid" the proposal must include each of the Required Bid Documents listed above and:

- Be timely received by the Bid Recipients.

- Provide information satisfactory to the Company that the bidder is reasonably likely to be able to consummate the proposed transaction if selected as the Successful Bidder (as defined below).

- Not be subject to or conditioned upon any financing contingencies, except as otherwise permitted by the Company in consultation with the Bond Trustee and the Committee.

- Not be conditioned on the outcome of due diligence, except as otherwise permitted by the Company in consultation with the Bond Trustee and the Committee.

- Be binding on each entity or partner participating in the bid.

4

- Not request or entitle the bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment.

- Provide for the closing of such transaction within the same time frame as provided for by the APA, except as may otherwise be agreed to by the Company in consultation with the Bond Trustee and the Committee.

A bidder that submits a bid meeting the above criteria will, subject to the Company's determination exercised in consultation with the Bond Trustee and the Committee, be a "Qualified Bidder." The offer of Steward set forth in the APA shall be deemed to constitute a Qualified Bid and Steward is deemed to be a Qualified Bidder with respect to any Auction (as defined below). Notwithstanding the requirements set forth herein or in the Order, the Bond Trustee shall be deemed to be a Qualified Bidder with respect to any Auction and any offer for the Company's assets made by the Bond Trustee (regardless of the timing or form of such offer) shall be deemed to constitute a Qualified Bid; provided that any consultation rights of the Bond Trustee granted herein shall terminate at the time the Bond Trustee makes an offer for the Company's assets or commences bidding at any Auction.

Auction. After the Bid Deadline, the Company in consultation with the Bond Trustee and the Committee shall review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the transaction process, including those factors affecting the speed and certainty of consummating the proposed transaction, and may negotiate with the Qualified Bidders regarding improvements or alterations of their bids. If at least two Qualified Bids are submitted, then, after all such bids have been so reviewed and negotiated, the Company shall conduct an auction (the "Auction") with respect to the Proposed Sale. **The Auction shall take place beginning at 10:00 a.m. (prevailing Eastern Time) on August 15, 2011 at the offices of the Company's bankruptcy counsel, Casner & Edwards, LLP, 303 Congress Street, Boston, Massachusetts, or such other time or place as the Company shall notify all Qualified Bidders who have submitted Qualified Bids.** Only Qualified Bidders that have submitted a Qualified Bid will be eligible to participate at the Auction. At the Auction, each Qualified Bidder's auction bid(s) shall be deemed to be on the same terms and conditions as such bidder's Qualified Bid as set forth in its Asset Purchase Agreement, except for the offer price and otherwise as expressly agreed upon by the Company in consultation with the Bond Trustee and the Committee. The Auction may be conducted as an open bid auction or by sealed-bid, and on such other terms and conditions, as specified by the Company at the Auction after consultation with the Bond Trustee and the Committee. At the conclusion of the bidding, the Company, in consultation with the Bond Trustee and the Committee, and subject to the consent of the Committee, which shall not be unreasonably withheld or, if consent is withheld, the Company with Court approval, will determine, and then announce, the highest or best bid for the Assets (the "Successful Bid") and the Qualified Bidder submitting such bid (the "Successful Bidder"), after which the Company will seek at the Winning Bidder Hearing approval of the Successful Bidder as the Winning Bidder to whom, subject to subsequent entry of the Sale Order and successful completion of the required regulatory review and approval process regarding the Wining Bidder, the Company will be authorized to sell the Assets, upon which the Proposed Sale shall proceed to closing as provided by and pursuant to the terms and conditions of the APA (as it may be modified to reflect the Successful Bid and any related agreements between the offeror and the Company approved by, or as otherwise directed by, order of the Bankruptcy Court). **If a Qualified Bid for only the QED Shares is submitted, then the**

Auction shall include a separate auction of only the QED Shares at which will be determined the Winning Bidder for the QED Shares. After the Bid Deadline and prior to the Auction, the Company in consultation with the Bond Trustee and the Committee may establish a minimum bid amount for any such Auction of the QED Shares, and the Company shall promptly notify affected Qualified Bidders of any such minimum bid amount.

Acceptance of Qualified Bid. The Company intends to seek approval of the highest or otherwise best Qualified Bid received. The Company's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute the Company's acceptance of the bid. The Company will have accepted a bid only when the bid has been approved by the Bankruptcy Court and the Company has executed the final form of the APA providing for the sale of the Assets as approved by the Bankruptcy Court.

Irrevocability of Bids. Bids shall be deemed irrevocable offers to acquire the Assets and shall remain irrevocable and subject to acceptance by the Company until the Company, in consultation with the Bond Trustee and the Committee, has designated the Successful Bid and the Bankruptcy Court has designated the Winning Bidder at or incident to the Winning Bidder Hearing, at which time any of the bids of Qualified Bidders other than the Winning Bidder shall be deemed rejected and such rejected bidders' Deposits returned. The Successful Bid of the Winning Bidder shall remain an irrevocable offer to acquire the Assets until conclusion of the Sale Hearing, the Bankruptcy Court's entry of the Sale Order authorizing the sale of the Assets to the Winning Bidder, and the execution by the Company and the Winning Bidder of the final APA that embodies the Successful Bid and provides for the sale of the Assets as approved by the Bankruptcy Court and the Sale Order.

**Exhibit B**

**Sale Notice**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| QUINCY MEDICAL CENTER, INC., | ) | |
| QMC ED PHYSICIANS, INC., | ) | Case No. 11-16394-MSH |
| QUINCY PHYSICIAN CORPORATION | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**NOTICE OF (A) INTENDED SALE OF SUBSTANTIALLY ALL ASSETS FREE
AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES (INCLUDING
RELATED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES); (B) SALE PROCEDURES; (C) DEADLINES
FOR SUBMITTING OFFERS AND OBJECTIONS; AND (D) HEARING DATES**

To Creditors and Parties in Interest:

**PLEASE TAKE NOTICE THAT**, pursuant to Sections 105, 363 and 365 of the
Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004 and 6006, and pursuant to the Debtors' Motion
For Authority to Sell Substantially All Assets (Including Through Assumption and Assignment of
Executory Contracts) Pursuant to Sections 363 and 365 of the Bankruptcy Code and Court-
Approved Sale Procedures dated July 1, 2011 [Docket No. 8] (the "Sale Motion"), Quincy Medical
Center, Inc. ("QMC"), QMC ED Physicians, Inc. ("QED") and Quincy Physician Corporation
("QPC" and, with QMC and QED, the "Debtors" or the "Company") intend to sell substantially all
of the Company's assets utilized by the Company in operating its business, including without
limitation the Company's (i) interests in real property, including the Company's fee interest in real
property improved by its 196-bed acute care hospital (the "Hospital"), (ii) personal property
(including equipment, furniture and inventory used to operate the Hospital), (iii) third-party payor
contracts and provider numbers under which the Company collects most of its revenue, and other
unexpired leases and executory contracts as designated by purchaser, and (iv) accounts receivable,
work in process, intellectual property (including the Quincy Medical Center name), and other
miscellaneous, specified assets (collectively, the "Assets"), to Steward Medical Holdings Subsidiary
Five, Inc. ( "Steward") or such other entity that submits the highest or otherwise best offer to
acquire the Assets pursuant to the Sale Procedures (as defined below) (the "Proposed Sale"). The
Proposed Sale is to be made pursuant to the Asset Purchase Agreement between the Company and
Steward (the "APA") attached as Exhibit A to the Sale Motion.

The Proposed Sale is to be governed by the procedures (the "Sale Procedures") approved by
(and attached as Exhibit A to) the Order (A) Approving Procedures Governing Proposed Sale of
Substantially All Assets Free and Clear of Liens, Claims, and Encumbrances (Including Related
Assumption and Assignment of Certain Unexpired Leases of Real Property and Executory
Contracts); (B) Approving Form and Manner of Notice of Sale; and (C) Granting Related Relief

entered by the Bankruptcy Court on July ___, 2011 (the "Sale Procedures Order"). **If you are interested in submitting a bid to purchase the Assets or any substantial portion thereof including the Hospital, please contact the Company's financial advisor, Navigant Capital Advisors, LLC ("Navigant"), Attention: Gregory Hagood,  Phone (404) 504-2017, Fax (404) 504-2023, email: ghagood@ncacf.com, in order (i) to obtain additional information about the Assets and to arrange for execution and delivery to the Company of a confidentiality agreement pursuant to which such additional information will be provided, and (ii) to obtain a copy of the Sale Procedures containing the terms and conditions governing the submissions of bids to purchase the Assets. *Please do not contact the Company or its employees directly.*  Offers to purchase the Assets must comply with the Sale Procedures to be considered for acceptance by the Company and approval by the Bankruptcy Court.  In accordance with the Sale Procedures, competing purchase offers must be submitted by no later than August 8, 2011 at 4:00 p.m. (prevailing Eastern Time).**

Pursuant to Section 363 of the Bankruptcy Code, the Assets will be sold free and clear of liens, claims and encumbrances (except for certain Permitted Exceptions as set forth in the APA), whether consensual or arising by operation of law, with all such liens, claims and encumbrances to attach with equal effect and priority to the proceeds of sale.  The Assets are subject to various liens and security interests, including those asserted by U.S. Bank National Association, as Trustee (the "Bond Trustee") for the holders of $60,250,000 of Massachusetts Health and Educational Facilities Authority ("MHEFA") Revenue Bonds, Quincy Medical Center Issue, Series A (2008) (the "Bonds"), and (ii) Boston Medical Center Corporation.  The Assets will ***not*** be sold free and clear of certain purchase money security interests (PMSI) identified in Schedule 1.1(c) of the APA.  The order of the Bankruptcy Court approving the Proposed Sale will order all parties in possession of Assets being sold to make such Assets available to the Company, with such parties' liens and claims, if any, to attach to the proceeds of sale.

Among the Assets to be sold under the APA is QED's ten percent (10%) ownership interest (the "QED Shares") in BMC NAB Business Trust, a Massachusetts business trust (the "Trust"). Boston Medical Center Corporation ("BMC"), a Massachusetts charitable corporation, owns the other 90 percent (90%) interest in the Trust.  The Trust owns the Shapiro Ambulatory Care Center located on the BMC campus in Boston, Massachusetts.  The instrument creating the Trust limits ownership of Trust interests to entities that are described in Section 501(c)(3) or Section 509(a)(1) or (2) of the Internal Revenue Code (i.e., non-profit entities).  QED has the right under a Shareholders Agreement with BMC to sell its Trust interest to BMC in 2015 for $100,000.  Prospective bidders for the Assets may elect to exclude the QED Shares from their competing bids by so indicating in their marked Asset Purchase Agreement submitted in accordance with the Sale Procedures.  Any prospective bidder that does not exclude the QED Shares from its offer must provide evidence of its ability to comply with the requirement that the QED Shares may be acquired only by an entity described in Section 501(c)(3) or Section 509(a)(1) or (2) of the Internal Revenue Code.  **In addition, bidders may submit offers to purchase ONLY the QED Shares.**  Any bidder that would like to make an offer to purchase only the QED shares must comply with these Sale Procedures except that there shall be no minimum bid amount required for an offer to acquire the QED Shares, and any offer to acquire only the QED Shares must be accompanied by a deposit equal to ten percent (10%) of the bid amount.

Also among the Assets to be sold under the APA are the Company's rights under certain unexpired leases of real and personal property, and under certain executory contracts, to be identified by Steward pursuant to the APA, or by any other Winning Bidder (as defined in the Sale Procedures) under its Asset Purchase Agreement with the Company (the "Assigned Agreements"), which rights are to be transferred through the Company's assumption of the Assigned Agreements, and assignment of the Assigned Agreements to Steward, pursuant to Sections 363 and 365 of the Bankruptcy Code. The order of the Bankruptcy Court approving the sale of the Assets will also serve to bar any and all claims arising out of the Assigned Agreements (subject to the rights of non-Company parties to such agreements to cure of existing defaults and adequate assurance of future performance, in accordance with Section 365 of the Bankruptcy Code), and claims for successor liability. ***The specific Assigned Agreements to be designated for assumption and assignment to the Winning Bidder will be the subject of a separate notice to be transmitted to the non-Debtor parties to such Assigned Agreements after the Bankruptcy Court's designation of the Winning Bidder pursuant to the Sale Procedures. That notice will set forth procedures governing objections to the proposed assumption and assignment of the Assigned Agreements, including with respect to asserted cure payments or adequate assurance of future performance necessary to permit the proposed assumption and assignment.***

**ANY OBJECTIONS TO THE SALE MOTION** must be stated in writing and must state with particularity the grounds for the objection and why the sale of the Assets should not be authorized and must be filed with the Office of the Clerk, United States Bankruptcy Court, Donohue Federal Building, 595 Main Street, Room 211, Worcester, MA 01608-2076, no later than 4:00 p.m. (prevailing Eastern Time) on September 8, 2011 (the "Objection Deadline"), and a copy served upon each of the following parties (the "Notice Parties") so as to be received by such Objection Deadline:

(a)     bankruptcy counsel to the Company, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210, Attn: John T. Morrier, Esq., Fax (617) 426-8810, email morrier@casneredwards.com (*who shall promptly provide notice of any objection to the Winning Bidder*)

(b)     counsel to the Creditors' Committee, Duane Morris LLP, 470 Atlantic Avenue, Suite 500, Boston, MA 02210, Attn: Jeffrey D. Sternklar, Esq., Fax (857) 401-3105, email: JDSternklar@duanemorris.com

(c)     counsel to the Indenture Trustee for the Company's 2008 MHEFA bond issue, (x) Kaye Scholer LLP, 70 West Madison Street, 41st Floor, Chicago, IL 60602, Attn: Matthew Micheli, Fax (312) 583-2503, email: mmicheli@kayescholer.com, and (y) Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110, Attention: Richard C. Pedone, Esq., email: rpedone@nixonpeabody.com

(d)     the Office of the United States Trustee for the District of Massachusetts, 446 Main Street, 14th Floor, Worcester, MA 01608, Attn: Stephen Meunier, Esq., Fax (508) 793-0558, email: stephen.meunier@usdoj.gov

(e)  the Office of the Attorney General of the Commonwealth of Massachusetts, 1 Ashburton Place, Boston, MA 02108, Attention: Nora Mann, Esq., email: nora.mann@state.ma.us

Objections to the Sale Motion (or to assumption and assignment of any Assigned Agreement) will be governed by Fed. R. Bankr. P. 9014.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "Winning Bidder Hearing") will be held before the Honorable Melvin S. Hoffman, United States Bankruptcy Judge, in the United States Bankruptcy Court, Donohue Federal Building, Third Floor (Courtroom 3), 595 Main Street, Worcester, Massachusetts, on August 17, 2011 at 11:00 a.m. (prevailing Eastern Time) to consider approval of the Winning Bidder in respect of which the Company (i) will seek authority pursuant to Section 365 of the Bankruptcy Code to assume and assign the Assigned Agreements designated by such Winning Bidder, (ii) will proceed at the Sale Hearing (defined below) to seek entry of the Sale Order authorizing the sale of the Assets to the Winning Bidder, and (iii) will seek the necessary regulatory review and approval of the sale of the Assets to the Winning Bidder.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "Sale Hearing") will be held before the Honorable Melvin S. Hoffman, United States Bankruptcy Judge, in the United States Bankruptcy Court, Donohue Federal Building, Third Floor (Courtroom 3), 595 Main Street, Worcester, Massachusetts, on September 21, 2011 at 10:00 a.m. (prevailing Eastern Time) to consider (i) approval of the Sale Motion and the sale of the Assets to the Winning Bidder, and (ii) any objections to assumption and assignment of the Assigned Agreements.

**PLEASE TAKE FURTHER NOTICE THAT** any interested party requesting additional information with respect to the Proposed Sale or with respect to submitting a bid to purchase the Assets may (in addition to contacting Navigant as set forth above) contact counsel to the Company, John T. Morrier, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210, Phone (617) 426-5900, Fax (617) 426-8810, email morrier@casneredwards.com, provided that notwithstanding any information which may be provided, all entities submitting an offer shall be relying upon their own independent due diligence and analysis.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Sale Motion and the Sale Procedures Order may be obtained from the Office of the Clerk, United States Bankruptcy Court, Donohue Federal Building, 595 Main Street, Room 211, Worcester, MA 01608-2076, at the website maintained for the Company's Chapter 11 case at http://dm.epiq11.com/qmc, or by making a written request to undersigned counsel to the Company.

Dated: July ___, 2011

QUINCY MEDICAL CENTER, INC.
QMC ED PHYSICIANS, INC.
QUINCY PHYSICIAN CORPORATION
By their attorneys,


*/s/ John T. Morrier* ___
John T. Morrier (BBO #628624)
Michael J. Goldberg (BBO #551869)
A. Davis Whitesell (BBO #551462)
Andrew T. Imbriglio (BBO #676049)
Casner & Edwards, LLP
303 Congress Street
Boston, MA  02210
Tel: 617-426-5900
Fax: 617-426-8810
Email: morrier@casneredwards.com

## Exhibit C

## Assigned Agreements Notice

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| QUINCY MEDICAL CENTER, INC., | ) | |
| QMC ED PHYSICIANS, INC., | ) | Case No. 11-16394-MSH |
| QUINCY PHYSICIAN CORPORATION | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES INCIDENT TO SALE OF SUBSTANTIALLY ALL ASSETS, AND OF RELATED HEARING AND OBJECTION DEADLINE

To the Non-Debtor Parties to the Assigned Agreements Listed on Attached <u>Exhibit A</u> (the "Agreement Parties"), and to Other Parties in Interest:

**PLEASE TAKE NOTICE THAT**, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004 and 6006, and pursuant to the Debtors' Motion For Authority to Sell Substantially All Assets (Including Through Assumption and Assignment of Executory Contracts) Pursuant to Sections 363 and 365 of the Bankruptcy Code and Court-Approved Sale Procedures dated July 1, 2011 [Docket No. 8] (the "Sale Motion"), Quincy Medical Center, Inc. ("QMC"), QMC ED Physicians, Inc. ("QED") and Quincy Physician Corporation ("QPC" and, with QMC and QED, the "Debtors" or the "Company") intend to sell substantially all of the Company's assets utilized by the Company in operating its business (the "Assets") to [WINNING BIDDER] ("Purchaser") and, incident thereto, to assume and assign to Purchaser the executory contracts and unexpired leases listed on attached <u>Exhibit A</u> (the "Assigned Agreements"). The order of the Bankruptcy Court approving the sale of the Assets will also serve to bar any and all claims arising out of the Assigned Agreements (subject to the rights of non-Company parties to such agreements to cure of existing defaults and adequate assurance of future performance, in accordance with Section 365 of the Bankruptcy Code), and claims for successor liability. The Company has determined that the amount to be paid to cure existing prepetition arrearages or defaults under each Assigned Agreement is as set forth in <u>Exhibit A</u> for such Assigned Agreement in the column entitled "Cure Amount" (the "Cure Amounts").

*Each Agreement Party should review the List of Assigned Agreements attached as <u>Exhibit A</u> and locate its name and the contract(s) or lease(s) to which it is a party that are proposed to be assumed by the Company and assigned to Purchaser incident to the closing of the sale of the Assets. The List of Assigned Agreements lists the Agreement Parties in alphabetical order, identifies the affected contracts and leases, and specifies for each affected contract and lease the Cure Amount determined by the Company to be owing under such contract or lease as of June 30, 2011.*

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to Section 365 of the Bankruptcy Code and Fed. R. Bankr. P. 6006, objections to the proposed assumption and assignment of the Assigned Agreements, and any claim for cure of defaults in excess of the Cure Amounts or adequate assurance of future performance pursuant to Section 365(b) or (f) of the Bankruptcy Code, must be stated in writing with particularity and must be filed with the Office of the Clerk, United States Bankruptcy Court, Donohue Federal Building, 595 Main Street, Room 211, Worcester, MA 01608-2076, no later than 4:00 p.m. (prevailing Eastern Time) on September __, 2011 (the "Objection Deadline"), and a copy served upon each of the following parties (the "Notice Parties") so as to be received by such Objection Deadline:

(a)   bankruptcy counsel to the Company, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210, Attn: John T. Morrier, Esq., Fax (617) 426-8810, email morrier@casneredwards.com [(*who shall promptly provide notice of any objection to the Winning Bidder*)]

(b)   counsel to the Creditors' Committee, Duane Morris LLP, 470 Atlantic Avenue, Suite 500, Boston, MA 02210, Attn: Jeffrey D. Sternklar, Esq., Fax (857) 401-3105, email: JDSternklar@duanemorris.com

(c)   [counsel to the Indenture Trustee for the Company's 2008 MHEFA bond issue, (x) Kaye Scholer LLP, 70 West Madison Street, 41st Floor, Chicago, IL 60602, Attn: Matthew Micheli, Fax (312) 583-2508, email: mmicheli@kayescholer.com, and (y) Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110, Attention: Richard C. Pedone, Esq., email: rpedone@nixonpeabody.com]

(d)   [the Office of the United States Trustee for the District of Massachusetts, 446 Main Street, 14th Floor, Worcester, MA 01608, Attn: Stephen Meunier, Esq., Fax (508) 793-0558, email: stephen.meunier@usdoj.gov]

(e)   [counsel to Purchaser]

Objections to the proposed assumption and assignment of any Assigned Agreement will be governed by Fed. R. Bankr. P. 9014.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing to consider approval of the proposed assumption and assignment of the Assigned Agreements will be held concurrently with the hearing to consider approval of the proposed sale of the Assets (the "Sale Hearing") to be held before the Honorable Melvin S. Hoffman, United States Bankruptcy Judge, in the United States Bankruptcy Court, Donohue Federal Building, Third Floor (Courtroom 3), 595 Main Street, Worcester, Massachusetts, on September 21, 2011 at 10:00 a.m. (prevailing Eastern Time)

**PLEASE TAKE FURTHER NOTICE THAT** any Agreement Party seeking additional information with respect to the Proposed Sale or with respect to the Company's proposed assumption and assignment of any Assigned Agreement may contact bankruptcy counsel to the Company, John T. Morrier, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210,

Phone (617) 426-5900, Fax (617) 426-8810, email morrier@casneredwards.com, or the Company's financial advisor, Navigant Consulting, Inc., Attention: Robert Annas, Phone (404) 575-3824, Fax (413) 669-9790, email: robert.annas@ncacf.com.  In addition, copies of the Sale Motion may be obtained from the Office of the Clerk, United States Bankruptcy Court, Donohue Federal Building, 595 Main Street, Room 211, Worcester, MA 01608-2076, at the website maintained for the Company's Chapter 11 case at *http://dm.epiq11.com/qmc*, or by making a written request to undersigned counsel to the Company.

Dated:  August ____, 2011

>QUINCY MEDICAL CENTER, INC.
>QMC ED PHYSICIANS, INC.
>QUINCY PHYSICIAN CORPORATION
>By their attorneys,
>
>*/s/ John T. Morrier*
>John T. Morrier (BBO #628624)
>Michael J. Goldberg (BBO #551869)
>A. Davis Whitesell (BBO #551462)
>Andrew T. Imbriglio (BBO #676049)
>Casner & Edwards, LLP
>303 Congress Street
>Boston, MA  02210
>Tel: 617-426-5900
>Fax: 617-426-8810
>Email: morrier@casneredwards.com

<u>**Exhibit A to Assigned Agreements Notice**</u>

<u>**List of Assigned Agreements**</u>

**[TO BE PROVIDED]**

## Exhibit B to Assigned Agreements Notice

## Procedures Governing Cure Objections

Cure Objections.  Any non-Debtor party to an Assigned Agreement (an "Agreement Party") seeking to assert that any defaults, conditions or pecuniary losses under any Assigned Agreement (other than as set forth in the column entitled "Cure Amount" for such Assigned Agreement on forgoing Exhibit A to this Notice) must be cured or satisfied in order for such contract to be assumed and/or assigned (collectively, the "Cure Obligations") or who otherwise objects to the proposed assumption and assignment of such Assigned Agreement for any reason, shall be required to file and serve an objection ("Cure Objection") setting forth with specificity any and all Cure Obligations which such party asserts must be cured or satisfied with respect to such Assigned Agreement and any and all objections to the proposed assumption and assignment of such Assigned Agreement.

Cure Objection Deadline.  To be considered a timely Cure Objection, the Agreement Party interposing the Cure Objection must file it with the Bankruptcy Court, and serve a copy of such Cure Objection upon each of the Notice Parties, **so as to be filed and received not later than 4:00 p.m. (prevailing Eastern Time) on September ___, 2011 (the "Cure Objection Deadline")**.  The Company may, in its sole discretion, extend the Cure Objection Deadline once or successively without further notice, but is not obligated to do so.

Failure to File Cure Objection.  Unless a Cure Objection is filed and served by a party to an Assigned Agreement by the Cure Objection Deadline, the Bankruptcy Court may enter an order authorizing or effecting the assumption and assignment of such Assigned Agreement at the Sale Hearing without regard to any objection such party may have.

Waiver of Cure Objection.  Agreement Parties who fail to file and serve Cure Objections as provided above shall be deemed to have waived and released any Cure Obligation and shall be forever barred and estopped from objecting to the validity or enforceability of the assumption and assignment of the Assigned Agreement, and from asserting or claiming against the Company, the purchaser, or any other assignee of the relevant Assigned Agreement that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such Assigned Agreement for the period prior to the Cure Objection Deadline.

Contents of Cure Objection.  The Cure Objections shall set forth the cure amount the objector asserts is due, the period(s) to which such amounts relate, the specific types and dates of any alleged defaults, pecuniary losses and conditions to assignment, and the support therefor, and any other information necessary to establish the basis for the Cure Objection. All documents or writings establishing the claim must be attached to the Cure Objection, provided, however, that although the underlying obligation itself must be asserted in detail, specific dollar amounts for unliquidated claims or adjustments not yet known (collectively, the "Unliquidated Charges"), as set forth in the relevant Assigned Agreement, need not be included in the Cure Obligations.  A statement indicating the nature of the Unliquidated Charges and the period(s) in which they accrued must be included.  The amount of any Unliquidated Charges asserted in compliance with these procedures shall be determined by

further order of the Bankruptcy Court or by stipulation between the Company and the affected non-Company party to the Assigned Agreement.

Cure Objection Hearings.  Hearings to resolve Cure Objections, if any, shall be held concurrently with the Sale Hearing (or at such other earlier or later date as the Bankruptcy Court may designate).  If any Assigned Agreement is assumed and assigned prior to resolution of a Cure Objection, appropriate means for assuring payment of a liquidated Cure Obligation timely asserted by the Agreement Party (or such lower amount as may be fixed by the Bankruptcy Court) shall be established by order of the Bankruptcy Court or mutual agreement of the parties.

Reservation of Rights.  The Company reserves the right, subject to the assent of the Winning Bidder not to be unreasonably withheld, to remove any Assigned Agreement from the proposed sale and to withdraw the request to assume and assign any Assigned Agreement, in which event an appropriate adjustment may be made to the purchase price for the Assets to reflect the exclusion of the Assigned Agreement from the sale.

Limitation of Objection.  A timely filed and served Cure Objection shall reserve the objecting party's rights respecting its Cure Obligation but shall not be deemed to constitute an objection to the relief generally requested in the Sale Motion.

Further Assigned Agreements.  Pursuant to the terms of the APA, the Company proposes to defer the decision to assume, or to reject, certain executory contracts and leases to which it is a party until a later point in time.  As to such executory contracts and assigned leases constituting Transitional Contracts under the APA, the Company proposes to continue current postpetition payments to the non-Company parties to such agreements pending designation of such agreements for assumption or rejection.  As to such contracts designated for assumption and assignment by the Winning Bidder, such contracts ("Further Assigned Agreements") shall be subject to future notice, cure and objection procedures substantially similar to those set forth above.