**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)**

| | |
|---|---|
| In re:<br><br>QUINCY MEDICAL CENTER, INC.,<br>QMC ED PHYSICIANS, INC. and<br>QUINCY PHYSICIAN CORPORATION<br><br>Debtors. | Chapter 11<br><br>Case Nos. 11-16394-MSH<br>11-16395-MSH and<br>11-16396-MSH<br><br>(Jointly Administered) |

**JOINT LIMITED OBJECTION TO**
*DEBTORS' MOTION FOR AUTHORITY TO SELL SUBSTANTIALLY ALL ASSETS (INCLUDING THROUGH ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS) PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND COURT-APPROVED SALE PROCEDURES*

Shields Oncology Services, Inc. ("Shields"), Partners HealthCare System, Inc. ("Partners") and South Shore Hospital, Inc. ("South Shore") submit this limited objection to the *Debtors' Motion for Authority to Sell Substantially All Assets (Including through Assumption and Assignment of Executory Contracts) Pursuant to Sections 363 and 365 of the Bankruptcy Code and Court-Approved Sale Procedures* [docket entry no. 8] (the "Sale Motion"). Shields, Partners and South Shore are collectively referred to herein as the "Objecting Partners." In support of this Limited Objection, the Objecting Partners respectfully state as follows:

**BACKGROUND**

1. On July 1, 2011, the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), in this Court.

2. South Suburban Oncology Center Limited Partnership (the "Limited Partnership") was formed as a limited partnership under the Massachusetts Uniform Limited Partnership Act,

M.G.L. ch. 109, §§1 *et seq.* (the "MULPA"), pursuant to a certificate of limited partnership filed with the Massachusetts Secretary of State on October 15, 1993. A copy of the certificate of limited partnership is attached hereto as <u>Exhibit A</u>.

3. An Agreement of Limited Partnership of the Limited Partnership was entered into as of December 21, 1993 (the "Agreement"). By its terms, the Agreement is confidential. Upon the Court's request, the Objecting Parties will provide the Court with a copy of the Agreement by filing it under seal.

4. The Agreement was amended by an Amendment to Agreement of Limited Partnership dated September 1998 (the "Amendment"). The Amendment is also confidential. Upon the Court's request, the Objecting Parties will provide the Court with a copy of the Amendment by filing it under seal. The Agreement as amended by the Amendment is referred to herein as the "Limited Partnership Agreement."

5. Shields is the general partner of the Limited Partnership. The Objecting Parties will refer herein to certain relevant provisions of the Limited Partnership Agreement that do not contain sensitive confidential information.

6. Partners, South Shore and QMC ED Physicians, Inc. (f/k/a Quincy City Health Care Company, Inc.) ("QMC") are the limited partners of the Limited Partnership.

7. QMC is one of the Debtors in these jointly administered proceedings.

8. Pursuant to Article 2.1(l) of the APA (as that term is defined in the Sale Motion), the Debtors propose to "sell, transfer, assign, convey and deliver" their ownership interest in the Limited Partnership, "to the extent transferable."

## Objection to Sale of Debtors' Interest in Limited Partnership

*Assignment and Admission Require Consent of Shields*

9.  With respect to the assignment of partnership interests, the MULPA provides that "[e]xcept as provided in the partnership agreement, a partnership interest is assignable in whole or in part." M.G.L. ch. 109, § 40. Implicit in that provision is that any assignment must be made in accordance with the applicable terms of a partnership agreement.

10. The statute further provides that "[a]n assignee of a partnership interest...may become a limited partner if and to the extent that (1) the assignor gives the assignee that right in accordance with authority described in the partnership agreement, or (2) all other partners consent." *Id.* at § 42(a).

11. Article 9.1 of the Limited Partnership Agreement restricts the assignment of partnership interests and the admission of substitute limited partners.[1] Specifically, that provision provides as follows:

> No Limited Partner may transfer, sell, assign, pledge, or otherwise encumber or dispose of any or all of its interest in the Partnership, whether voluntarily, involuntarily or by operation of law, except with the consent of the General Partner, which may be given or withheld in its sole discretion. An assignee shall not, except as otherwise specifically provided in this Article, (i) be admitted to the Partnership as a Partner, or (ii) have any rights other than those provided by the Act to an assignee which has not been admitted as a partner. With the prior consent of the General Partner given in its discretion, any assignee of a financial interest in the Partnership may be admitted to the Partnership as a Partner in the place of its assignor to the extent of the financial interest so assigned upon satisfaction of the following conditions of admission to the

---

[1] Article 9.3 of the Limited Partnership Agreement grants each partner the right to transfer, sell or assign its interest in the Limited Partnership to an "Affiliate." The Limited Partnership Agreement provides that Quincy Hospital, but no other entity, is an "Affiliate" of QMC. To the extent that the Sale Motion contemplates the transfer of QMC's interest in the Limited Partnership to any entity other than Quincy Hospital, the Objecting Partners object to the Sale Motion.

3

>Partnership: (a) the assignee shall have executed a written agreement to and adoption of the terms and provisions under this Agreement, as it may have been amended, (b) the assignee shall have executed, acknowledged and, if requested, sworn to such other instruments as the General Partner deems necessary or desirable to effectuate such assignment and admission, and (c) the Assignee shall have made satisfactory arrangements with the General Partner for paying the Partnership's reasonable costs and expenses related to such admission.

12. Shields has not consented to the assignment of QMC's interest in the Limited Partnership or to the admission of any assignee of QMC to the Limited Partnership as a partner.

13. Further, to the extent that the Debtors propose that QMC's assignee shall be admitted to the Limited Partnership as a partner, the APA is not contingent upon such assignee's compliance with the admission terms of the Limited Partnership Agreement.

14. Accordingly, to the extent that the Debtors seek authority to assign any interest in the Limited Partnership without the consent of Shields or to substitute a limited partner without the consent of Shields and without the assignee first fully complying with the provisions of the Limited Partnership Agreement, including without limitation, the opinion of counsel required under Article 9.2 of the Limited Partnership Agreement, the Objecting Partners object to the Sale Motion.

*The Limited Partnership Agreement is not "Executory"*

15. "Section 365 of the Bankruptcy Code provides that, with certain exceptions, the trustee, subject to court approval, may assume or reject an executory contract of the debtor. The Code furnishes no express definition of an executory contract." *Summit Inv. & Dev. Corp. v. LeRoux*, 167 B.R. 318, 320 (Bankr. D. Mass. 1994).

16. Relying upon the Countryman definition of an executory contract,[2] one Massachusetts Bankruptcy court has determined that a limited partnership agreement was "executory" where "all of the general partners have an obligation to continue to 'do all things which may be reasonably necessary to manage the affairs and business of the partnership. [Because] [m]any material obligations among the partners still remain....[Judge Hillman found] that the Second Limited Partnership Agreement is an executory contract subject to § 365." *Id.*

17. Here, Shields is the sole general partner of the Limited Partnership, empowered under Article 3 of the Limited Partnership Agreement to manage the Limited Partnership. This is in stark contrast to the case before Judge Hillman, where each of the contesting parties was a general partner entitled to participate in the management of the limited partnership. *Id.*

18. Further, Article 3.8 of the Limited Partnership Agreement specifies that each of limited partners "shall have no right to conduct or control the [Limited] Partnership business, and shall have no power or authority to act for or bind the [Limited] Partnership" "[e]xcept for the limited rights" expressly provided for in the Limited Partnership Agreement."

19. Accordingly, unlike in *Leroux*, the limited partners in the Limited Partnership do not have obligations to "manage the affairs and business" of the Limited Partnership. As a result, they do not have "many material obligations" among themselves or owing to Shields and the Limited Partnership Agreement is not "executory" within the meaning of Section 365 of the Bankruptcy Code.

---

[2] "Professor Countryman...defined an executory contract as one under which the obligations of both parties are so far unperformed that the failure of either party to perform would constitute a material breach excusing the performance of the other." *Id.* (citation omitted).

5

### *The Limited Partnership Agreement May Not Be Assumed and Assigned*

20.     Even if this Court determines that the Limited Partnership Agreement is "executory," as set forth below, it may not be assumed and assigned by the Debtors.

21.     The Bankruptcy Code provides that a trustee may assign an executory contract, despite limitations on doing so contained in the contract, unless a subsection of Section 365 requires otherwise.  11 U.S.C. § 365(f)(1) ("Except as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract...of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract...the trustee may assign such contract or lease under paragraph (2) of this subsection.").

22.     In order to assign an executory contract, the trustee must first assume it in accordance with Section 365 of the Bankruptcy Code.  *Id.* at § 365(f)(2) ("The trustee may assign an executory contract...of the debtor only if...the trustee assumes such contract...in accordance with the provisions of this section...and...adequate assurance of future performance by the assignee of such contract...is provided...").

23.     In summary, "the trustee[] may assume and assign [a limited partnership agreement], notwithstanding a restriction on assignment contained in the partnership agreement or applicable law, unless section 365(c) precludes it."  *In re Schick*, 235 B.R. 318, 321(Bankr. S.D.N.Y. 1999).

24.     Section 365(c)(1) of the Bankruptcy Code provides that "[t]he trustee may not assume or assign any executory contract...of the debtor ... if...applicable law excuses a party, other than the debtor, to such contract...from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession...and...such party does not consent to such assumption or assignment...."

25.     Here, the "applicable law" referred to by Section 365(c)(1) of the Bankruptcy Code includes the MULPA.  *See In re Pioneer Ford Sales, Inc.,* 729 F.2d 27, 28 (1st Cir. 1984) ("The words 'applicable law' in [section 365(c)(1)] mean 'applicable non-bankruptcy law." (citation omitted)); *In re Morgan Sangamon Partnership*, 269 B.R. 652, 654 (Bankr. N.D. Ill. 2001) (The court determined that for the purposes of Section 365(c)(1), "[t]he state or applicable law [with respect to a general partnership] is the Uniform Partnership Act....").

26.     The MULPA permits assignment as expressly provided in the Limited Partnership Agreement or as set forth in the default provisions of the statute.  *See* M.G.L. ch. 109, § 40 ("Except as provided in the partnership agreement, a partnership interest is assignable in whole or in part.").  Further, the MULPA provides that an assignee may become a limited partner in accordance with the terms of the Limited Partnership agreement or as set forth in the default provisions of the statute.  *See id.* at § 42(a) ("An assignee of a partnership interest...may become a limited partner if and to the extent that (1) the assignor gives the assignee that right in accordance with authority described in the partnership agreement, or (2) all other partners consent.").  Although contractual prohibitions are to be ignored for purposes of Section 365(c)(1), the "applicable law" (i.e. the MULPA) specifically incorporates such provisions.  For that reason, those contractual prohibitions should be given effect in the Section 365(c)(1) analysis*.  See In re Commonwealth Mortgage Co., Inc.*, 149 B.R. 4, 7 (Bankr. D. Mass. 1992) (implying that if regulations rise to the level of "state law," then "contractual terms incorporated into [those regulations] by reference" may also constitute "applicable law" for Section 365(c)(1) purposes).

27.     As set forth above, absent the (a) consent of Shields to the assignment of any interest in the Limited Partnership or to the substitution of any limited partner of the Limited

7

Partnership and (b) compliance by the assignee/substitute-limited-partner with other obligations specified in the Limited Partnership Agreement, each of the Objecting Partners would be excused from accepting performance from or rendering performance to an assignee of the Debtors. This is in accordance with the "principle of...the choice of person" upon which "[t]he statutory proscription barring non-consensual assignments of membership in [a] partnership is based." *In re Schick*, 235 B.R. at 324. "At the heart of the partnership concept is the principle that partners may choose with whom they wish to be associated...The restriction on the transfer of membership has been part of the limited partnership laws since the promulgation of the original Uniform Limited Partnership Act in 1916....Accordingly, [the principle of the choice of person] still provides the underlying rationale for restricting the admission of new or substitute limited partners." *Id.* (internal quotation marks and citations omitted).

28. Shields has not consented to the assignment of any interest in the Limited Partnership or to the substitution of any limited partner in the Limited Partnership.[3]

29. Moreover, the APA fails to require compliance by the assignee of QMC with the terms of the Limited Partnership Agreement as a condition to the consummation of the APA.

30. Therefore, under Section 365(c)(1) of the Bankruptcy Code, the Limited Partnership Agreement is not an executory contract that may be assumed or assigned by the Debtors.

31. Further, even if the contractual provisions regarding assignment and substitution are given no effect, the default provisions of the MULPA would prohibit substitution of a limited

---

[3] The MULPA provides an alternative way to authorize the substitution of a limited partner, in the event that the requirements for substitution set forth in the partnership agreement are not met. *See* M.G.L. ch. 109, § 42(a). That alternative requires consent of all partners to the substitution. Here, none of the Objecting Partners has agreed to admit any assignee of QMC as a limited partner in the Limited Partnership. Accordingly, the MULPA alternative would not permit any assignee of QMC to become a limited partner in the Limited Partnership.

8

partner in the Limited Partnership unless all of the partners consent to the substitution. *See id.* at 323 ("Faced with a state law restricting assignment (contractual restrictions are immaterial under § 365(c)), a court must inquire into its rationale and uphold the restriction under section 365(c) if the identity of the contracting party is material to the agreement.").

32. Here, none of Shields, Partners or South Shore has consented to the substitution of QMC's assignee as a limited partner in the Limited partnership. Accordingly, "applicable law" (i.e. the MULPA) would excuse each of those parties from accepting performance from or rendering performance to QMC's assignee such that Section 365(c)(1) of the Bankruptcy Code is applicable and bars assumption and assignment of QMC's interest in the Limited Partnership. *See In re West Electronics, Inc.*, 852 F.2d 79, 83 (3rd Cir. 1988) ("[I]f non-bankruptcy law provides that the government would have to consent to an assignment of the West contract to a third party, i.e., someone 'other than the debtor or the debtor in possession,' then West, as the debtor in possession, cannot assume that contract. This provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment." (citations omitted)).

33. For these reasons, to the extent that the Debtors seek authority to assume or assign any interest in the Limited Partnership or to substitute QMC's assignee as a limited partner in the Limited Partnership, without the consent of Shields (and each other limited partner if the default provisions of MULPA govern) and without the assignee fully complying with the provisions of Limited Partnership Agreement, the Objecting Partners object to the Sale Motion.

*If QMC's Interest May Be Assumed and Assigned, that Interest is
Limited to QMC's Economic Rights in the Limited Partnership*

34. Courts have held that where a debtor proposes to assume and assign its rights and obligations under a limited partnership agreement without obtaining the consent required by

9

Section 365(c)(1), a court may permit assignment of that partner's economic rights in accordance with applicable nonbankruptcy law, but not its membership in the limited partnership. *See In re Schick*, 235 B.R. at 323-24.

35. In *In re Schick*, the court looked to "relevant partnership law" to determine what limited partnership interests could be assigned. *Id.* at 323.

36. First, the court determined that the applicable state law "defines a 'partnership interest' to mean the partner's share of profits and losses and his right to receive distributions." *Id.* This is similar to the MULPA, which defines "[p]artnership interest" as "a partner's share of the profits and losses of a limited partnership and the right to receive distributions of partnership assets." M.G.L. ch. 109, § 1(10).

37. Next, the court noted that "[s]ubject to contrary contractual restrictions (which are immaterial under section 365(c)), a partnership interest is assignable." *In re Schick*, 235 B.R. at 323. Likewise, under Massachusetts law, "[e]xcept as provided in the partnership agreement, a partnership interest is assignable in whole or in part." M.G.L. ch. 109, § 40.

38. Last, the court recognized that "[a]n assignment does not...entitle the assignee to become or to exercise the rights of a partner." *In re Schick*, 235 B.R. at 323-24 (citations omitted). This is similar to the MULPA which specifies how an assignee may become a limited partner, and by implication, indicates that unless those requirements are met, an assignee may not become or exercise the rights of a limited partner. *See* M.G.L. ch. 109, § 42(a).

39. As a result, an assignment "only entitles the assignee to receive distributions and allocations of profits and losses." *In re Schick*, 235 B.R. at 324 (citations omitted).

40. In addition to the restrictions provided by the MULPA, as set forth above, Section 9.1 of the Limited Partnership Agreement specifies that an assignee shall not be admitted to the

10

Limited Partnership (unless certain conditions are first met) and shall have no rights other than those provided by the MULPA.

41. Accordingly, to the extent that the Debtors seek authority to assume and assign anything other than QMC's economic interest in the Limited Partnership or seek to do so without first fully complying with the terms of the Limited Partnership Agreement, the Objecting Partners object to the Sale Motion.

*Adequate Assurance of Future Performance*

42. In the event that this Court determines that the Limited Partnership Agreement is executory and may be assumed and assigned, the Objecting Parties reserve their right to "adequate assurance of future performance" within the meaning of Section 365(f)(2)(B) of the Bankruptcy Code.

WHEREFORE, the Objecting Partners respectfully request that the Court enter an order (i) sustaining the Objecting Partners' objections to the APA and (ii) granting such further relief as is just and proper.

|  |  |
|---|---|
|  | PARTNERS HEALTHCARE SYSTEM, INC., SHIELDS ONCOLOGY SERVICES, INC. and SOUTH SHORE HOPSITAL, INC. |
|  | By their attorneys, |
| September 8, 2011 | /s/ Christopher J. Panos<br>Christopher J. Panos (BBO# 555273)<br>Kathleen A. Rahbany (BBO# 654322)<br>Craig and Macauley Professional Corporation<br>Federal Reserve Plaza<br>600 Atlantic Avenue<br>Boston, Massachusetts  02210<br>(617) 367-9500<br>fax (617) 742-1788 |

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)**

| | |
|---|---|
| In re:<br><br>QUINCY MEDICAL CENTER, INC.,<br>QMC ED PHYSICIANS, INC. and<br>QUINCY PHYSICIAN CORPORATION<br><br>Debtors. | Chapter 11<br><br>Case Nos. 11-16394-MSH<br>        11-16395-MSH and<br>        11-16396-MSH<br><br>(Jointly Administered) |

**CERTIFICATE OF SERVICE**

I, Christopher J. Panos, hereby certify that on September 8, 2011, I caused a copy of the foregoing to be served on the parties set forth below at the addresses indicated thereon by first class mail postage prepaid, electronic mail, or via the Court's ECF system.

September 8, 2011                    /s/Christopher J. Panos
                        Christopher J. Panos

- John J. Aquino    jja@andersonaquino.com
- Thomas O. Bean    tbean@verrilldana.com
- Janet E. Bostwick    jeb@bostwicklaw.com
- Kirk B. Burkley    kburkley@bernsteinlaw.com
- Daniel J. Carragher    djcarragher@daypitney.com
- Mark D. Cress    mcress@bulkley.com, nprice@bulkley.com
- Bertin C. Emmons    bemmons@sovereignbank.com
- John Fitzgerald    USTPRegion01.BO.ECF@USDOJ.GOV
- Daniel J. Hammond    dan.hammond@state.ma.us
- Jennifer L. Hertz    Jennifer.L.Hertz@usdoj.gov
- David B. Madoff    madoff@mandkllp.com, alston@mandkllp.com
- Nora Mann    nora.mann.state.ma.us
- James D. McGinley    jmcginley@eapdlaw.com
- Frank McGinn    ffm@bostonbusinesslaw.com
- Stephen E. Meunier    stephen.meunier@usdoj.gov
- Matthew Micheli    mmicheli@kayescholer.com
- Paul D. Moore    pdmoore@duanemorris.com, mmmelo@duanemorris.com
- John T. Morrier    morrier@casneredwards.com

- David J. Noonan    noonan@law-djn.com, noonanfamily@comcast.net
- Richard C. Pedone    rpedone@nixonpeabody.com
- Steffani Pelton    pelton@mandkllp.com
- William J. Ritter    writter@phrllp.com
- Mackenzie Shea    mackenzie.shea@klgates.com, bobankruptcyecf@klgates.com
- Jeffrey D. Sternklar    jdsternklar@duanemorris.com, jdsternklar@yahoo.com
- Lesley Varghese    lvarghese@nixonpeabody.com, bos.managing.clerk@nixonpeabody.com
- A. Davis Whitesell    whitesell@casneredwards.com, d.whitesell@comcast.net
- Ashley H. Wisneski    ashley.wisneski@state.ma.us

Kirk B. Burkley
Suite 2200 Gulf Tower
Pittsburgh, PA 15219-1900

Nora Mann
Office of the Attorney General
1 Ashburton Place
Boston, MA 02108

Lori L Purkey
Purkey & Associates PLC
2251 E. Paris Ave., SE, Suite B
Grand Rapids, MI 49546

Judy Thompson
JD Thompson Law
P.O. Box 33127
Charlotee, NC 28233

U.S. Foodservice, Inc.
c/o Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102