UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>QUINCY MEDICAL CENTER, INC.<br>QMC ED PHYSICIANS, INC.,<br>QUINCY PHYSICIAN CORPORATION<br><br>    Debtors | Chapter 11<br>Case No. 11-16394<br>Jointly Administered |

**SOUTHWEST CONSULTING ASSOCIATES, L.P.'S LIMITED OBJECTION TO DEBTORS' MOTION FOR AUTHORITY TO SELL SUBSTANTIALLY ALL ASSETS (INCLUDING THROUGH ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS) PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND COURT-APPROVED SALE PROCEDURES**

TO THE HONORABLE MELVIN S. HOFFMAN,
UNITED STATES BANKRUPTCY JUDGE:

Southwest Consulting Associates, L.P. ("SCA"), a creditor and party-in-interest in the above-captioned cases, files this limited objection (the "Limited Objection") to *Debtors' Motion for Authority to Sell Substantially All Assets (Including through Assumption and Assignment of Executory Contracts) Pursuant to Sections 363 and 365 of the Bankruptcy Code and Court-Approved Sale Procedures* [**Docket No. 8**] (the "Sale Motion"). In support of this Limited Objection, SCA respectfully states the following:

### I.    Background

A.    **The Relationship Between SCA and the Debtors**

1.    SCA provides specialized consulting services to hospitals in connection with, among other things, the Medicare Disproportionate Share Payment Adjustment ("DSH"). Typically, a hospital will contract with SCA to collect, review, analyze and submit to the hospital the information required to receive the appropriate and lawful amount of Medicare DSH

{W2629599.1}

reimbursement. In many cases, SCA will also challenge the Medicare DSH reimbursement allowed to the hospital from the Centers for Medicare and Medicaid Services ("CMS"). Most of SCA's client agreements include the engagement of attorneys by SCA to appeal and, if necessary, litigate Medicare DSH reimbursement claims on behalf of its clients.

2. Prior to the Petition Date (as hereinafter defined), SCA contracted with Quincy Medical Center, Inc. ("QMC")[1] to provide services related to Medicare DSH reimbursements. Specifically, SCA and QMC are parties to the following service contracts, among others:

(a) Letter agreement dated February 3, 2000, between SCA and QMC, pursuant to which SCA was engaged to review QMC's Medicare DSH adjustment factor for fiscal years 1995 through 2002;

(b) Letter agreement dated February 21, 2001, between SCA and QMC, pursuant to which SCA was engaged to review and challenge QMC's Medicare DSH reimbursement for fiscal years 2003 through 2004;

(c) Letter agreement dated October 27, 2005, between SCA and QMC, pursuant to which SCA was engaged to challenge the Supplemental Security Income ("SSI") fraction of QMC's Medicare DSH reimbursement for fiscal years 2005 through 2012; and

(d) Letter agreement dated October 27, 2005 (as amended), between SCA and QMC, pursuant to which SCA was engaged to challenge the Medicaid fraction of QMC's Medicare DSH reimbursement for fiscal years 2005 through 2012 (the foregoing, collectively, the "SCA Contracts").

3. Under the foregoing SCA Contracts, SCA has provided substantial services to QMC and has commenced numerous Medicare DSH proceedings on behalf of QMC, many of which remain pending and are at various stages of completion. SCA is unlike a typical hospital vendor that delivers goods or services to the facility and is paid in full in 30 to 60 days. In providing its services, SCA spent time over the last ten plus years with no payment for some of its services until the issues are settled with CMS (some issues that remain unsettled date to January 1, 1999, and may not be settled until 2013 or 2014). SCA has incurred the cost of such

---

[1] Some of SCA's contracts reference "Quincy Hospital." Quincy Hospital is a d/b/a of QMC.

2

{W2629599.1}

proceedings, and is entitled to reimbursement of its costs, plus payment of its fees, under the SCA Contracts.

4. Similarly, QMC (or a purchaser) has significant amounts at stake in the Medicare DSH proceedings SCA is handling pursuant to the SCA Contracts. For fiscal years 2007-2010, SCA has submitted approximately $5 million in additional Medicare DSH reimbursement for the benefit of QMC. For fiscal years 1998-2006, SCA has submitted, and its attorneys are currently litigating (in some cases, on appeal), over $2.9 million in additional Medicare DSH reimbursement for the benefit of QMC. Very little of this $7.9 million in additional DSH reimbursement will likely be collected if the SCA Contracts are rejected and SCA no longer provides the necessary services to QMC (or a purchaser).

5. The additional $7.9 million in additional DSH reimbursement correlates to approximately $2,000,000 in contingency fees for SCA plus additional fixed fees due for fiscal years 2010 and 2011. Thus, SCA is a significant creditor of QMC and is a counterparty to significant contracts with QMC. However, SCA is not listed as a creditor on Schedule D nor as a party to a contract on Schedule G.

**B.    The Bankruptcy Proceedings**

6. On July 1, 2011 (the "Petition Date"), QMC, QMC ED Physicians, Inc., and Quincy Physician Corporation (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby initiating the above-styled and numbered jointly administered bankruptcy cases. The Debtors continue to manage and operate their business and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

{W2629599.1}

7.   Through the Sale Motion, the Debtors seek approval to sell substantially all of their assets to Steward Medical Holdings Subsidiary Five, Inc. ("Steward"), the high bidder for such assets, pursuant to an Asset Purchase Agreement between the Debtors and Steward (the "APA"). The Sale Motion also requests approval for the Debtors to assume and assign certain executory contracts to Steward.

8.   On July 20, 2011, the Debtors filed the *Notice of (A) Intended Sale of Substantially All Assets Free and Clear of Liens, Claims, and Encumbrances (Including Related Assumption and Assignment of Executory Contracts and Unexpired Leases); (B) Sale Procedures; (C) Deadlines for Submitting Offers and Objections; and (D) Hearing Dates* [**Docket No. 107**] (the "Sale Notice"). The Sale Notice states:

> The specific Assigned Agreements to be designated for assumption and assignment to the Winning Bidder will be the subject of a separate notice to be transmitted to the non-Debtor parties to such Assigned Agreements after the Bankruptcy Court's designation of the Winning Bidder pursuant to the Sale Procedures. That notice will set forth procedures governing objections to the proposed assumption and assignment of the Assigned Agreements, including with respect to asserted cure payments or adequate assurance of future performance necessary to permit the proposed assumption and assignment.

The Sale Notice further provides that any objections to the Sale Motion must be filed by September 8, 2011.

9.   Section 2.1(o) of the APA provides that Steward is purchasing the Debtors' Medicare and Medicaid receivables, including "any rights to settlements and retroactive adjustments." This provision indicates that Steward is purchasing the Debtors' rights under or related to the SCA Contracts. However, as of the filing of this Limited Objection, SCA has not received the notice of designation of contracts for assumption/assignment described in the Sale Notice or any other notice that the SCA Contracts are being assumed and assigned as part of the sale transaction. Counsel for SCA has contacted counsel for both the Debtors and Steward, but

4

{W2629599.1}

has received no response regarding the SCA Contracts. Accordingly, SCA is filing this Limited Objection in order to preserve its rights by complying with the objection deadline set forth in the Sale Notice.

## II. Limited Objection

### A. SCA Requests Clarification as to Whether the SCA Contracts are Being Assumed and Assigned to Steward

10. As set forth above, the APA contemplates a sale of the Debtors' rights under or related to the SCA Contracts to Steward. However, SCA has received no notice, and has been unable to obtain confirmation from the Debtors, that the SCA Contracts are being assumed and assigned to Steward.

11. While SCA does not object to the proposed sale of the Debtors' assets to Steward, SCA requests confirmation as to whether the sale includes the SCA Contracts. To the extent the Debtors intend to assume and assign the SCA Contracts as part of the sale to Steward, SCA reserves all of its rights related to such assumption and assignment of the SCA Contracts pending a reasonable opportunity for SCA to review the terms of such assignment.

### B. Reservation of Rights

12. SCA reserves all of its rights to raise additional objections to the Sale Motion at the hearing on the Sale Motion.

### III. Conclusion

**WHEREFORE, PREMISES CONSIDERED,** SCA respectfully requests that the Court sustain this Limited Objection. SCA also requests general relief.

Dated: September 8, 2011

Respectfully submitted,

/s/ Gayle P. Ehrlich
Gayle P. Ehrlich
PIERCE ATWOOD LLP
100 Summer Street
Suite 2250
Boston, MA 02110
(617) 488-8135 (Telephone)
(617) 824-2020 (Facsimile)

-AND-

Phillip L. Lamberson
WINSTEAD PC
5400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270-2199
(214) 745-5400 (Telephone)
(214) 745-5390 (Facsimile)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>QUINCY MEDICAL CENTER, INC.<br>QMC ED PHYSICIANS, INC.,<br>QUINCY PHYSICIAN CORPORATION<br><br>Debtors | Chapter 11<br>Case No. 11-16394<br>Jointly Administered |

## CERTIFICATE OF SERVICE

I, Gayle P. Ehrlich, hereby certify that on or before September 8, 2011, caused a copy of the *Southwest Consulting Associates, L.P.'s Limited Objection to Debtors' Motion for Authority to Sell Substantially All Assets (Including through Assumption and Assignment of Executory Contracts) Pursuant to Sections 363 and 365 of the Bankruptcy Code and Court-Approved Sale Procedures* and within certificate of service be served on those persons on the attached Notice List by first-class mail, postage prepaid, email service with consent, or electronically served by the court, as indicated thereon.

/s/ Gayle P. Ehrlich
Gayle P. Ehrlich
PIERCE ATWOOD LLP
100 Summer Street, Suite 2250
Boston, MA 02110
Tel: (617) 488-8135
Fax: (617) 824-2020
Email: gehrlich@pierceatwood.com

Dated: September 8, 2011

{W2629599.1}

## SERVICE LIST

**ELECTRONIC NOTIFICATION VIA THE COURT'S ECF SYSTEM:**

- John J. Aquino — jja@andersonaquino.com
- Thomas O. Bean — tbean@verrilldana.com
- Janet E. Bostwick — jeb@bostwicklaw.com
- Daniel J. Carragher — djcarragher@daypitney.com
- Mark D. Cress — mcress@bulkley.com
  nprice@bulkley.com
- Bertin C. Emmons — bemmons@sovereignbank.com
- John Fitzgerald — USTPRegion01.BO.ECF@USDOJ.GOV
- Daniel J. Hammond — dan.hammond@state.ma.us
- Jennifer L. Hertz — Jennifer.L.Hertz@usdoj.gov
- David B. Madoff — madoff@mandkllp.com
  alston@mandkllp.com
- James D. McGinley — jmcginley@eapdlaw.com
- Frank McGinn — ffm@bostonbusinesslaw.com
- Stephen E. Meunier — stephen.meunier@usdoj.gov
- Paul D. Moore — pdmoore@duanemorris.com
  mmmelo@duanemorris.com
- John T. Morrier — morrier@casneredwards.com
- David J. Noonan — noonan@law-djn.com
  noonanfamily@comcast.net
- Richard C. Pedone — rpedone@nixonpeabody.com
- Steffani Pelton — pelton@mandkllp.com
- William J. Ritter — writter@phrllp.com
- David B Rome — drome@pylerome.com
- Mackenzie Shea — mackenzie.shea@klgates.com
  bobankruptcyecf@klgates.com
- Jeffrey D. Sternklar — jdsternklar@duanemorris.com
  jdsternklar@yahoo.com
- Lesley Varghese — lvarghese@nixonpeabody.com
  bos.managing.clerk@nixonpeabody.com
- A. Davis Whitesell — whitesell@casneredwards.com
  d.whitesell@comcast.net
- Ashley H. Wisneski — ashley.wisneski@state.ma.us

**Manual Notice List:**

**NOTIFICATION VIA U.S. MAIL, POSTAGE PRE-PAID:**

Kirk B. Burkley
Suite 2200 Gulf Tower
Pittsburgh, PA 15219-1900

Nora Mann
Office of the Attorney General
1 Ashburton Place
Boston, MA 02108

Lori L Purkey
Purkey & Associates PLC
2251 E. Paris Ave., SE,
Suite B
Grand Rapids, MI 49546

Judy Thompson
JD Thompson Law
P.O. Box 33127
Charlotte, NC 28233

U.S. Foodservice, Inc.
c/o Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

{W2629599.1}