UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re:<br><br>QUINCY MEDICAL CENTER, INC.,<br>QMC ED PHYSICIANS, INC.,<br>QUINCY PHYSICIAN CORPORATION,<br><br>                Debtors. | Chapter 11<br><br>Case No. 11-16394-MSH<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR SUPPLEMENTAL
AUTHORITY REGARDING SALE OF SUBSTANTIALLY ALL ASSETS
[HEARING ON SEPTEMBER 21, 2011 AT 10:00 A.M. REQUESTED]**

Quincy Medical Center, Inc. ("QMC"), QMC ED Physicians, Inc. ("QED") and Quincy

Physician Corporation ("QPC") (collectively, the "Debtors" or the "Company") hereby move this

Court pursuant to Section 363 of the Bankruptcy Code and MLBR 9013-1 for supplemental

authority regarding the proposed sale of substantially all of their assets (the "Proposed Sale") that is

the subject of their pending sale motion filed on July 1, 2011 [Docket No. 8] (the "Sale Motion"),

including (i) authority to enter into the Second Amendment to Asset Purchase Agreement (the

"Second Amendment to APA") in respect of the Asset Purchase Agreement dated as of June 30,

2011 (the "APA") between the Company as seller and Quincy Medical Center, A Steward Family

Hospital, Inc. f/k/a Steward Medical Holdings Subsidiary Five, Inc. ("Steward") as purchaser, and

(ii) authority to enter into three agreements with Steward and the Attorney General of the

Commonwealth of Massachusetts (the "Mass. AG") related to the Proposed Sale that refine

Steward's post-Closing[1] obligations under the APA and provide the Mass. AG with review and

enforcement rights with respect to Steward's post-Closing operation of the Hospital. ***Because the***

---

[1] Capitalized terms used and not defined herein shall have the meanings ascribed to them in the APA or the Sale
Motion.

*relief requested by this Motion relates to the Proposed Sale that is the subject of a hearing scheduled before this Court on September 21, 2011 at 10:00 a.m. (the "Sale Hearing"), the Company respectfully requests that this Court (i) schedule a hearing on this Motion for September 21, at 10:00 a.m., contemporaneously with the Sale Hearing, and (ii) establish September 16, 2011 at 4:00 p.m. as the deadline for any objections or other responses to this Motion.  A proposed form of order granting such procedural relief is attached as Exhibit A.*

By this Motion, the Company supplements the Sale Motion to seek entry of a revised sale order substantially in the form attached as Exhibit B (the "Revised Sale Order"); a blacklined version of the Revised Sale Order showing changes from the proposed sale order that was attached as Exhibit B to the Sale Motion is attached as Exhibit C.  As grounds for this Motion, the Company states as follows:

## Background

1.      On July 1, 2011 (the "Petition Date"), each of QMC, QED and QPC filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.  Their Chapter 11 cases are being jointly administered for procedural purposes only.  Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Company continues to manage its business and financial affairs as debtors-in-possession.

2.      The Company is a non-profit corporation formed to provide quality medical care, including emergency care, to the Quincy, Massachusetts community and surrounding communities.  QMC's signature asset is its 196-bed acute care hospital (the "Hospital") located in Quincy, Massachusetts.  QMC operates the Hospital, and related medical and health care facilities.  QED and QPC are captive entities as to QMC.  Their sole purpose is to own certain third-party payor contracts and provider numbers under which QMC services are billed to third-party payors, and, except for QED's nominal ownership interest in a business trust incident to its clinical affiliation

2

with Boston Medical Center, neither QED nor QPC own any assets other than these provider

numbers and contracts, nor do they have any other business relationships.  All of the revenues

generated under the provider numbers and contracts are remitted to QMC.  QMC, QED and QPC

operate as a single business enterprise—Quincy Medical Center—and to that end have administered

their business and financial affairs on a consolidated basis; the Company accounts for all operations

and financial matters on a consolidated basis and maintains no separate accounting of QED or QPC

revenues or expenses.

       3.      The Company filed for Chapter 11 for the purpose of consummating a sale of its

assets on a going concern basis to Steward.  The Company selected Steward as the best-qualified

acquirer of the Company's business after conducting, with the assistance of its financial and legal

advisors, an extensive solicitation process directed toward identifying the potential acquirer best able

to promote the interests of the Company and its stakeholders, taking into account such factors as

financial considerations, and commitments to improve the Hospital's physical plant and to promote

the Company's non-profit mission to provide quality medical care to the Quincy community.

       4.      On July 1, 2011, the Company filed the Sale Motion, and also filed its motion

seeking approval of procedures governing the Proposed Sale [Docket No. 9] (the "Sale Procedures

Motion"), including procedures governing the submission of competing bids for the Hospital and

related assets.

       5.      On July 19, this Court entered its order approving the Sale Procedures Motion

[Docket No. 105] (the "Sale Procedures Order") and establishing the procedures (the "Sale

Procedures") governing (i) the submission of competing bids to acquire the Company's assets,

including the QED Shares (as defined in the Sale Procedures), (ii) the proposed assumption and

assignment of the Assigned Agreements, and (iii) the filing of objections to the Proposed Sale.

       6.      On August 15, 2011, the Company in accordance with the Sale Procedures

conducted an auction of the QED Shares in which Steward and Boston Medical Center Corporation

participated.  At the conclusion of the auction, the Company in consultation with the indenture

trustee for the Company's bondholders (the "Indenture Trustee") and the Creditors' Committee

designated Steward as the Winning Bidder for the QED Shares.

     7.     On August 16, 2011, the Company filed its Certification and Request for Approval

of Winning Bidder as to All Assets Other Than QED Shares [Docket No. 228] and its Certification

and Request for Approval of Winning Bidder as to QED Shares [Docket No. 229] (together, the

"Winning Bidder Certifications").

     8.     On August 17, 2011, this Court conducted a hearing with respect to the Winning

Bidder Certifications, and entered its orders approving the Company's designation of Steward as the

Winning Bidders as to all of the Company's assets, including the QED Shares [Docket Nos. 235 and

236].

     9.     As authorized and directed by this Court's order approving Steward as the Winning

Bidder for the QED Shares [Docket No. 236], the Company entered into a First Amendment to the

APA that modified the APA to reflect the increased consideration to be paid by Steward for the

QED Shares (the "First Amendment to APA").  A true and correct copy of the First Amendment to

APA is attached as Exhibit D.

     10.     On September 7, 2011, the Company and Steward entered into the Second

Amendment to APA, which  reflects the parties' discussions with the Mass. AG incident to the

Mass. AG's regulatory review of the Proposed Sale, including with respect to the three ancillary

agreements between the Company, Steward, and the Mass. AG addressed in greater detail below.

The Second Amendment to APA only reflects refinement of the terms and conditions of the

Proposed Sale with regard to Steward's post-Closing obligations under the APA, and does not

reduce the consideration to be paid by Steward to the Company's bankruptcy estate upon Closing.

The execution and delivery of the Second Amendment to the APA was a condition precedent to the issuance of the Mass. AG's finding that the Proposed Sale complied with the laws governing public charities in the Commonwealth.  A true and correct copy of the Second Amendment to APA is attached as Exhibit E.

11.    The Company and Steward expect to enter into a Third Amendment to Asset Purchase Agreement (the "Third Amendment to APA") that will (i) incorporate certain schedules to the APA that had yet to be prepared at the time the APA was executed on June 30, 2011, including schedules of specific assumed and excluded assets and liabilities, (ii) incorporate agreed-upon forms of transaction-implementing instruments and agreements such as a bill of sale, deed, assumption and assignment agreement, and bank accounts transition agreement, and (iii) incorporate certain modifications and clarifications to the APA to reflect the parties' further negotiations concerning issues that have arisen with regard to the Proposed Sale since execution of the APA on June 30, 2011.  The Third Amendment to APA will clarify and refine the original APA, and will impose no new obligations or economic burdens upon the Company.  The Company will file and serve the Third Amendment to APA once completed and executed, in advance of the Sale Hearing, so that it may be considered by the Court and parties in interest incident to the Sale Hearing and be incorporated into the APA considered for approval at the Sale Hearing.

12.    On September 1, 2011, this Court entered its final order authorizing the Company's use of the Indenture Trustee's cash collateral [Docket No. 266] (the "Cash Collateral Order").  Among other things, the Cash Collateral Order provides for the filing by the Company of a proposed plan of liquidation as agreed to by the Indenture Trustee and the Creditors' Committee and appended to the Cash Collateral Order (the "Proposed Plan"), and authorizes disposition of the proceeds of the Proposed Sale to fund a payment to the Indenture Trustee and to fund certain escrows established under the Proposed Plan.  Specifically, Paragraph 18 of the Cash Collateral

Order states:

> *Distribution of Sale Proceeds.* Upon closing of the Sale, proceeds of the Sale shall be
> used to fund an escrow ("Proposed Plan Escrow") in an amount not less than the
> (A) Administrative and Priority Claims Escrow Amount, plus (B) Fee Claims Escrow
> Amount, plus (C) Liquidation Trust Cash Payment, plus (D) Post-Effective Date
> Expenses Amount, plus (E) Wind-Down Expenses Amount (as each term is defined
> in the Proposed Plan); and (ii) the Proposed Plan Escrow shall be used solely in
> accordance with the terms of the Proposed Plan, regardless of whether the Proposed
> Plan is confirmed, unless otherwise determined by order of the Bankruptcy Court.
> Each of the Debtors and the members of the Creditors' Committee agrees to
> support, and not oppose, any request by the Debtors or the Prepetition Secured
> Parties to distribute to the Prepetition Secured Parties not less than 80% of the
> distributable assets of the Debtors' estates upon closing of the Sale remaining after
> funding of the Proposed Plan Escrow pursuant to any order entered by the
> Bankruptcy Court approving the Sale … .

Cash Collateral Order, at ¶ 18.  These provisions of the Cash Collateral Order are incorporated into

the  Revised Sale Order.

13.     As noted in the Sale Motion, the Proposed Sale is subject to the regulatory review of

the Mass. AG and the approval of the Massachusetts Department of Public Health (the "Mass.

DPH").  Each of the Company and Steward has provided voluminous information and documents

to the Mass. AG incident to its regulatory review process.  In addition, each of the Company and

Steward has conferred with representatives of the Mass. AG and the Mass. DPH concerning issues

germane to the approval process, including without limitation issues concerning (i) Steward's post-

Closing operation of the Hospital, (ii) appropriate disposition of donor-restricted funds held by the

Company, and (iii) appropriate windup of the Company's business and financial affairs as a non-

profit entity in accordance with applicable provisions of Massachusetts law.  These discussions have

led to three related agreements intended to augment the relief sought by the Sale Motion (or to be

sought by the Proposed Plan), principally with regard to the post-Closing operation of the Hospital,

and principally by providing the Mass. AG with the right (i) to assess Steward's post-Closing

operation of the Hospital and its effect on the availability, access and cost of health care services

within the communities served by Steward's acute care hospitals (including the Hospital), and (ii) to

6

enforce certain provisions of the APA, as amended, as an intended third-party beneficiary on behalf of the public, including affected constituencies of the Hospital and its post-Closing operation. These three agreements include (i) the Transition, Windup, and Reorganization Agreement attached as Exhibit F (the "Transition Agreement"), (ii) the Assessment and Monitoring Agreement attached as Exhibit G (the "Assessment Agreement"), and (iii) the Enforcement Agreement attached as Exhibit H (the "Enforcement Agreement" and, together with the Transition Agreement and the Assessment Agreement, the "Ancillary Agreements").

## Relief Requested

14.    By this Motion, the Company augments its request for relief made by the Sale Motion to encompass the Second Amendment to APA and the Ancillary Agreements. Specifically, the Company requests that, through entry of the Revised Sale Order, this Court approve its entry into the Second Amendment to APA and authorize the Company to enter into the Ancillary Agreements, and that the terms and provisions of such agreements be approved, including, without limitation, the Wind-Down Expense Amount (as defined in the Proposed Plan) to assure a source of funding for costs and expenses arising in connection with obligations under the terms of the Transition Agreement.

15.    The requested relief augments the Sale Motion, and does not vitiate the benefits to the Company's bankruptcy estate to be achieved upon the Closing. The Second Amendment to APA does not reduce the consideration to be paid by Steward for the Company's assets. Rather, it incorporates provisions governing Steward's post-Closing operation of the Hospital that have arisen out of the regulatory review and that are related to approval of the Proposed Sale by the Mass. AG.

16.    The Ancillary Agreements arise out of the Mass. AG's regulatory review of the Proposed Sale. They do not reduce the benefits to the Company's bankruptcy estate of the Proposed Sale, but rather are intended to ensure the rights and expectations of the public—

including the citizens of Quincy and surrounding communities who rely on the Hospital for medical care—to Steward's performance of its post-Closing obligations under the APA, including as those obligations are refined, and in some instances expanded, under the Ancillary Agreements or the Second Amendment to APA.

17.     The Transition Agreement augments the Proposed Plan's provisions regarding the orderly windup of the Company's bankruptcy estate, the disposition of donor-restricted funds in accordance with state law, and the dissolution or reorganization of the Company to promote charitable purposes in accordance with state law, by providing a framework and source of funding for achieving such objectives and providing the Mass. AG with oversight of the Company's pursuit of such objectives.

18.     The Assessment Agreement is modeled upon and relates to a prior monitoring agreement between Steward and the Mass. AG arising out of Steward's 2010 acquisition of certain Massachusetts hospitals, and is intended to enable the Mass. AG to evaluate, assess and monitor the impact of Steward's acquisition of the Hospital, and its acquisition of other Massachusetts hospitals, on the availability, access and cost of health care services within the communities served by Steward's acute care hospitals, including the Hospital.

19.     The Enforcement Agreement provides the Mass. AG with standing as a third-party beneficiary of  the APA to enforce, including through specific performance or injunctive relief, certain of Steward's post-Closing obligations under the APA, notably, those requiring Steward to offer employment to the Company's employees at closing and those governing Steward's post-Closing operation of the Hospital and Steward's significant post-Closing capital expenditure obligations.

20.     The Company believes that the Ancillary Agreements and the Second Amendment to APA reflect appropriate modifications to the APA and the Proposed Sale resulting from the

regulatory review conducted by the Mass. AG.  The Company is informed and believes that the

Ancillary Agreements, and the related provisions of the Second Amendment to APA that derive

from the Mass. AG's regulatory review of the Proposed Sale, are necessary preconditions to the

Mass. DPH's approval of the Proposed Sale, and to Steward's acquisition and operation of the

Hospital.  Because the Second Amendment to APA and the Ancillary Agreements will promote the

prospects for approval and consummation of the Proposed Sale, with the attendant benefits to the

Company's bankruptcy estate, the Company believes that the relief requested herein is in the best

interest of the Company and its creditors.

### Proposed Hearing and Deadline for Objections

21.     Because this Motion seeks relief related to the Sale Motion and the Proposed Sale,

the Company believes that a hearing on this Motion conducted contemporaneously with the Sale

Hearing makes abundant sense.  In addition, in order that objections to or concerns regarding the

relief sought by this Motion can be evaluated by this Court, the Company, and other parties in

interest in advance of the Sale Hearing, the Company requests that this Court establish September

16, 2011 at 4:00 p.m. as the deadline for filing any objection or other response to this Motion.  A

proposed order providing this requested procedural relief is attached as Exhibit A.

### Notice

22.     The Company is serving a copy of this Motion with all attached Exhibits (Exhibits A

through H) upon all parties on the regular service list in this case, including the Indenture Trustee,

the Creditors' Committee, the Mass. AG, the Mass. DPH, the United States Trustee, and all other

parties that have requested notice and service of pleadings in this Chapter 11 case.  Because the

requested relief does not materially modify the relief sought by the Sale Motion, and does not reduce

the benefits to the estate from the Proposed Sale, the Company believes that such notice of this

Motion is sufficient in the particular circumstances, and requests that this Court so determine.

## Conclusion

23.     Based on the forgoing, the Company requests that this Court (i) grant the procedural

relief concerning a hearing on and deadline for objections to this Motion through entry of an order

substantially in the form of attached Exhibit A, (ii) grant the substantive relief sought by this Motion

through entry of the Revised Sale Order substantially in the form of attached Exhibit B, and (iii)

grant such other relief as the Court deems just and proper.

Dated:  September 8, 2011

                                    QUINCY MEDICAL CENTER, INC.
                                    QMC ED PHYSICIANS, INC.
                                    QUINCY PHYSICIAN CORPORATION
                                    By their attorneys,


                                    /s/ A. Davis Whitesell
                                    John T. Morrier (BBO #628624)
                                    A. Davis Whitesell (BBO #551462)
                                    Casner & Edwards, LLP
                                    303 Congress Street
                                    Boston, MA  02210
                                    Tel: 617-426-5900
                                    Fax: 617-426-8810
                                    Email: whitesell@casneredwards.com

## Exhibit A

### PROPOSED PROCEDURAL ORDER

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

_____
                                    )
In re:                              )
                                    )        Chapter 11
QUINCY MEDICAL CENTER, INC.,        )
QMC ED PHYSICIANS, INC.,            )        Case No. 11-16394-MSH
QUINCY PHYSICIAN CORPORATION,       )
                                    )         (Jointly Administered)
                         Debtors.   )
_____)

**ORDER SCHEDULING HEARING ON AND ESTABLISHING DEADLINE
FOR OBJECTIONS TO DEBTORS' MOTION FOR SUPPLEMENTAL
AUTHORITY REGARDING SALE OF SUBSTANTIALLY ALL ASSETS**

Upon consideration of the Debtors' Motion for Supplemental Authority Regarding Sale of

Substantially All Assets (the "Motion") filed by Quincy Medical Center, Inc. ("QMC"), QMC ED

Physicians, Inc. ("QED") and Quincy Physician Corporation ("QPC" and, with QMC and QED,

the "Debtors" or the "Company"), and specifically the provisions of the Motion seeking a hearing

thereon concurrently with the Sale Hearing[2] and a deadline for the filing of objections to the Motion

of September 16, 2011 at 4:00 p.m.; service of the Motion appearing sufficient in the particular

circumstances; and good cause appearing for the procedural relief sought by the Motion; it is hereby

**ORDERED**, that:

1.      The procedural relief sought by the Motion is granted.

2.      A hearing on the Motion will be held before this Court contemporaneously with the

Sale Hearing, commencing at 10:00 a.m. on September 21, 2011.

3.      The deadline for filing objections or other responses to the Motion is 4:00 p.m. on

September 16, 2011.

_____

[2] Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

4.    The Company shall promptly serve notice of this Order upon the same entities upon which the Company served the Motion, and shall promptly file a certificate of such service with this Court.

Dated: September _____, 2011

_____
Honorable Melvin S. Hoffman
United States Bankruptcy Judge

**<u>Exhibit B</u>**

**REVISED PROPOSED SALE ORDER**

**[FILED SEPARATELY AS ATTACHMENT]**

<u>**Exhibit C**</u>

**BLACKLINED PROPOSED SALE ORDER**

**[FILED SEPARATELY AS ATTACHMENT]**

## Exhibit D

## FIRST AMENDMENT TO APA

## [FILED SEPARATELY AS ATTACHMENT]

<u>**Exhibit E**</u>

**SECOND AMENDMENT TO APA**

**[FILED SEPARATELY AS ATTACHMENT]**

<u>**Exhibit F**</u>

**TRANSITION AGREEMENT**
**[DRAFT]**

## TRANSITION, WINDUP, AND REORGANIZATION AGREEMENT

This Transition, Windup, and Reorganization Agreement (the "Agreement") is entered into as of the _____ day of September, 2011 by and among **MARTHA COAKLEY**, as she is the Attorney General of the Commonwealth of Massachusetts (hereinafter on behalf of herself and her successors and assigns, the "Attorney General"), **QUINCY MEDICAL CENTER, INC**. a Massachusetts non-profit, charitable corporation ("QMC"), for itself and on behalf of its non-profit charitable affiliates, including QMC ED Physicians, Inc., and Quincy Physician Corporation (collectively, together with QMC, the "Quincy Entities" and each a "Quincy Entity"), and **QUINCY MEDICAL CENTER, A STEWARD FAMILY HOSPITAL, INC.,** a Delaware corporation **f/k/a Steward Medical Holdings Subsidiary Five, Inc**. ("Steward").

## RECITALS

Certain of the Quincy Entities and Steward are parties to an Asset Purchase Agreement, dated June 30, 2011, as amended by a First Amendment to Asset Purchase Agreement, dated August 15, 2011, and a Second Amendment to Asset Purchase Agreement, dated September _____, 2011 (as so amended, the "Asset Purchase Agreement"), pursuant to which the Quincy Entities are selling substantially all of their assets used in the operation of a health care system to Steward.

The Attorney General, through her Non-Profit Organizations/Public Charities Division (the "Division") wishes to establish a framework for the orderly dissolution or reorganization of the Quincy Entities and the handling of all funds donated to a Quincy Entity and held for charitable purposes (the "Quincy Endowment Funds") following the closing of the transactions contemplated by the Asset Purchase Agreement (the "Closing"), all as more specifically set forth herein.

## TERMS

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.     Effective Date; Termination.  This Agreement shall be effective as of the date hereof.  This Agreement (a) shall automatically terminate if the Asset Purchase Agreement is terminated prior to the Closing and (b) may be terminated in writing by the Attorney General if she determines that the obligations of the parties hereunder have been fulfilled.

2.     Windup, Dissolution, Consolidation, or Merger.  On or prior to the first anniversary of the Closing date, QMC shall, consistent with the applicable provisions of G.L. c. 180, other public charities law, and federal and state tax law, cause the windup and dissolution, or the consolidation or merger, of the Quincy Entities, such that only those Quincy Entities with remaining assets, missions, and purposes shall survive (each, a "Surviving Quincy Entity").

3.     Reorganization.  On or prior to the first anniversary of the Closing date and as may be appropriate or necessary, QMC shall cause each Surviving Quincy Entity to be

reorganized consistent with its mission and purpose.  Any change to the mission or purpose of any Surviving Quincy Entity shall be approved by the Division, and, if required, by order of the appropriate Massachusetts court.

4.      Quincy Endowment Funds.  On or prior to the first anniversary of the Closing date, QMC shall cause all Quincy Endowment Funds, together with all applicable donor instruments and use and financial documentation, to be (a) transferred to, or retained by, the appropriate Surviving Quincy Entity and (b) thereafter held and used for the donor-specified purposes and term.  Any changes in the ownership, management, or use conditions of any fund constituting a Quincy Endowment Fund shall be approved by the appropriate Massachusetts court, with the prior assent of the Attorney General, or as otherwise provided by G.L. c. 180A, § 5.

5.      Payment of Expenses.  QMC shall retain the services of an accounting firm and a law firm to assist it with the performance of its obligations hereunder.  The fees, costs, and expenses of such services and any other expenses associated with QMC's performance of its obligations hereunder shall be paid from the $250,000 "Wind-Down Expenses Amount" retained by the Quincy Entities pursuant to the Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the United States Bankruptcy Code, filed by the Quincy Entities with the United States Bankruptcy Court, District of Massachusetts (Eastern Division), on September ___, 2011 (the "Plan") to pay for the costs of wind-down activities, including administering the Donor Restricted Funds (as such term is defined in the Plan) and completing the corporate dissolution process pursuant to applicable Massachusetts law.

6.      Steward Cooperation.  Steward shall cooperate with QMC's efforts to carry out its obligations under this Agreement and shall permit any Steward employees who are former employees of QMC and whose expertise or knowledge may be valuable to QMC in carrying out its obligations under this Agreement to cooperate and assist QMC therewith.

7.      Schedules.  Attached hereto are the following schedules, each of which is incorporated herein by reference.  QMC shall provide the Division with any updates and amendments of and to such schedules within two calendar weeks of any changes, and shall provide information to supplement such schedules as may be reasonably requested by the Division from time to time.

7.1     Quincy Entities.  A listing of all Quincy Entities together with their principal address, EIN, AGO registration number, and principal contact person.

7.2     Quincy Endowment Funds.  A listing of all Quincy Endowment Funds held by each Quincy Entity together with the name of the fund, the purpose, restriction or other limitations on the fund, the value of the fund at the last date of determination, and the location where information regarding the fund, including donor, use and financial history, are maintained.

7.3     Remaining Assets.  A listing of all other assets held by each Quincy Entity subsequent to the Closing, including, by category and Quincy Entity, a description of the

2

assets and their estimated aggregate value.

8.    <u>Segregation of Documents and Instruments.</u>  All instruments and other documents evidencing the donation of any part of the Quincy Endowment Funds and any reports of activities involving the Quincy Endowment Funds shall be segregated by QMC from the assets being sold pursuant to the Asset Purchase Agreement.  To the extent any such instruments, documents, or reports are transferred to Steward, Steward shall use its best efforts to maintain such assets separately until they are transferred to QMC pursuant to Section 4 hereof.

9.    <u>Enforceability/Assignment.</u>  The invalidity or unenforceability of any term or provision of this Agreement shall not affect the validity or enforceability of any other term or provision of this Agreement.  This Agreement may not be assigned by QMC or Steward without the written consent of the Attorney General or by the Attorney General without the written consent of QMC and Steward.  The terms hereof shall be binding upon any successor to the interests of QMC or Steward.

10.    <u>Amendment</u>.  This agreement may be amended only by a writing executed by each of the parties.

11.    <u>Waiver</u>.  Any waiver by any party of any breach hereof by another party shall not be deemed to be a waiver of any subsequent or continuing breach or breach of any other provision hereof, by such party.

12.    <u>Execution.</u>  This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one agreement, and any of the parties hereto may execute this Agreement by signing any one counterpart.

13.    <u>Contract Under Seal.</u>  This Agreement shall be deemed to be a contract under seal, to be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

14.    <u>Jurisdiction/Venue.</u>  Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement shall be brought against any of the parties solely in the courts of the Commonwealth of Massachusetts and each of the parties (a) consents to the jurisdiction of such courts in any such action or proceeding and (b) waives any objection to venue laid therein and any defense of inconvenient forum to the maintenance of any action or proceeding so brought.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the first day above written.

**ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS**


By: _____
    Name:
    Title:

**QUINCY MEDICAL CENTER, INC.**


By: _____
    Name:
    Title:

**QUINCY MEDICAL CENTER, A STEWARD FAMILY HOSPITAL, INC.**


By: _____
    Name:
    Title:

**<u>Exhibit G</u>**

**ASSESSMENT AGREEMENT**
**[DRAFT]**

## ASSESSMENT AND MONITORING AGREEMENT

This Assessment and Monitoring Agreement (the "Assessment and Monitoring Agreement") is entered into as of the _____ day of September, 2011 by and among **MARTHA COAKLEY**, as she is the Attorney General of the Commonwealth of Massachusetts (hereinafter on behalf of herself and her successors and assigns, the "Attorney General"), **QUINCY MEDICAL CENTER, INC.**, a Massachusetts non-profit, charitable corporation ("QMC"), for itself and on behalf of its non-profit charitable affiliates QMC ED Physicians, Inc. and Quincy Physician Corporation (collectively, together with QMC, the "Quincy Entities"), and **STEWARD HEALTH CARE SYSTEM LLC**, a Delaware limited liability company (together with its current and future affiliates, successors and assigns, collectively, "Steward").

## RECITALS

The Quincy Entities and a subsidiary of Steward are parties to an Asset Purchase Agreement, dated June 30, 2011, as amended by a First Amendment to Asset Purchase Agreement, dated August 15, 2011 and a Second Amendment to Asset Purchase Agreement, dated September ___, 2011 (as so amended, the "APA"), pursuant to which the Quincy Entities are selling substantially all of their assets used in the operation of a health care system to a Steward subsidiary.

The Attorney General and Steward are also parties to an Assessment and Monitoring Agreement, dated October 20, 2010 (the "Caritas Monitoring Agreement"), pursuant to which the Attorney General, on behalf of the public, is overseeing and studying the impact of a prior transaction in which Steward acquired certain Massachusetts hospitals.

The transactions contemplated by the APA (the "Transaction"), are required to be reviewed by the Attorney General, pursuant to G.L. c.180, § 8A(d).  In connection with such review, which review includes consideration of the public interest, as well as the health care assessment provisions of G.L. c. 180, § 8A(d)(5), the Attorney General wishes to evaluate, assess, and monitor the impact of certain aspects of the Transaction, and wishes to better enable the Department of the Public Health (the "Department") to evaluate, assess, and monitor the impact of certain other aspects of the Transaction on the availability, access, and cost of health care services within the communities served by Steward's acute care hospitals, including the hospital being acquired in the Transaction, and any other Massachusetts hospitals acquired by Steward (the "Communities") for the time period covered by the Caritas Monitoring Agreement, subject to the rights and responsibilities of a subsidiary of Steward under Section 8.20 of the APA, all as more specifically set forth herein.

## TERMS

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.     <u>Attorney General Monitoring Responsibilities</u>.  The Attorney General shall, on behalf of the public, (a) oversee Steward's compliance with certain post-Closing conditions of

the APA pursuant to that certain Enforcement Agreement by and among the Attorney General, Steward, and the Quincy Entities, dated as of September___, 2011, including, without limitation, establishing a baseline for the commitments set forth in Section 8.20(a) of the APA, and (b) evaluate, assess, and monitor the impact of the Transaction on (i) the cost of health care, by price, total medical expense, or other appropriate measures of cost impact as determined by the Attorney General, (ii) changes in treatment and referral patterns including, without limitation, those related to physician recruitment and contracting, and (iii) consumer options and choice within the Communities, all in accordance with the terms and conditions of this Assessment and Monitoring Agreement. Notwithstanding the foregoing, the parties hereto acknowledge that (x) the health care system is rapidly changing and the Attorney General may, in consultation with Steward but otherwise in her sole discretion, determine that additional metrics or areas of inquiry, not otherwise under the primary responsibility of the Department pursuant to Section 4 hereinafter, are required to adequately measure and assess the impact of the Transaction on the provision of health care services to the Communities, and (y) certain aspects of the evaluation and assessment may incorporate, rely upon, or support otherwise independent investigations by the Attorney General of costs within the Massachusetts health care system. For purposes of this Assessment and Monitoring Agreement, the evaluation, assessment, and monitoring undertaken by the Attorney General, including all responsibilities referenced in this Assessment and Monitoring Agreement, shall be referred to as the "Attorney General Study." While focused on the Communities, the Attorney General Study will take into account, incorporate, and provide comparisons to broader regional and state trends and use, to the extent possible, publicly available information.

2.    Cooperation with Attorney General. Steward shall cooperate, at its sole cost and expense, in providing information reasonably required by the Attorney General, and any individual or firm retained by the Attorney General, in connection with the Attorney General Study. Consistent with applicable law including, without limitation, that governing public records, information provided shall be subject to appropriate safeguards with respect to the confidentiality of information that Steward provides and nothing in this Assessment and Monitoring Agreement is to be construed as a waiver by Steward of any rights it may have to assert that information it provides pursuant hereto is not subject to public disclosure under applicable law. Notwithstanding the foregoing, Steward recognizes and acknowledges that the purpose and intent of this Assessment and Monitoring Agreement and the Attorney General Study conducted hereby is to periodically inform the public about the impact of the Transaction and, in the furtherance thereof, information and data provided by Steward may be used in an aggregated form in reports released to the public. Steward shall be provided with a draft copy of any report prior to its issuance and shall have a reasonable opportunity to comment on the form or content of the aggregated information released therein. The provisions of this Section 2 relate only to information requested and provided with respect to the Attorney General Study and do not alter, restrict, limit, waive, expand, or further define any rights or obligations of the Attorney General, with respect to information demanded, requested, obtained from, or delivered by, Steward pursuant to the authority of her office under existing law in matters other than the Attorney General Study.

3.    Payment of Costs, Fees and Expenses of the Attorney General Study. The costs, fees, and expenses of the Attorney General in undertaking the Attorney General Study including,

2

without limitation, the fees and expenses of any individuals or firms retained by the Attorney General to assist in conducting the Attorney General Study shall be payable from the trust account or accounts funded by Steward and established pursuant to Section 3 of the Caritas Monitoring Agreement.  Steward shall have no further obligation to the Attorney General or any individual or firm retained by the Attorney General under this Assessment and Monitoring Agreement for such costs, fees and expenses.

4.    Department Monitoring Responsibilities under G.L. c.180 § 8A(d)(5).  The Attorney General, Steward, and QMC acknowledge that the Department will conduct an evaluation, assessment, and monitoring of the impact of the Transaction on the availability of, and access to, health care services within the Communities in accordance with the provisions of G.L. c. 180, § 8A(d)(5) (the "Department Study").  The costs, fees, and expenses of the Department in undertaking the Department Study including, without limitation, the fees and expenses of any individuals or firms retained by the Department to assist in conducting the Department Study shall be payable from the trust account or accounts funded by Steward and established pursuant to Section 4 of the Caritas Monitoring Agreement.  Steward shall have no further obligation to the Department, or any individual or firm retained by the Department, under G.L. c.180 § 8A(d)(5), for such costs, fees and expenses.  By his signature hereinafter, the Commissioner of the Department of Public Health hereby acknowledges the provisions of this paragraph 4.

5.    Enforceability/No Assignment.  The invalidity or unenforceability of any term or provision of this Agreement shall not affect the validity or enforceability of any other term or provision of this Agreement.  This Agreement may not be assigned by QMC or Steward without the written consent of the Attorney General or by the Attorney General without the written consent of QMC and Steward.  The terms hereof shall be binding upon any successor to the interests of QMC or Steward.

6.    Amendment.  This Assessment and Monitoring Agreement may be amended only by a writing executed by each of the parties.

7.    Waiver.  Any waiver by any party of any breach hereof by another party shall not be deemed to be a waiver of any subsequent or continuing breach or breach of any other provision hereof, by such party.

8.    Execution.  This Assessment and Monitoring Agreement may be executed in any number of counterparts, all of which taken together shall constitute one agreement, and any of the parties hereto may execute this Assessment and Monitoring Agreement by signing any one counterpart.

9.    Contract Under Seal.  This Assessment and Monitoring Agreement shall be deemed to be a contract under seal, to be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

10.    <u>Jurisdiction/Venue.</u>  Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Assessment and Monitoring Agreement shall be brought against any of the parties solely in the courts of the Commonwealth of Massachusetts and each of the parties (a) consents to the jurisdiction of such courts in any such action or proceeding and (b) waives any objection to venue laid therein and any defense of inconvenient forum to the maintenance of any action or proceeding so brought.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the first day above written.

**ATTORNEY GENERAL OF THE
COMMONWEALTH OF MASSACHUSETTS**

By: _____
    Name:
    Title:

**QUINCY MEDICAL CENTER, INC.**

By: _____
    Name:
    Title:

**STEWARD HEALTH CARE SYSTEM LLC**

By:_____
Name:
Title:

Acknowledged:

_____
John Auerbach, Commissioner
Department of Public Health

4

**<u>Exhibit H</u>**

**ENFORCEMENT AGREEMENT**
**[DRAFT]**

# ENFORCEMENT AGREEMENT

This Enforcement Agreement (the "Agreement") is entered into as of the _____day of September, 2011 by and among **MARTHA COAKLEY**, as she is the Attorney General of the Commonwealth of Massachusetts (hereinafter on behalf of herself and her successors and assigns, the "Attorney General"), **QUINCY MEDICAL CENTER, INC.** a Massachusetts not-for-profit corporation, and its affiliates **QMC ED PHYSICIANS, INC. and QUINCY PHYSICIAN CORPORATION.** (collectively the "Sellers"), **QUINCY MEDICAL CENTER, A STEWARD FAMILY HOSPITAL, INC.,** a Delaware corporation **f/k/a STEWARD MEDICAL HOLDINGS SUBSIDIARY FIVE, INC.** ("Purchaser") and **STEWARD HEALTH CARE SYSTEM, LLC**, a Delaware limited liability company, as Guarantor ("Guarantor").

## RECITALS

The Sellers and the Purchaser are parties to an Asset Purchase Agreement, dated June 30, 2011, as amended by a First Amendment to Asset Purchase Agreement, dated August 15, 2011 and a Second Amendment to Asset Purchase Agreement, dated September ___, 2011 (as so amended, the "Asset Purchase Agreement"), pursuant to which the Sellers are selling substantially all of their assets used in the operation of a health care system to the Purchaser.

The transactions contemplated by the Asset Purchase Agreement are required to be reviewed by the Attorney General pursuant to G.L. c.180, § 8A(d). In connection with such review, the Attorney General has identified certain provisions of the Asset Purchase Agreement that relate to the public interest, which include certain post-closing commitments of the Purchaser, and wishes to have the right to enforce such provisions as a third party beneficiary thereof, as more specifically set forth herein.

## TERMS

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties, it is agreed as follows:

1.   <u>Defined Terms</u>.  All capitalized terms used herein and not otherwise defined herein shall have their meanings as defined in the Asset Purchase Agreement.

2.   <u>Enforcement of Certain Provisions</u>.  Notwithstanding the provisions of Section 13.13 of the Asset Purchase Agreement, the Attorney General shall be a third-party beneficiary of, and shall have the right to enforce Sections 8.20(a)-(e) and (i)-(l) (Post-Closing Obligations) and 9.1 (Offers of Employment) of the Asset Purchase Agreement (the "AG's Enforceable Provisions"), in each case in accordance with the terms and conditions of the Asset Purchase Agreement.

3.   <u>Consent Required</u>.  The written consent of the Attorney General shall be required for any waiver of, or amendment to, Section 2.3 (Assumption of Liabilities) of the Asset

Purchase Agreement, any amendment to the AG's Enforceable Provisions, or any other amendment to the Asset Purchase Agreement that affects the Attorney General's rights hereunder.

4.     <u>Effect on Agreement</u>.  All of the terms, conditions, covenants, provisions, representations, and warranties contained in the Asset Purchase Agreement and any documents executed in connection therewith shall remain in full force and effect except as modified hereby.

5.     <u>Remedies</u>.  Each of the Purchaser and the Guarantor recognizes that monetary damages will be inadequate for the Purchaser's breach of the AG's Enforceable Provisions and this Agreement.  In addition to any legal remedies the Attorney General may have, the Attorney General shall be entitled to specific performance, injunctive relief, and such other equitable remedies as a court of competent jurisdiction may deem appropriate, without the requirement to post any bond in connection therewith.

6.     <u>Enforceability</u>.  The invalidity or unenforceability of any term or provision of this Agreement shall not affect the validity or enforceability of any other term or provision of this Agreement or contained in the Asset Purchase Agreement.

7.     <u>Amendment</u>.  This agreement may be amended only by a writing executed by each of the parties.

8.     <u>Waiver</u>.  Any waiver by any party of any breach hereof by another party shall not be deemed to be a waiver of any subsequent or continuing breach or breach of any other provision hereof, by such party.

9.     <u>Execution</u>.  This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one agreement, and any of the parties hereto may execute this Agreement by signing any one counterpart.

10.     <u>Contract Under Seal</u>.  This Agreement shall be deemed to be a contract under seal, to be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

11.     <u>Jurisdiction/Venue.</u>  Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement shall be brought against any of the parties solely in the courts of the Commonwealth of Massachusetts and each of the parties (a) consents to the jurisdiction of such courts in any such action or proceeding and (b) waives any objection to venue laid therein and any defense of inconvenient forum to the maintenance of any action or proceeding so brought.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the first day above written.

**ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS**

By: _____
   Name:
   Title:

**QUINCY MEDICAL CENTER, INC.**

By: _____
   Name:
   Title:

**QUINCY ED PHYSICIANS, INC.**

By: _____
   Name:
   Title:

**QUINCY PHYSICIAN CORPORATION**

By: _____
   Name:
   Title:

**QUINCY MEDICAL CENTER, A STEWARD FAMILY HOSPITAL, INC., f/k/a STEWARD MEDICAL HOLDINGS SUBSIDIARY FIVE, INC.**

By: _____
   Name:
   Title:

3

The undersigned Guarantor hereby guarantees the obligations of the Purchaser under the AG's Enforceable Provisions and this Agreement.

**STEWARD HEALTH CARE SYSTEM LLC**


By: _____
    Name:
    Title:

**CERTIFICATE OF SERVICE**

I, A. Davis Whitesell, Esq., hereby certify that on September 8,  2011, I caused a copy of the foregoing **Debtors' Motion for Supplemental Authority Regarding Sale of Substantially All Assets** to be served by email through the Court's ECF system to all entities that are registered users thereof in this Chapter 11 case, and by U.S. first class mail to the entities listed below:

Nora Mann
Office of the Attorney General
1 Ashburton Place
Boston, MA 02108

Lori L Purkey
Purkey & Associates PLC
2251 E. Paris Ave., SE, Suite B
Grand Rapids, MI 49546

Judy Thompson
JD Thompson Law
P.O. Box 33127
Charlotte, NC 28233

U.S. Foodservice, Inc.
c/o Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

Dated:  September 8, 2011

/s/ A. Davis Whitesell
A. Davis Whitesell (BBO#551462)
Casner & Edwards, LLP
303 Congress Street
Boston, MA  02210
Tel: 617-426-5900
Fax: 617-426-8810
Email: whitesell@casneredwards.com