**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 11-16394-MSH |
| QUINCY MEDICAL CENTER, INC., | ) | |
| QUINCY ED PHYSICIANS, INC., | ) | (Jointly Administered) |
| QUINCY PHYSICIAN CORPORATION, | ) | |
| | ) | |
| Debtors | ) | |

**MEMORANDUM CONCERNING**
**CONFIRMATION OF DEBTORS' JOINT PLAN OF LIQUIDATION**

A hearing on confirmation of the above-named debtors' joint plan of liquidation was held on November 8, 2011. Based on the declaration of Stephenie Kjontvedt on behalf of Epiq Bankruptcy Solutions, LLC regarding voting and tabulation of ballots, the offer of proof presented by debtors' counsel, arguments of counsel for many of the parties in interest and for the reasons stated on the record of the hearing, I am prepared to rule that the debtors and their joint plan are in compliance with all applicable requirements of the United States Bankruptcy Code (11 U.S.C. § 101 *et seq*.) except § 1129(a)(1).

Article X of the plan contains provisions for releases by the debtors of a number of third parties (sec. C); exculpation of the debtors and other parties in interest and their professionals (sec. D); releases by third parties of the debtors and other parties in interest (sec. E); and a permanent injunction against all parties burdened by the foregoing releases and exculpation (sec. F).

Whether Chapter 11 plans may contain provisions calling for expansive releases, exculpation and injunctions is a matter of some disagreement. The Courts of Appeals for the Fifth, Ninth and Tenth Circuits (*In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995); *In re Lowenschuss*,

67 F.3d 1394, 1401-02 n.6 (9th Cir. 1995); *In re W. Real Estate Fund, Inc.*, 922 F.2d 592, 601 (10th Cir. 1990)) have held that non-debtor releases and permanent injunctions are impermissible as violating Bankruptcy Code § 524(e) which states that "[e]xcept as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." The Second, Third, Fourth, Sixth, and Seventh Circuits take a less absolutist approach and have expressed a willingness to approve these plan provisions in certain circumstances. *See In re Airadigm Comm., Inc.*, 519 F.3d 640, 657 (7th Cir. 2008); *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005); *In re Dow Corning Corp.*, 280 F.3d 648, 656-57 (6th Cir. 2002); *In re Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000); *In re A.H. Robins Co.*, 880 F.2d 694, 702 (4th Cir. 1989). Courts taking the permissive approach interpret § 524(e) as declaring merely that the discharge itself does not affect the liability of non-debtor parties but that the statute does not preclude the bankruptcy court from limiting the liability of non-debtors in appropriate circumstances. Upon concluding that there is no outright statutory prohibition against issuing third party releases and injunctions, courts outside the Fifth, Ninth and Tenth Circuits apply a variety of standards in determining whether and to what extent to confirm plans containing these provisions. A number of courts have adopted the five-factor analysis articulated in *In re Master Mortgage Invest. Fund, Inc.*, 168 B.R. 930, 937-38 (Bankr. W.D. Mo. 1994), and consider whether:

> 1. There is an identity of interest, usually an indemnity relationship, between the debtor and the third party being released such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate.

2. The non-debtor being released has contributed substantial assets to the reorganization.

3. The proposed injunction is essential to the reorganization and without it, there is little likelihood of success.

4. A substantial majority of the creditors agree to the injunction, specifically, the impacted classes have "overwhelmingly" voted to accept the proposed plan treatment.

5. The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

"These factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *In re Washington Mutual, Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011).

While the Court of Appeals for the First Circuit has thus far remained above the fray (*see Monarch Life Inc. Co. v. Ropes & Gray*, 65 F.3d 973, 983-94 (1st Cir. 1995)), the issue has been addressed by lower courts in this district. Judge Hillman in *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 300 (Bankr. D. Mass. 2002), and *In re M.J.H. Leasing, Inc.*, 328 B.R. 363, 369-71 (Bankr. D. Mass. 2005), acknowledged the court's authority to confirm plans containing releases and injunctions, but after applying the *Master Mortgage* factors in each case declined to do so. Judge Queenan in *In re Boston Harbor Marina Co.*, 157 B.R. 726 (Bankr. D. Mass. 1993), recognized the authority of the court to approve plan releases and injunctions in certain circumstances but he too found those circumstances absent from the case before him. In *In re Salem Suede, Inc.*, 219 B.R. 922 (Bankr. D. Mass. 1998), Judge Feeney denied confirmation of a plan because among

other things, it proposed to enjoin actions against a non-debtor third party. Judge Feeney found that the *Master Mortgage* factors were not present in her case but left open the possibility that in a future case where the *Master Mortgage* factors were met she might nevertheless adopt the reasoning of the Ninth Circuit in *Lowenschuss* and rule that § 524(e) imposes a *per se* prohibition on third party releases and injunctions.

I agree with the majority position that in the appropriate circumstances a Chapter 11 plan may provide for the kinds of releases, exculpation and injunctions contained in the debtors' joint plan in these cases.

With respect to a debtor's releases, there is no reason why a debtor in its reasonable business judgment should not be permitted, as part of its own plan, to propose to release whomever it chooses. Bankruptcy Code § 1123(b)(3) contemplates such plan provisions which are analogous to Federal Rule of Bankruptcy Procedure 9019 compromises and settlements. To the extent, however, that a proposed release is without adequate consideration or otherwise improvident, the plan confirmation process affords the court or interested parties the opportunity to interpose objections.

Here, the debtors and their successors, including the liquidation trustee, propose in section C of article X of their plan to release a group of "Released Parties" identified in the plan as:

> (a) the Debtors' current and former affiliates, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (b) the Prepetition Indenture Trustee; (c) the Prepetition Bondowners; (d) the Creditors' Committee; and (e) with respect to each of the foregoing Entities in clauses (b) through (d), their respective current and former affiliates, subsidiaries, Representatives and other professionals.

The United States trustee has objected, arguing that the plan's release terms do not meet the *Master Mortgage* test. I find that the indenture trustee and the bondowners have each made

material concessions and contributed significant consideration to the debtors' plan. Thus the debtors' proposed release of these parties is justified.

There does not, however, appear to be any justification for the release of the debtors' affiliates, subsidiaries, officers, directors and others identified in clause (a) of the above quoted definition of Released Parties or of the creditors' committee and its affiliates and representatives. There has been no showing that the debtors' directors and officers contributed significantly to the administration of the bankruptcy cases or to the formulation of the debtors' plan. While there appears to be an identity of interests between and among the debtors and their directors and officers arising from the debtors' obligation to indemnify them, I agree with the court's analysis in *In re Washington Mutual*, 442 B.R. at 349-50, that such an identity of interests by itself is insufficient to justify releases. As for the creditors' committee, which is entirely a creature of the bankruptcy process, the committee may be entitled to exculpation for its active role in these cases but a broad release which encompasses pre-petition causes of action seems unnecessary and irrelevant.

Section D of article X of the plan proposes to exculpate the debtors, the liquidation trustee, the creditors' committee, the bondowners, the indenture trustee and their representatives and professionals from liability for a defined set of "Exculpated Claims" generally consisting of claims related to the Chapter 11 cases and the debtors' restructuring efforts. The U.S. trustee objected to the exculpation provision to the extent it covered either pre-petition or post-effective date activities and the debtors have proposed a modification of the relevant plan provision which satisfies the U.S. trustee's concerns.

I find the exculpation provision of the plan, as modified in the debtors' proposed order

confirming the plan, reasonable and appropriate either on the basis that the exculpated parties provided financial and other consideration to the estate (the indenture trustee and bondowners) or as estate fiduciaries they are entitled to limited immunity in order to encourage participation in the bankruptcy process (debtors, creditors' committee, liquidation trustee and their representatives). *See In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000).

Third party releases pose the greatest challenge to a bankruptcy court in evaluating plan confirmation as they purport to effect releases by third parties with respect to claims against not only the debtor but also the other active participants in the bankruptcy case. Here the debtors propose to bind all creditors and holders of interests in the debtors who voted to accept the plan or who are "deemed to accept the plan" to a release of the Released Parties from a broad spectrum of claims (section E of article X). The U.S. trustee objected to the plan's third party release provision in its entirety as impermissible under applicable law.

I subscribe to the view expressed by, among others, Judge Gerber in *In re Adelphia Comm. Corp.*, 368 B.R. 140, 268 (Bankr. S.D.N.Y. 2007), and Judge Walrath in *In re Washington Mutual*, 442 B.R. at 351-52, that only consensual releases are permissible.

Each ballot sent to those who were entitled to vote to accept or reject the debtors' plan contained the following legend in boldface capitalized text:

> **A VOTE TO ACCEPT THE PLAN CONSTITUTES AN ACCEPTANCE AND ASSENT TO THE RELEASES SET FORTH IN SECTION X.E OF THE PLAN.**

Thus with respect to creditors and others who actually voted in favor of the plan by signing and returning a ballot, section E of article X will be approved. But as to creditors who are deemed to have accepted the plan, which I take to mean creditors who did not return a ballot but who are members of an accepting class, actual consent is lacking and binding these creditors to a release

would be inappropriate.

In keeping with the objective of debtors to hermetically insulate themselves from exposure to creditor claims, many plans provide for permanent injunctions to issue upon plan confirmation. To the extent a proposed injunction is limited to enforcement of claims to be released under acceptable plan release provisions, the injunction is really nothing more than an enforcement device analogous to Bankruptcy Code § 524(a)(2) which enjoins enforcement of discharged claims.

Section F of article X of the debtors' plan is consistent with the use of injunctions to enforce releases and thus is not in and of itself objectionable. Unfortunately, the debtors have failed to comply with Rule 2002(c)(3) of the Federal Rules of Bankruptcy Procedure which requires that:

> If a plan provides for an injunction against conduct not otherwise enjoined under the Code, the notice required under Rule 2002(b)(2) shall: (A) include in conspicuous language (bold, italic, or underlined text) a statement that the plan proposes an injunction; (B) describe briefly the nature of the injunction; and (C) identify the entities that would be subject to the injunction.

The debtors' notice of hearing on plan confirmation dated October 7, 2011 failed to contain the required language. For this reason the injunction provisions of the debtors' plan to the extent that they go beyond the discharge injunction in §524(a)(2) cannot be approved. *See In re Ground Round*, No. 04-11235, 2007 WL 496656, at *3 (Bankr. D. Mass. Feb. 13, 2007).

Unrelated to the issue of releases, exculpation and injunctions is the provision of the plan providing for exemption from transfer taxes (article V, section J). In light of the United States

Supreme Court's ruling in *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008), this provision is overbroad as it appears to apply to the pre-confirmation sale of the debtors' assets to Quincy Medical Center, A Steward Family Hospital, Inc. pursuant to Bankruptcy Code § 363. The Supreme Court has interpreted Bankruptcy Code § 1146(a) to apply only to post-confirmation sales.

To summarize, the debtors' joint plan will be confirmable if the debtors' releases do not include the creditors' committee or officers, directors and others described in clauses (a) and (d) of the definition of Released Parties under the plan; if the plan's third party releases are limited to those who actually submitted ballots accepting the plan; if the injunction provision of the plan is removed or appropriate compliance with Rule 2002(c)(3) occurs; and if the plan's exemption from transfer taxes is limited to post-confirmation transfers. The debtors shall have until November 21, 2011 to submit either a proposed confirmation order modifying the plan in accordance with this memorandum or a request for other appropriate relief.

Dated: November 16, 2011

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge