**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 11-16394-MSH |
| QUINCY MEDICAL CENTER, INC. | ) | through 11-16396 |
| QMC ED PHYSICIANS, INC. | ) | Jointly administered |
| QUINCY PHYSICIANS CORPORATION | ) | |
| | ) | |
| Debtors | ) | |

**MEMORANDUM OF DECISION ON MOTIONS OF APURV GUPTA AND VICTOR MUNGER FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIMS**

Apurv Gupta and Victor Munger, senior executives of the debtor, Quincy Medical Center, Inc. ("QMC"), have filed substantively similar motions seeking allowance of administrative expense claims under § 503(b)(1) of the Bankruptcy Code, 11 U.S.C. § 101 et seq.,[1] for severance pay due them under QMC's Executive Severance Policy dated January 1, 2011. QMC opposes both motions.

The salient facts are not in dispute. Both Dr. Gupta and Mr. Munger were employees in good standing of QMC on July 1, 2011, the date QMC and certain affiliates filed voluntary petitions under chapter 11 of the Bankruptcy Code in this court. QMC's primary asset was Quincy Hospital, a 196 bed acute care facility which has served the community in and around Quincy, Massachusetts since 1890. Dr. Gupta served as Senior Vice President for Clinical Affairs/Chief Medical Officer of QMC pursuant to an employment agreement effective October 1, 2009. Mr. Munger served as Senior Vice President of Human Resources pursuant to a letter

---

[1] While the introductory paragraph of Mr. Munger's motion cites Bankruptcy Code § 503(b)(3), it is clear from the body of his motion and his prayer for relief that Mr. Munger seeks allowance of his claim under §503(b)(1).

1

agreement effective March 1, 2010. Both executives were included in QMC's executive severance policy as set forth in a memorandum dated January 1, 2011 which entitled them to, among other things, a minimum of six and a maximum of twelve months' base salary continuation upon termination of employment other than for cause. QMC's severance policy does not articulate specific guidelines or procedures for determining the circumstances under which an employee may receive in excess of the minimum six months' salary.

By letters dated October 7, 2011, QMC terminated Dr. Gupta's and Mr. Munger's employment without cause effective October 1, 2011 which was the date when substantially all the assets of QMC and its affiliates were acquired by a third party purchaser known as Quincy Medical Center a Steward Family Hospital, Inc. ("Steward"). Since that time Steward has been operating Quincy Hospital and its ancillary facilities. The cited reason for the terminations was Steward's failure to offer Dr. Gupta and Mr. Munger continued employment.

In the Asset Purchase Agreement ("APA") entered into by Steward and QMC and its affiliates, Steward agreed to offer employment for a period of no less than three months to each employee of QMC as of the date of the sale closing at the salary and position enjoyed by such employee prior thereto. Further, in the event Steward terminated any former QMC employee, Steward agreed to honor any severance obligation based on QMC's severance policy. While Dr. Gupta and Mr. Munger were QMC employees on the sale closing date, they were not offered employment by Steward.

Mr. Munger asserts a claim for administrative expenses against QMC in the amount of $135,000, consisting of a severance pay claim of $90,000, representing six months' salary, and a claim of $45,000, representing the minimum three months' salary he would have received had

Steward hired him.

Dr. Gupta asserts an administrative expense claim against QMC of $468,000, consisting of a severance claim of $312,000, equal to twelve months' salary, and a claim of $156,000, representing 180 days' salary, because QMC failed to give Dr. Gupta the requisite 180 days' prior notice of termination pursuant to his employment agreement.[2]

QMC is unwilling to concede that any component of either claim is entitled to administrative priority treatment. Furthermore, while QMC agrees with the amount of Mr. Munger's claim it suggests the claim is properly a claim against Steward. QMC submits that had Steward employed Mr. Munger as it was obligated to under the APA, Steward would have been obliged to retain and pay him for three months and then upon termination pay him six additional months' salary under QMC's severance policy.  As for Dr. Gupta's claim, without accepting any of Dr. Gupta's alternative claim amounts, QMC invites him as well to pursue Steward for recovery.

As noted previously, the claims of both executives consist of severance and non-severance components. In the case of Mr. Munger's claim, the non-severance component is $45,000 for three months' post sale compensation. There is no basis, however, for Mr. Munger's assertion that QMC should be liable for this amount. It was Steward, not QMC, who made the commitment to employ QMC's staff for a minimum of three months after the sale closing. Mr. Munger has failed to articulate any basis, nor am I aware of any, by which QMC should be held liable for Steward's failure to employ him.

---

[2] In his motion Dr. Gupta offers a menu of possible lower administrative expense claims using a series of alternative calculation formulas but $468,000 is his high-side number and the only one in his prayer for relief.

Dr. Gupta's non-severance claim consists of 180 days' salary totaling $156,000 resulting from QMC's failure to give Dr. Gupta the required 180 day notice of termination under his employment agreement. But as Dr. Gupta's employment agreement was never assumed by QMC, his claim for termination damages is not a claim against QMC as debtor in possession, rather it is a textbook Bankruptcy Code § 502(b)(7) general unsecured claim. "Although during the Chapter 11 proceeding a prepetition executory contract remains in effect and enforceable against the nondebtor party to the contract, the contract is *unenforceable* against the debtor in possession unless and until the contract is assumed." *Mason v. Official Committee of Unsecured Creditors (In re FBI Distribution Corp.),* 330 F.3d 36, 43 (1st Cir. 2003).

Classifying the severance components of the two executives' claims is less clear cut than the non-severance components just discussed. Mr. Munger seeks six months' severance while Dr. Gupta seeks twelve. As observed previously, QMC's Executive Severance Policy is not clear as to the basis for a terminated employee's entitlement to severance pay in excess of six months. The only reasonable interpretation of the policy is that a terminated employee receives severance equal to six months unless otherwise mutually agreed. QMC's opposition to Dr. Gupta's motion indicates it did not agree to the doctor's receiving twelve months' severance and thus I conclude that the maximum severance to which Dr. Gupta is entitled is $156,000, representing six months of his salary at termination.

Having attended to the preliminaries, it is time to consider the pivotal issue presented by these motions—whether the severance claims are entitled to § 503(b)(1) priority status as expenses of administration of the chapter 11 case.

In the First Circuit, clear guidance has been provided by the court of appeals in decisions

arising out of the bankruptcies of two well-known discount retail chains from different eras, Mammoth Mart and Filene's Basement. In *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950 (1st Cir. 1976), a Bankruptcy Act case, the court succinctly articulated the principles for determining administrative expense qualification generally. These principles remain as relevant today under Bankruptcy Code § 503(b)(1) as they were a generation ago under § 64(a)(1) of the Bankruptcy Act. The court distinguished between transactions with a debtor in possession and those with the pre-bankruptcy debtor:

> For a claim in its entirety to be entitled to first priority under s 64(a)(1), the debt must arise from a transaction with the debtor-in-possession. When the claim is based upon a contract between the debtor and the claimant, the case law teaches that a creditor's right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.

*Mammoth Mart*, 536 F.2d at 954. Against this backdrop, the court laid out the test for determining whether a severance pay claim is entitled to administrative priority treatment:

> It follows that whether a claim for severance pay based upon an unrejected contract with the debtor and arising from a chapter XI discharge will be entitled to s 64(a)(1) priority will depend upon the extent to which the consideration supporting the claim was supplied during the reorganization. If an employment contract provides that all discharged employees will receive severance pay equal to their salaries for a specified period, the consideration supporting the claim being an employee in good standing at the time of the discharge will have been supplied during the arrangement, and the former employee will be entitled to priority.

*Id. at 955.*

In an adversary proceeding brought by a former executive of Filene's Basement, the court of appeals provided useful insight into its *Mammoth Mart* decision, refining it to achieve consistency with the Bankruptcy Code. Again the court began by presenting a primer on how to analyze administrative expense claims by parties to unassumed executory contracts such as the

5

employment agreements of Dr. Gupta and Mr. Munger.

> Where the debtor in possession, however, induces a nondebtor to render performance pursuant to an *unassumed* prepetition executory contract, pending its decision to reject or assume, the nondebtor party will be entitled to administrative priority only to the extent that the consideration supporting the claim was supplied to the debtor in possession during the reorganization and was beneficial to the estate.

*FBI* Distributing, 330 F.3d at 42-43. The court next turned to its *Mammoth Mart* decision explaining that:

> The rationale underlying the holding was that because severance pay was a component of compensation for services rendered-that is, the employees' wages included severance pay-it could be entitled to administrative priority, but only to the extent that it was earned postpetition. Furthermore, it made no difference that the right to payment for the severance earned prepetition arose during the reorganization. What did matter was *when* the consideration supporting the claim was supplied. [*Mammoth Mart, 536 F.2dI]*. at 954; *see also* 11 U.S.C. § 503(b)(1) ("for services rendered *after* the commencement of the case") (emphasis added).

*Id.* at 43.

Based on these two decisions, the law in the First Circuit is clear. Severance pay is entitled to administrative expense priority only to the extent it is tied to the employee's length of service so that it is part of the employee's compensation. If it passes that test then the administrative expense priority is limited exclusively to that portion of severance pay attributable to post petition services. As an example consider an employee whose compensation consists of an annual salary of $100,000 plus severance equal to $100 per month for every month of employment. If the employer were to become a chapter 11 debtor and later terminate the employee, the employee would be entitled to an administrative expense claim for severance equal to $100 for each month of service *after* the chapter 11 petition date.

Here, the severance pay arrangement for both Dr. Gupta and Mr. Munger had nothing to do with length of service. Just like Ms. Mason's severance deal with Filene's Basement, whether

6

the QMC executives worked two minutes or two years after executing their employment agreements they were entitled to six months' salary upon termination without cause. The fact that Dr. Gupta and Mr. Munger stayed on with QMC and rendered valuable services post-petition does not change the result. They were fully compensated for their post-petition services.

The executives argue that QMC induced them to continue their employment post-petition by publicizing, generally and in pleadings filed in this court, the agreement of Steward to retain all QMC employees post-closing. Even if such conduct by QMC could be called inducement, the court of appeals in FBI dismissed inducement as a basis for creating an administrative expense claim because it amounted to the argument that the debtor in possession had assumed the employment agreement by implication. "It is well settled, however, that an executory contract cannot be assumed by the unilateral acts of the debtor in possession during the reorganization of its business." *Id.* 44. **"**If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay *for the reasonable value of those services,* which, depending on the circumstances of a particular contract, may be what is specified in the contract." *Id.* at 43-44, citing *N.L.R.B. v. Bildesco and Bildesco*, 465 U.S. 513, 531, 104 S.Ct. 1188 (1984), and adding emphasis.

The severance pay claims of Dr. Gupta and Mr. Munger being unrelated to their salaries and length of service, the claims are not entitled to treatment as expenses of administration under Bankruptcy Code § 503(b)(1).

The matter, however, does not end here. The order of the court dated Sept 26, 2011 [Docket #339] approving the sale to Steward specifically approved the APA. Paragraph 30 of the

7

sale order provides:

> The terms and provisions of the APA, together with the terms and conditions of this Order, shall be binding in all respects upon all entities, including, without limitation, the Company (including its employees, officers and directors), its estates, all creditors and equity interest holders of the Company, Steward, and their respective affiliates, successors and assigns, agents and any affected third parties, including, but not limited to, all persons asserting a claim against or interest in any of the Assets to be sold, conveyed or assigned to Steward pursuant to the APA.

Under paragraph 37 of that order this court retains jurisdiction to "interpret [and] implement…" the APA and to "resolve any disputes arising under or related to the APA" Finally, paragraph 21 of the order dated November 22, 2011 confirming QMC and affiliates' joint plan of liquidation [#435] provides "the Sale Order shall survive Confirmation of the Plan, entry of this Order and the occurrence of the Effective Date."

A bankruptcy court has jurisdiction to interpret and enforce its own prior orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 S.Ct. 2195, 2205 (2009); *First Marblehead Corp. v. Education Resources Institute, Inc*. 2011 WL 6141004, at *6 -7 (D. Mass. Dec. 8, 2011). By virtue of the sale order, which was not appealed, Dr. Gupta and Mr. Munger, employees of QMC on the date of that order, and Steward are bound by the order and the provisions of the APA. Both motions filed by the executives assert that Steward violated the terms of the APA by not offering them employment post-closing. I will, therefore, treat both motions as seeking relief in the alternative—either for an order granting administrative expense status to their claims or for an order directing Steward to pay them. Having denied their request for administrative expense status, I will set the motions down for further hearing on their request for an order directing Steward to pay the claims.

Separate Orders shall issue

Dated: February 13, 2012                                  By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge