## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### CENTRAL DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | Case No. 11-16394-MSH |
| QUINCY MEDICAL CENTER, INC. | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

### MEMORANDUM OF DECISION ON JOINT MOTION OF VICTOR MUNGER AND APURV GUPTA, M.D. FOR POST-JUDGMENT REAL ESTATE ATTACHMENT AND INJUNCTION

This matter is before me on the joint motion of Victor Munger and Apurv Gupta, former senior executives of the debtor, Quincy Medical Center, Inc. ("QMC"), and holders of judgments against Quincy Medical Center, A Steward Family Hospital, Inc. ("Steward") which purchased substantially all the assets of QMC, to secure their judgments with writs of attachment of real estate owned by Steward, injunctions prohibiting Steward from diminishing its cash accounts and liens on Steward's accounts receivable. For the reasons discussed below, I will grant their motion but order an alternative form of security.

### Background

On November 2, 2011, and November 17, 2011, Mr. Munger and Dr. Gupta, respectively, filed substantially identical motions under Bankruptcy Code § 503(b)(1) (11 U.S.C. § 503(B)(1)), seeking the allowance of administrative expense claims for severance pay due them under QMC's Executive Severance Policy. I denied their motions as to QMC but by orders dated September 25, 2012, allowed them against Steward granting Mr. Munger and Dr. Gupta allowed claims against Steward of $135,000 and $234,000, respectively. A full discussion of the

1

nature of the executives' claims and the basis of their monetary awards may be found in

companion decisions, *In re Quincy Medical Center, Inc.*, 466 B.R. 26 (Bankr. D. Mass. 2012)

("*QMC I*") and *In re Quincy Medical Center, Inc.*, 479 B.R. 229 (Bankr. D. Mass. 2012) (*QMC*

*II)*. Steward timely appealed my orders to the United States district court where the appeals

remain pending. Not long after obtaining the awards in their favor, Mr. Munger and Dr. Gupta

sought orders requiring Steward to make immediate payment of the amounts owed them. In light

of the pendency of Steward's appeals I denied their requests. *See* order of January 3, 2013

(docket # 1092).[1]

On November 11, 2014, Mr. Munger and Dr. Gupta filed their present joint motion

seeking security for their judgments. Their motion was precipitated by reports in the news media

that Steward had announced its intention to close Quincy Medical Center on December 31, 2014,

and that its decision was the result of serious financial losses.[2] After an emergency hearing on

November 25, 2014, I ordered Mr. Munger and Dr. Gupta to submit affidavits in support of their

motion and offered Steward the opportunity to submit affidavits in rebuttal. All parties were

given the opportunity to file additional briefs. The affidavits and briefs having been filed, the

matter is now ripe for adjudication.

---

[1] At the recent hearing on their joint motion for security, Dr. Gupta and Mr. Munger revisited the possibility of requiring Steward to make immediate payment of their claims as an alternative to the relief requested in their motion. As their request was not sought directly in their motion or addressed in their supporting pleadings, I decline to act on it it this time.

[2] Additional news reports indicated that state and local officials were seeking to delay a year-end shutdown while efforts were undertaken to consider alternatives. According to Steward's website, however, on December 26, 2014, the hospital ceased all of its operations with the exception of 24-hour emergency room, diagnostic radiology, laboratory and pharmacy services.

### Discussion

In his affidavit in support of the joint motion, Mr. Munger's attorney, Charles R. Bennett, Jr., assembled publically available financial data prepared by the Commonwealth of Massachusetts Center for Health Information Analysis to establish that Steward has experienced continuing negative operating results. For example, for fiscal year 2012 Steward reported losses of $1,267,681 and for fiscal year 2013 its reported losses were $13,782,175. The affidavit of Michael Rich, Steward's treasurer, concedes that all of Steward's assets are encumbered. These facts, together with Steward's cessation of substantially all activities at Quincy Medical Center, are sufficient to support a finding that without some form of security Mr. Munger and Dr. Gupta are likely to hold uncollectible judgments should they prevail after Steward exhausts its rights of appeal.

In opposing the joint motion for security, Steward does not attempt to convince anyone that it will be good for the money should the executives' monetary awards be upheld on appeal. Instead, Steward argues that Mr. Munger and Dr. Gupta have no right to post-judgment security because my September 25, 2012 orders are not judgments and even if they are judgments they are not *money* judgments, which are the kind entitled to security. Steward points out that according to Fed. R. Bankr. P. 7001(1) money judgments can issue only in adversary proceedings and my orders were entered in the main chapter 11 case in the context of a claim or sale order dispute that constituted a contested matter. In support, Steward points to the text of my orders which while allowing the claims of Mr. Munger and Dr. Gupta against Steward in specific amounts don't actually order Steward to pay them the money.

Steward's argument that the September 2012 orders are not judgments is incorrect. Fed.

R. Bank. P. 9001(7) defines a judgment as "any appealable order." In appealing, Stewart has in

effect acknowledged that the orders are judgments. Furthermore, Stewart's argument that money

judgments can issue only in adversary proceedings is overly technical and ignores the fact that it

failed to raise this procedural issue at any point during the proceedings leading up to the entry of

the September 2012 orders. The resolution of the dispute over compensation in the context of a

contested matter rather than an adversary proceeding is a distinction without a difference.

Steward identifies no harm it suffered as a result of the procedural posture in which the dispute

arose and was decided.

Historically, courts have permitted disputes to be resolved by motion even though the

relief sought should have been by way of an adversary proceeding. In *Ralls v. Docktor Pet

Centers, Inc.*, 177 B.R. 420, 428 (D. Mass. 1995), the court explained:

> The Bankruptcy Rules provide two avenues for resolving disputes: adversarial
> hearings and contested matter hearings. Bankr. R. 7001, 9014. The Rules require
> an adversarial hearing for certain specified proceedings conducted in a bankruptcy
> court, including recovery of money or property, Bankr. R. 7001(1), and obtaining
> injunctive or other equitable relief. Bankr. R. 7001(7). Part VII of the Bankruptcy
> Rules, which essentially mirrors the Federal Rules of Civil Procedure, sets forth
> the procedural rules to be applied during adversarial hearings. Bankr. R. 7001.
>
> Matters not listed in Rule 7001 proceed via a "contested matter" hearing. Bankr.
> R. 9014. Rule 9014 establishes the procedural rules to be used in contested matter
> hearing and incorporates many of the substantive procedural provisions from Part
> VII. Bankr. R. 9014 ("The motion shall be served in the manner provided for
> service of a summons and complaint by Rule 7004, and, unless the court
> otherwise directs, the following rules shall apply: 7021, 7025, 7026, 7028–37,
> 7041, 7052, 7054–56, 7062, 7064, 7069, and 7071."). The only significant
> substantive difference noted by the Appellants is that an adversarial hearing is
> commenced by a complaint and a contested matter is commenced by motion.
>
> The court agrees with Appellants that the request for monetary damages and
> injunctive relief are covered by Rule 7001 and should have proceeded as an
> adversarial hearing. The bankruptcy court's decision to proceed as a contested
> matter, however, was not prejudicial to Appellants, and therefore was harmless
> error. *See* Bankr. R. 9005, Harmless Error (incorporating Fed. R. Civ. P. 61). *See*

*In re Stacy,* 99 B.R. 142, 147 (D. Mass. 1989) (Freedman, C.J.) (holding that under certain circumstances the failure to hold an adversarial hearing is a non-prejudicial procedural defect constituting harmless error).

(Footnotes omitted).

Fed. R. Bankr. P. 9005 makes Fed. R. Civ. P. 61 applicable to cases under the

Bankruptcy Code. Fed. R. Civ. P. 61 provides:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect a party's substantial rights.

*Rush Univ. Med. Center v. Leavitt*, 535 F.3d 735 (7th Cir. 2008), cited by Steward in

support of its argument, is inapplicable on its basic facts to the matter here. *Leavitt* involved a

bankruptcy court order that was indecipherable. As the court of appeals noted:

> Unfortunately, it is impossible to tell from the judgment who won what. It reads:
>
> > IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff, Rush University Medical Center's motion for summary judgment is granted in part and denied in part; the Defendant, Michael Leavitt's motion for summary judgment is granted in part and denied in part. Civil case terminated.
>
> Unless the plaintiff loses outright, a judgment must provide the relief to which the winner is entitled.

*Rush University Medical Center,* 535 F.3d at 737-38.

Unlike the order in *Leavitt*, the September 2012 orders are clear, especially in light of the

detailed memorandum of decision (*QMC II*) upon which they were based and to which they

expressly refer. Each awards the claimant an allowed claim against Steward in a sum certain.

Each order is appealable and indeed remains the subject of an appeal. Each is thus a money

judgment.

5

In opposing the joint motion for security Steward asserts that the pendency of the appeals has divested the bankruptcy court of jurisdiction over any aspect of the matters on appeal. Steward points to my denial, shortly after entering the September 2012 orders, of the claimants' request for immediate payment as testament to my recognition that the filing of the appeals divested me of jurisdiction. Steward reads too much into my previous denial which recognized the unfairness of putting Stewart in a potentially prejudicial position should it succeed on its appeal and then have to recoup money from the claimants whose financial capacity is unknown. While it is true that my denial of the executives' request for immediate payment was in part based on the pendency of Steward's appeal, a trial court's loss of jurisdiction over a matter on appeal is not absolute. Certainly, the trial court cannot alter or amend a judgment once an appeal is taken. But the inability to alter or amend the judgments does not divest me of jurisdiction to provide a modicum of security to ensure that Mr. Munger and Dr. Gupta will be paid should they prevail on appeal.

There can be no doubt that a court has jurisdiction to enforce its own orders. *In re Motors Liquidation Co.*, 514 B.R. 377, 381 (Bankr. S.D.N.Y. 2014) ("Bankruptcy courts (and when it matters, district courts) have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' "*arising in*" jurisdiction."). This is true even when an appeal of the order is pending. *Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 99, 105 (S.D.N.Y. 2001) ("[I]t is also well established that while an appeal of an order is pending, the bankruptcy court retains jurisdiction to implement its own orders.") (internal citations and quotation marks omitted).

6

Mr. Munger and Dr. Gupta base their request for security on Fed. R. Civ. P. 64, made

applicable to this matter by Fed. R. Bankr. P. 7064 and Fed. R. Bankr. P. 9014. Rule 64

provides:

> (a) Remedies Under State Law—In General. At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.
>
> (b) Specific Kinds of Remedies. The remedies available under this rule include the following--however designated and regardless of whether state procedure requires an independent action:
>
> - arrest;
> - attachment;
> - garnishment;
> - replevin;
> - sequestration; and
> - other corresponding or equivalent remedies.

Rule 64 is generally recognized as applying to *pre-judgment* proceedings. *First*

*Community Bank v. Miller*, 09-80131, 2010 WL 2528964, at *3 (N.D. Cal. June 18, 2010) ("It

appears that Rule 64 applies to pre-judgment proceedings, as it governs remedies available

'throughout' an action. However, it does not refer to remedies available after the judgment has

been entered."); *Crum v. Blixseth (In re Big Springs Realty LLC)*, 426 B.R. 860, 869 (Bankr. D.

Mont. 2010). Steward has not raised the pre- versus post-judgment distinction in opposing the

joint motion for security. Rather, Steward argues that Mr. Munger and Dr. Gupta have not met

the criteria for entitlement to security by attachment or injunction required by state law, namely

"that there is a reasonable likelihood that the plaintiff will recover judgment, including interests

and costs, in an amount equal to or greater than the amount of the attachment over and above any

liability insurance shown by the defendant to be available to satisfy that judgment."  Mass. R.

Civ. P. 4.1(c). As to the first requirement, the existence of judgments in favor of Mr. Munger and

Dr. Gupta will obviously suffice. As to the second, Steward offers no claim to the existence of

insurance to satisfy the judgments. Add to these considerations Steward's continuing financial

losses and its decision to effectively close Quincy Medical Center, and the justification for

fashioning a mechanism to avoid saddling the claimants with an uncollectible judgment becomes

compelling. The mechanism proposed by the executives—attachment, injunction and lien—is,

however, excessive. A scalpel rather than a chain saw would be appropriate here especially in

light of Steward's valid concern about retaining the ability to operate, even on a limited basis.

Whether or not relief is possible under Rule 64 with respect to post-judgment security,

Fed. R. Civ. P. 62, made applicable in bankruptcy by Fed. R. Bankr. P. 7062 and which I may

and do apply to this contested matter in accordance with Fed. R. Bankr. P. 9014(c),[3] affords an

alternative avenue for security when a judgment has entered and has been appealed. Rule 62(d)

permits a trial court to order the party appealing its judgment to post a supersedeas bond in

exchange for granting the appellant a stay. In this matter Steward has had the benefit of a de

facto stay for over two years as a result of my denying the claimants' request for immediate

payment. At this point in the proceedings, it is entirely appropriate to condition the continuation

of Steward's de facto stay by ordering it to post bonds. In fact, I will exercise my discretion and

order a formal stay pending appeal upon Steward's posting the bonds. *See In re Whispering

Pines Estate, Inc.*, 05-56003, 2007 WL 203987, at *1 (Bankr. D.N.H. Jan. 24, 2007); *see also*

---

[3] *Reis v. Paige (In re Paige)*, 610 F.3d 865, 875 (5th Cir. 2010) (quoting 10 *Collier on Bankruptcy* ¶ 7000.01 (Alan Resnick & Henry J. Sommer eds. 15th ed. rev. 2009) ("Rule 9014 makes specific Part VII rules applicable to motions, unless the court otherwise directs, and gives the court the power and discretion to direct, at any stage, that one or more of the other rules in Part VII shall apply.").

8

Fed. R. Bankr. P. 8005. This will ensure that the judgments obtained by Mr. Munger and Dr.

Gupta will not, should they ultimately prevail on appeal, turn out to be uncollectible. At the same

time, Steward's assets will not be encumbered or its ability to spend money impeded.

Dr. Gupta and Mr. Munger have collectively requested security in the amount of

$500,000. This amount is excessive. At a minimum, each is entitled to secure his award as set

forth in the September 25, 2102 orders; for Mr. Munger $135,000 and for Dr. Gupta $234,000.

As claimants correctly note, they will also be entitled to post-judgment interest at the federal

judgment rate from the date of entry of the judgments should they ultimately prevail on appeal.

*Redondo Const. Corp. v. Puerto Rico Highway and Transp. Auth. (In re Redondo Const. Corp.)*,

700 F.3d 39, 42 (1st Cir. 2012). At the current federal judgment rate of 1.13% per annum and

assuming little variance in the near term, interest of $1525 for Mr. Munger and $2644 for Dr.

Gupta has accrued annually and will continue to accrue until satisfaction of their judgments,

should they prevail on appeal. While it is impossible to predict the length of the appeals process,

which has recently surpassed the two-year mark, I find that adding four years of post-judgment

interest to secure the awards of Mr. Munger and Dr. Gupta, $6100 and $10,576, respectively, is

reasonable.

Mr. Munger and Dr. Gupta also request security for pre-judgment interest under

Massachusetts law, presumably at a rate of 12% per annum,[4] for the period from October 1,

---

[4] Mass. Gen. Laws ch. 231, § 6c provides in relevant part:

> In all actions based on contractual obligations, upon a verdict, finding or order for
> judgment for pecuniary damages, interest shall be added by the clerk of the court
> to the amount of damages, at the contract rate, if established, or at the rate of
> twelve per cent per annum from the date of the breach or demand. If the date of
> the breach or demand is not established, interest shall be added by the clerk of the

2011, when the conduct giving rise to their claims occurred, and September 25, 2012, when their judgments against Steward entered. Based on this approximately one-year time frame, I find that including pre-judgment interest of $16,200 and $28,080 for Mr. Munger and Dr. Gupta, respectively, in the amounts of the bonds to be posted is warranted.

Conclusion

Based on the foregoing, I will grant the joint motion of Mr. Munger and Dr. Gupta and order Steward to post bonds in the amount of $160,000 with respect to Mr. Munger's judgment and $275,000 with respect to Dr. Gupta's judgment, by no later than December 31, 2014.

Separate orders will issue.

Dated: December 29, 2014                    By the Court,

                                            _____
                                            Melvin S. Hoffman
                                            Chief U.S. Bankruptcy Judge

cc:    Charles R. Bennett, Jr.
       Murphy & King, P.C.
       Boston, MA
       Counsel to Victor Munger

---

court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action. . . .

Bruce Gladstone
Cameron & Mittleman LLP
Providence, RI
Counsel to Apurv Gupta

James D. McGinley
Edwards Wildman Palmer LLP
Boston, MA
Counsel to Quincy Medical Center, a Steward Family Hospital, Inc.